United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KOSTA, STEVE BATES, individuals, on their own behalf and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>DEL MONTE CORPORATION,<br><br>  Defendant. | Case No.: 12-cv-01722-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEL MONTE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF THE COMPLAINT** |

Pending before the Court is the Motion of Defendant Del Monte Corporation ("Del Monte") to Dismiss or in the Alternative to Strike Portions of Plaintiffs' First Amended Complaint ("FAC"). (Dkt. No. 28.) Having carefully considered the papers submitted and the pleadings in this action, the arguments of counsel, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Del Monte's Motion to Dismiss, **WITHOUT LEAVE TO AMEND**, and **DENIES** Del Monte's Motion to Strike.

Plaintiffs bring this putative class action alleging that the labels on certain of Del Monte's food products, as well as Del Monte's advertising, do not comply with the federal Food, Drug, and Cosmetics Act ("FDCA"), as adopted by the California Sherman Law, Cal. Health & Safety Code section 109875, *et seq.* ("Sherman Law"). Based upon those violations, Plaintiffs assert claims under several state and federal consumer protection statutes: the California Unfair Competition Law, Bus. & Prof. Code section 17200 *et seq.* ("UCL"); the California False Advertising Law, Cal. Bus. & Prof. Code section 17500 ("FAL"); the Consumers Legal Remedies Act, Cal. Civ. Code section 1750 *et seq.* ("CLRA"); the Song-Beverly Consumer Warranty Act, Cal. Civ. Code section 1790 *et seq.* ("Song-Beverly"), and the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301 ("Magnuson-Moss"). Plaintiffs also allege a state law claim for restitution based on unjust enrichment and quasi-contract.

Exhibit "A"

Plaintiffs allege that Del Monte uses false, misleading, and unlawful information on its food labels so as to deceive consumers and increase sales. Specifically, Plaintiffs claim that Del Monte:

- labeled products as "fresh" despite their having been thermally processed, pasteurized, and chemically preserved;

- labeled products "all natural," "100% natural," or natural despite their containing significant quantities of chemical preservatives, synthetic chemicals, added artificial color and other artificial ingredients, and failed to disclose the presence of chemical preservatives and artificial added colors;

- failed to follow serving size guidelines so as to mislead consumers regarding their products' sugar and calorie content per serving;

- made unlawful nutrient and antioxidant content claims;

- made unlawful and unapproved health claims, such as suggesting to consumers that their products can prevent the risk or treat the effects of certain diseases like cancer or heart disease

(FAC ¶ 8.)

Del Monte now moves to dismiss under FRCP 12(b)(6) and 12(b)(1) on the following grounds: (1) FDCA preemption; (2) abstention under the primary jurisdiction doctrine; (3) lack of standing; (4) failure to allege a plausible claim for relief; and (5) failure to allege fraud-based claims with particularity and moves to strike allegations under FRCP 12(f) for failure to allege that Plaintiffs purchased certain products or saw certain representations. Each of Del Monte's arguments is addressed below.

I. **FACTUAL BACKGROUND**

Plaintiffs allege that they each purchased Del Monte products that were mislabeled in violation of the FDCA and the Sherman Law. Their claims concern three broad categories of Del Monte products: (1) "Fruit Naturals" fruit cups; (2) "FreshCut" canned vegetables, and (3) canned tomato products. First, within the "Fruit Naturals" category, Plaintiffs allege Del Monte labeled the packaging so as to lead consumers to believe the pasteurized and chemically preserved fruit was actually fresh fruit by: packing it in glass and plastic containers in a manner similar to fresh fruit;

placing the products in the refrigerated produce section of the grocery store and labeling them "Must Be Refrigerated;" and (3) failing to identify ingredients on the label as chemical preservatives. (FAC ¶49.) Also as to Fruit Naturals, Plaintiffs allege that Del Monte manipulated the serving size to calculate the product in "single serving" containers as if it were two servings, thereby making the servings appear to have few calories, sugar, and carbohydrates. (FAC ¶¶ 185-191.) Further, Del Monte misbrands certain products as "No Sugar Added" even when they do not meet the FDA calorie requirements for making such a claim. (FAC ¶¶ 167-68.)

Second, with respect to Del Monte's "FreshCut" vegetables, despite stating on the package that the vegetables are "Picked Fresh * Packed Fresh," are "Packed From Fresh [vegetables]," and contain "No Preservatives," Plaintiffs allege that the vegetables are actually thermally processed and use chemical preservatives such as calcium chloride to preserve them. (FAC ¶ 77.) Such a representation is, Plaintiffs allege, directly contrary to California regulations and FDA Compliance Policy Guidance. (FAC ¶¶ 74-76.)

Third, as to Del Monte's canned tomato products, Plaintiffs allege that that they are labeled as natural when they contain calcium chloride or citric acid, both of which the FDA has warned cannot be added to tomatoes labeled "natural." (FAC ¶¶ 97, 115.) Plaintiffs also allege that Del Monte is making unlawful claims that their tomatoes contain antioxidants, such as that they are "an excellent source of" or "rich in" lycopene or lutein, but the actual nutrient content does not comply with the FDA minimums for such statements, or such claims are otherwise not permitted by the food labeling regulations. (FAC ¶¶ 131-147, 153-159.) Further, Plaintiffs allege that Del Monte has violated certain statutory and regulatory provisions by making claims on its website that the health benefits of lycopene found in their cooked tomatoes "retard the aging process and stave off heart disease, cancer and major degenerative diseases." (FAC ¶ 212.)

Plaintiffs allege they read the labeling on the Del Monte products they purchased, and relied on the representations that they were fresh, natural, contained no artificial ingredients, additives, flavors and preservatives, and were good sources of lycopene and other nutrients. (FAC ¶¶ 237-240.) They also relied on the packaging, product placement and website information in deciding to purchase Del Monte's products. (*Id.*) They allege that, had they known that Del Monte's claims

were not true, they would not have bought the products or would not have paid a premium for them.  (FAC ¶ 242.)

## II.  APPLICABLE LEGAL STANDARDS

### A.  Motion to Dismiss Under FRCP 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the Court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004).  A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint fails to allege facts sufficient to establish subject matter jurisdiction, or if any evidence offered, such as affidavits and testimony, establish lack of jurisdiction.  *Id.*  The Court may consider evidence outside the complaint, and resolve factual disputes, in determining the existence of subject matter jurisdiction.  *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988). Further, the existence of disputed material facts will not preclude a trial court from evaluating for itself the merits of jurisdictional claims, except where the jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits.  *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733-35 (9th Cir. 1979)).  Plaintiffs invoke this Court's jurisdiction and consequently bear the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir.2010).

The Court treats Del Monte's motion as a factual attack under Rule 12(b)(1) and therefore considers all admissible evidence in the record with respect to the jurisdictional issue.

### B.  Motion to Dismiss Under FRCP 12(b)(6)

Del Monte moves under Fed. R. Civ. P. 12(b)(6) and challenges the legal sufficiency of the claims alleged.  "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true.  *Sanders v.*

4

*Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Under *Twombly,* a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 556–57) (internal quotation marks omitted). In sum, if the facts alleged foster a reasonable inference of liability—stronger than a mere possibility—the claim survives; if they do not, the claim must be dismissed. *See Iqbal,* 556 U.S. at 678–79.

## C. Motion to Strike Under FRCP 12(f)

Rule 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Motions to strike are generally disfavored and are not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation. *See Colaprico v. Sun Microsystem, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991));

*LeDuc v. Kentucky Cent. Life Ins. Co.,* 814 F. Supp. 820, 830 (N.D. Cal. 1992). Consequently, when a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec Lit.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2010). A motion to strike should be denied if there is any doubt whether the allegations in the pleadings might be relevant in the action. In deciding whether to grant a motion to strike under Rule 12(f), the court must start with the rule's plain language and determine whether the matter at issue is an insufficient defense, redundant, immaterial, impertinent, or scandalous. *Id.* at 973-74.

### D.    Request for Judicial Notice

As a preliminary matter, Del Monte requests that the Court take judicial notice of twelve documents. (Defendant Del Monte Corporation's Request for Judicial Notice in Support of its Motion to Dismiss the First Amended Complaint ("RJN"), Dkt. No. 31, Exh. A-L.) Plaintiffs have not objected to Del Monte's RJN.

Generally, on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may not consider matters outside the complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). However, a court may consider documents referenced in the complaint, "central" to the claims, and as to which no party questions the authenticity of the copies provided. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Branch, supra,* 14 F.3d at 454.

The Court finds Exh. B, C, D, E, F, and G are appropriate for judicial notice as the FAC specifically references product labels and attaches examples that are not completely legible. Exhibit H, an excerpt from FDA's rule addressing the use of the term "natural" on food labeling, is likewise appropriate for judicial notice.

However, Exhibits A, I, J, K and L are not appropriate for judicial notice in consideration of a 12(b)(6) motion. Exhibit A is simply a list of pending similar litigation and is not relevant. The other items include an FDA proposed rule, an article from an FDA consumer publication, an FDA compliance letter, and a scholarly publication. These are all offered to dispute the merits of the allegations themselves rather than establish whether Plaintiffs have failed to state a claim or the

United States District Court
Northern District of California

1    Court lacks jurisdiction.  Consideration of that evidence is beyond the scope of the motion before

2    the Court.  Del Monte's request for judicial notice therefore is **DENIED** as to Exhibits A, I, J, K and

3    L and **GRANTED** as to Exh. B, C, D, E, F, and G.

4    **III.  ANALYSIS**

5        **A.  Preemption**

6        First, Del Monte argues that all of Plaintiffs' claims are preempted for two reasons: (1) the

7    claims are expressly preempted by section 343-1(a) of the Nutritional Labeling and Education Act

8    of 1990 ("NLEA"); and (2) the claims are impliedly preempted because, under Section 337(a) of

9    the FDCA, no private right of action exists to enforce regulations promulgated by the FDA, and

10   although Plaintiffs' state law claims allege violation of the California Sherman Law, they actually

11   seek to enforce FDCA and NLEA regulations.  Plaintiffs counter that the Sherman Law, while

12   incorporating standards identical to the FDCA, gives them a private right of action such that their

13   claims are not preempted by either section 343-1(a) or section 337(a).  The issues raised have been

14   addressed repeatedly in this district.

15           *1.    General Principles of Preemption*

16       Preemption is fundamentally a question of Congressional intent.  *Wyeth v. Levine*, 555 U.S.

17   555, 565 (2009). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly

18   pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a

19   legislative field to such an extent that it is reasonable to conclude that Congress left no room for

20   state regulation in that field." *Chae v. SLM Corp.,* 593 F.3d 936, 941 (9th Cir. 2010) (internal

21   quotation marks and citations omitted).

22       While the Court's interpretation of a preemption statute "must begin with its text," that

23   interpretation "does not occur in a contextual vacuum." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 484–

24   85 (1996); *see Altria Group, Inc. v. Good,* 555 U.S. 70, 76 (2008) (stating that, even "[i]f a federal

25   law contains an express pre-emption clause, it does not immediately end the inquiry because the

26   question of the substance and scope of Congress' displacement of state law still remains.").  In

27   analyzing the issue, a court must begin with the presumption that unless a "clear and manifest

28   purpose of Congress" exists, federal acts should not supersede the historic police powers of the

United States District Court
Northern District of California

States.  *Wyeth*, 555 U.S. at 565; *Lohr,* 518 U.S. at 485.  "Parties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law.'" *Stengel v. Medtronic,* 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (quoting *De Buono v. NYSA–ILA Med. & Clinical Servs. Fund,* 520 U.S. 806, 814 (1997)).

Preemption is express where Congress has considered the issue of preemption and included in the enacted legislation a provision explicitly addressing that issue.  *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (quoting *Cipollone v. Liggett Group*, 505 U.S. 504, 517 (1992)).  In the absence of explicit preemptive language, Congressional intent to preempt can be implied under two scenarios: field preemption and conflict preemption.  First, field preemption occurs "where the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Valentine*, 804 F. Supp. 2d at 1028 (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).  Field preemption should not be found in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that, without question, Congress has so ordained.  *Valentine*, 804 F. Supp. 2d at 1028–29 (such preemption arises in only extraordinary circumstances); *see Bank of America*, 309 F.3d at 558 ("'mere volume and complexity' of federal regulations demonstrate an implicit congressional intent to displace all state law") (internal citations omitted).  Conflict preemption arises when "compliance with both federal and state regulations is a physical impossibility." *Id.* (internal citations omitted).  Conflict preemption may also exist where "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (internal citations omitted).  Showing preemption by impossibility is a "demanding defense." *Wyeth*, 555 U.S. at 573.

### 2. *Express Preemption under the NLEA*

In 1990, Congress passed the NLEA as an amendment to the FDCA.  Section 343-1(a) of the NLEA provides that no state may directly or indirectly establish any requirement for the labeling of food that is not identical to the FDCA.  21 U.S.C. § 343-1(a).  There is a strong presumption against federal preemption in the area of proper marketing and regulation of food, a

United States District Court
Northern District of California

realm traditionally in the power of the States. *See Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders," citing cases). When Congress passed the NLEA it did not preempt State laws on the same subject. Instead, it allowed States to adopt requirements identical to the federal standards, which could then be enforced under state law. *See In re Farm Raised Salmon Cases,* 42 Cal.4th 1077, 1090 (2008) ("While Congress clearly stated its intent to allow states to establish their own identical laws, it said absolutely nothing about proscribing the range of available remedies states might choose to provide for the violation of those laws, such as private actions.") Examining similar provisions of the FDCA, the United States Supreme Court has held that such federal requirements "[do] not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008); *Wyeth,* 555 U.S. at 574 (allowing state consumer product liability to proceed despite FDCA's lack of a federal private right of action).

Thus, the many district courts addressing this issue have found that state law claims are not preempted where the food labeling requirements under state law are identical to their federal FDCA and NLEA counterparts. *Wilson v. Frito-Lay N. Am., Inc.*, 12-CV-1586 SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) (state law claims relying on statutes that explicitly incorporate federal law and regulations without modification are not preempted); *Brazil v. Dole Food Co., Inc.*, ___ F.Supp.2d ___, 12-CV-01831 LHK, 2013 WL 1209955 at *8 (N.D. Cal. Mar. 25, 2013) (finding no preemption in food labeling case based on identical Sherman Law and NLEA provisions); *Ivie v. Kraft Foods Global, Inc.*, 12-CV-02554 RMW, 2013 WL 685372 at * 8 (N.D. Cal. Feb. 25, 2013) (no preemption when plaintiff seeks to enforce clear FDA requirements via state law claims); *Lanovaz v. Twinings N. Am., Inc.*, 12-CV-02646 RMW, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013) (section 343-1 "has been repeatedly interpreted not to preempt requirements imposed by state law that effectively parallel or mirror the relevant sections of the NLEA"); *Khasin v. The Hershey Co.*, 12-CV-1862 EJD, 2012 WL 5471153, at *4 (N.D. Cal. Nov. 9, 2012) (same); *Astiana v. Ben*

United States District Court
Northern District of California

*& Jerry's Homemade, Inc.,* 10-CV-4387 PJH, 2011 WL 2111796, at *9 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's*") (NLEA not meant to "preclude all state regulation of nutritional labeling, but to prevent state and local governments from adopting inconsistent requirements with respect to the labeling of nutrients," quoting H. Rep. No. 101-538, at 10 (1990)); *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 372 (N.D. Cal. 2010) (same); *Lockwood v. Conagra Foods Inc.,* 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009) (same).

It is only when the requirements go beyond the FDA regulations that preemption comes into play. *See Kanter v. Warner-Lambert Co.,* 99 Cal. App. 4th 780, 795 (2002) ("when a state law claim, however couched, would effectively require a manufacturer to include additional or different information on a federally approved label, it is preempted"); *see also Peviani v. Hostess Brands, Inc.,* 750 F. Supp. 2d 1111, 1119-20 (C.D. Cal. 2010) (finding preemption because otherwise, plaintiff "would necessarily impose a state law obligation for trans-fat disclosure that is not required by federal law"); *Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111, 1121-23 (N.D. Cal. 2010) (UCL and other state law claims that sought to impose labeling requirements that were not identical to FDA regulations regarding the use of the terms "0g Trans Fat" and "good source" of calcium and fiber were expressly preempted).

Here, Plaintiffs contend that all of their state law claims are based on state statutes which mirror the FDCA, and therefore their claims are not preempted under section 343-1(a). Del Monte, by contrast, argues that several of Plaintiffs' claims seek to impose labeling requirements beyond those of the FDCA and NLEA. For instance, Del Monte points to an allegation regarding failure to use the term "preservative" on a label, when the FDA regulations do not require it to use that term, but only to list the name of the chemical preservative and a description of its function. Likewise, Del Monte argues that Plaintiffs wrongly accuse them of misusing the term "fresh" in their "FreshCut®" and "SunFresh®" brands when the FDA regulations would not prohibit such use. Thus, Del Monte contends, Plaintiffs must be seeking to impose requirements that are not identical to the FDA's.

Del Monte's argument fails. While Del Monte may disagree with Plaintiffs as to both the meaning of the FDA requirements at issue here and whether its products conform to those

requirements, that disagreement does not mean that Plaintiffs are trying to impose additional requirements beyond the FDA's. California's Sherman Law expressly adopts federal labeling requirements in their entirety. Cal. Health & Safe. Code § 110100(a) ("[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state.") To the extent that Del Monte contends its products satisfy all applicable FDA regulations, the argument goes to the merits of the claims and is beyond the scope of this motion.

### 3. *Implied Preemption under the FDCA*

Del Monte next argues that Plaintiffs' nutrient content claims are preempted under section 337(a) of the FDCA which provides that only the United States may sue to enforce compliance with the FDCA and NLEA. 21 U.S.C. § 337(a); *see also Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). Del Monte argues that because Plaintiffs have no right to enforce FDA regulations directly, they cannot use the Sherman Law to do so indirectly.

Del Monte relies heavily on *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012). In *Pom Wonderful*, the manufacturer of a pomegranate juice beverage sued Coca-Cola under the federal Lanham Act, alleging that Coca-Cola's competing product (Pomegranate Blueberry) was misleadingly labeled because it contained less than 1% pomegranate juice. *Id.* at 1172-73. Additionally, Pom Wonderful brought state law claims under the UCL and FAL on grounds that Coca-Cola's labeling practices violated the FDCA as adopted by the Sherman Law. *Id.* at 1173-74. The district court granted Coca-Cola's motion for summary judgment with respect to the Lanham Act claim as preempted by the FDCA. *Id.* at 1174-75. On appeal, the Ninth Circuit affirmed, holding that a plaintiff may not "maintain a Lanham Act claim that would require a court originally to interpret ambiguous FDA regulations, because rendering such an interpretation would usurp the FDA's interpretive authority." *Id.* at 1176. Moreover, a plaintiff may not "sue under the Lanham Act to enforce the FDCA or its regulations because allowing such a suit would undermine Congress's decision to limit enforcement of the FDCA to the federal government." *Id.* at 1175-76. While the Court held that section 337(a) effectively barred Pom Wonderful's claims under the

United States District Court
Northern District of California

Lanham Act, it remanded the case and did not reach the issue of whether Pom Wonderful's state law claims were preempted. *Id.* at 1179.[1]

Here, Del Monte urges the Court to extend the Ninth Circuit's holding in *Pom Wonderful* beyond the federal Lanham Act, to find that the FDCA preempts claims under state laws as well. The reasoning of *Pom Wonderful* does not support such an extension.[2] As previously noted, the Ninth Circuit limited its decision to the Lanham Act and expressly declined to address whether Pom Wonderful's state law claims would be preempted by the FDCA. *Id.* at 1178. Accordingly, the Ninth Circuit's analysis considered only the interplay between the two federal statutes, not any conflict between the respective roles of the FDCA and the states' historic role in policing fraud and deception in the sale of food products. *See Florida Lime & Avocado Growers,* 373 U.S. at 132; *In re Farm Raised Salmon Cases,* 42 Cal.4th at 1090. More specifically, *Pom Wonderful* limited its discussion to whether the FDCA preempted Lanham Act claims that required the court to interpret FDA regulations; it did not analyze claims brought under a state law that mirrors the FDCA. Finally, as discussed above, the NLEA explicitly provides that states may pass and enforce their own labeling laws, so long as the state's requirements are identical to those of the FDCA. *See* 21 U.S.C. 343-1(a). The broad view of *Pom Wonderful* urged by Del Monte essentially would render section 343-1(a) meaningless and permit section 337(a) to bar any private litigant from bringing actions predicated on a violation of analogous state labeling laws.

---

[1] On the state law claims, the district court in *Pom Wonderful* had granted summary judgment for lack of standing. That ruling was vacated for a new determination on remand in light of subsequent California Supreme Court authority in *Kwikset Corp. v. Sup. Ct.,* 51 Cal.4th 310 (2010). *See Pom Wonderful,* 679 F.3d at 1178-79. This Order addresses standing issues *infra* at Section III.C.

[2] Recent decisions in this district are in accord. *See Brazil*, 2013 WL 1209955 at *7-8 (*Pom Wonderful* was based on potential conflict with federal Lanham Act and specifically left open the question of preemption of state law claims); *Khasin*, 2012 WL 5741153, at *5 ("contrary to Defendant's contention, the *Pom Wonderful* court only held that the FDCA bars causes of actions brought under the federal Lanham Act where doing so would implicate the rules and regulations set forth under the FDCA.'); *Delacruz*, 2012 WL 2563857 at *7 n.3 ("The Ninth Circuit's preemption ruling [in *Pom Wonderful*] was limited to a finding that the FDCA preempted Pom's claims under the Lanham Act."); *Ivie*, 2013 WL 685372 at *8. *Lanovaz,* 2013 WL 675929 at *3.

United States District Court
Northern District of California

The Court must start from a presumption against preemption. In the absence of a clear statement of Congressional intent to preempt state claims or to occupy the field of food labeling, and seeing no conflict between the state and federal law, the Court declines to find that the claims here are preempted.[3] The motion to dismiss on grounds of preemption is **DENIED**.

### B.    Abstention Based on the Doctrine of Primary Jurisdiction

Del Monte next contends that this action should be stayed or dismissed under the doctrine of primary jurisdiction. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency… and is to be used only if a claim involves an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency." *Clark v. Time Warner Cable*, 523 F. 3d 1110, 1114 (9th Cir. 2008). A court traditionally weighs four factors in deciding whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech., Inc.,* 307 F.3d 775, 781 (9th Cir.2002) (amended). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark,* 523 F.3d at 1114.

Del Monte argues that, because the FDA has regulatory authority over food labeling and the issues in this case require expertise or uniformity in administration, it is better for the Court to stay or dismiss the action rather than allow the Court to become a forum for second-guessing the FDA's expertise. At oral argument, Del Monte referenced *Astiana v. The Hain Celestial Group, Inc.*, No. C 11-6342 PJH, 2012 WL 5873585, at 2-3 (N.D. Cal. Nov. 19, 2012) ("*Hain Celestial*"), a misbranding case involving cosmetics labeled as "all natural." Relying on *Pom Wonderful,* the court in *Hain Celestial* found that the FDA had provided no policy guidance on the use of the term

---

[3]  This analysis applies equally to Del Monte's arguments for preemption of Plaintiffs' state law UCL unlawful and unfair practices claims and false advertising claims under the FAL.

13

1    "natural" on cosmetics products, and thus abstention was required.  The decision centered on the

2    "absence of any FDA rules or regulations (or even informal policy statements) regarding the use of

3    the word 'natural' on cosmetic products . . . ." *Id.* at 3.

4         Here, by contrast, Plaintiffs are not asking the Court to create new requirements or interpret

5    what the FDA might find, but only to enforce what the FDA and identical California law already

6    require.  *Hain Celestial* is inapposite because, unlike cosmetics, the FDA has provided informal

7    policy guidance stating the minimum standards for using the term "natural" with respect to food

8    products, and these are the minimum standards Plaintiffs complain were violated.[4]  Plaintiffs'

9    claims rely entirely on the rules and standards set by the FDA.  Indeed, Del Monte concedes that all

10   of Plaintiffs' alleged violations "piggyback" violations of FDA regulations.  (Motion at 5:12-13.)

11        Adjudication of the claims here requires only that the Court determine whether Del Monte's

12   labels actually complied therewith, a determination that would not "risk undercutting the FDA's

13   expert judgments and authority."  *Hain Celestial,* 2012 WL 5873585 at 3, citing *Pom Wonderful,*

14   679 F.3d at 1177.  As in many other food labeling cases filed in this district, here "'[t]he FDA's

15   expertise ... is not necessary to determine whether the labels are misleading [and t]he reasonable-

16   consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of

17   the courts to resolve.'"  *Jones v. ConAgra Foods, Inc.*, 12-cv-01633 CRB, __ F.Supp.2d.__, 2012

18   WL 6569393at *7 (N.D. Cal. Dec. 17, 2012) (quoting *Delacruz v. Cytosport,* No. 11-cv-3532 CW,

19   2012 WL 2563857, at *10 (N.D.Cal. June 28, 2012)); *see also Brazil,* 2013 WL 1209955 at *10-11

20   (declining to abstain in claims of violation of FDA regulations and guidance concerning "all

21   natural," fresh, antioxidant, and other nutrient claims); *Ben & Jerry's*, 2011 WL 2111796, at *15

22   (declining to abstain where the court had to determine whether defendant's "All Natural" claims

23   ─────────────────

24        [4] The FDA's informal policy statement states that:
              From a food science perspective, it is difficult to define a food product
25            that is 'natural' because the food has probably been processed and is
              no longer the product of the earth.  That said, FDA has not developed a
26            definition for use of the term natural or its derivatives.  However, the
              agency has not objected to the use of the term if the food does not
27            contain added color, artificial flavors, or synthetic substances.

28   *See* http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm (last visited May10,
     2013); *see also* 56 C.F.R. pt. 101 (regulations governing food labeling), 21 C.F.R. pt. 701
     (regulations governing cosmetic labels).

1  were misleading); *Chacanaca v. The Quaker Oats Co.,* 752 F.Supp.2d 1111, 1124 (N.D.Cal.2010)

2  (plaintiffs "assert that defendant has violated FDA regulations and marketed a product that could

3  mislead a reasonable consumer. This is a question courts are well-equipped to handle.").

4       For these reasons, Del Monte's motion to dismiss under abstention principles is **DENIED**.

5       **C.    Standing**

6       Del Monte next argues the Court should dismiss this action because Plaintiffs lack standing

7  in that they fail to plead injury-in-fact. Del Monte's standing argument is two-fold, namely that

8  Plaintiffs lack standing under both Article III and California unfair competition laws. In response,

9  Plaintiffs assert they have alleged a concrete and particularized economic injury for which Del

10  Monte is liable, thus satisfying standing requirements under Article III and California law. (Opp. at

11  9-12.) The Court agrees with Plaintiffs.

12       To establish Article III standing, Plaintiff must allege facts showing an "injury-in-fact,"

13  causation, and redressability. *Monsanto Co. v. Geertson Seed Farms,* __U.S. __, 130 S.Ct. 2743,

14  2752 (2010); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Injury-in-fact requires

15  damage to a "legally protected interest that is both concrete and particularized, and actual or

16  imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (citations and quotations

17  omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements."

18  *Id.* at 561.

19       Del Monte maintains that Plaintiffs' alleged injury arises from the allegation that its

20  products are "legally worthless" based on technical labeling requirements which is nothing more

21  than a legal construct rather than the concrete, particularized injury required for Article III standing.

22  In short, Del Monte argues that this is a "no-injury case" and Plaintiffs have no standing.

23       Plaintiffs allege that their injury stems from the purchase of the products at issue, or the

24  added premium which costs they would not have incurred absent Del Monte's unlawful claims and

25  misrepresentations. (FAC ¶¶ 71-72, 86-87, 110, 128-129, 151, 153-154, 183-184, 196-197, 218.)

26  Del Monte benefitted from its misrepresentations while Plaintiffs suffered economic loss. These

27  allegations are sufficient to plead a pecuniary injury and thus a basis for Article III standing. *See*

28  *Brazil,* 2013 WL 1209955 at *12 (allegation that plaintiff spent money that he would not have

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1 absent defendants' false "all natural," freshness, and nutrient claims sufficient to state injury-in-

2 fact); *Lanovaz*, 2013 WL 675929 at *6 (same); *Ivie,* 2013 WL 685372 at *4; *Chacanaca,* 752

3 F.Supp.2d at 1125 (same); *Jones*, 2012 WL 6569393 *10 (same).

4       In support of its argument, Del Monte cites to cases where courts found allegations of

5 defective products did not establish injury in fact. In *Boysen*, plaintiffs brought claims under the

6 California UCL and FAL where defendant's failed to disclose "material and significant" levels of

7 lead and arsenic in its juice products. *Boysen v. Walgreen Co.,* 11-cv-6262 SI, 2012 WL 2953069

8 (N.D. Cal. July 19, 2012). The court in *Boysen* noted that plaintiffs did not allege they were injured

9 or that the products were likely to cause any physical harm, nor did they allege that the products

10 violated FDA regulations or guidance. Plaintiffs made no claim that the products were "unfit for

11 their intended use" or worth objectively less than represented. *Id.* at *6. Thus, the court dismissed

12 the action for lack of a concrete injury to establish standing under both Article III and California's

13 UCL. Likewise, in *Herrington* the court found that allegations of the presence of carcinogenic

14 chemicals in children's bath products, without any claim that the products were unsafe or unfit for

15 their intended use, did not create a cognizable injury for Article III standing. *Herrington v.*

16 *Johnson & Johnson Consumer Cos.*, 09-cv-1597 CW, 2010 WL 3448531 at *3-4 (N.D. Cal. Sept.

17 1, 2010). Although plaintiffs there asserted that they would not otherwise have purchased the

18 products if they had known of the potential carcinogens, they did not allege that the presence of

19 those contaminants was otherwise unsafe or in violation of any standard. *Id.* at *4. Thus the court

20 found no economic injury. *Id.*

21       Del Monte's reliance on *Boysen* and *Herrington* is unpersuasive. Unlike those cases,

22 Plaintiffs here are not alleging that the products themselves are defective or injurious. Instead,

23 Plaintiffs allege that Del Monte has created misleading labeling and advertising for its products

24 which fail to comply with objective FDA and Sherman Law standards. It is this misleading

25 labeling and advertising that they allege caused them to purchase products or pay premiums they

26 would not have otherwise.

27       In a similar vein, Del Monte argues that Plaintiffs lack standing under California's UCL and

28 FAL because they have not alleged facts showing they suffered injury-in-fact and "lost money or

United States District Court
Northern District of California

property" as a result of Del Monte's conduct. *See* Cal. Bus. & Prof. Code §§ 17204 and 17535; Cal. Civ. Code § 1780(a). Under California law, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL] by alleging . . . that he or she would not have bought the product but for the misrepresentation." *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 329 (2011); *see also Ben & Jerry's,* 2011 WL 2111796 at *5 (economic injury sufficiently alleged where plaintiffs claimed they were induced to pay a premium for ice cream based on false "All Natural" claims, relying on *Kwikset*). Article III's injury-in-fact requirement is effectively the same as that under the UCL and FAL, except that Article III allows standing for non-economic injuries and the UCL does not. *Kwikset,* 51 Cal.4th at 322-23; *TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 825 n. 1 (9th Cir.2011) (UCL injury-in-fact standing is slightly narrower than Article III standing because plaintiff must prove a pecuniary injury).

As discussed above, Plaintiffs allege they paid a premium for Del Monte's products which they otherwise would not have paid but for Del Monte's misrepresentations. As with Article III standing, the Court finds that Plaintiffs have alleged economic injury resulting from Del Monte's alleged unfair competition and false advertising.

Consequently, the Court finds that Plaintiffs satisfy the requirements for constitutional standing and **DENIES** Del Monte's motion to dismiss on these grounds.

### D.     Failure to State a Claim – FRCP 8

#### 1.     UCL, FAL, and CRLA Claims

Del Monte argues that Plaintiffs have not satisfied Rule 8's pleading requirements for their UCL, FAL, and CRLA claims insofar as the FAC does not allege facts to show plausible reliance and deception. The standard for these state law claims is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue. *See Williams v. Gerber Products,* 552 F.3d 934, 938 (9th Cir.2008). Here, Del Monte essentially contends that Plaintiffs' claims are facially implausible because no reasonable customer is likely to be deceived by its product labels. Del Monte maintains that Plaintiffs' claim regarding nutritional content, "presupposes a class member, who, to be

17

1    deceived, would have had to approach the canned goods aisle of a grocery store clutching Title 21

2    of the Code of Federal Regulations and armed with encyclopedic knowledge of FDA regulations."

3    (Motion at 19.)  Again, the Court does not agree.

4          Accepting the allegations in the FAC as true, as the Court must on a motion to dismiss, it is

5    plausible that a reasonable consumer, whose food purchases are influenced by nutritional content,

6    would rely on "front of the package" labeling claims like "fresh," "all natural," and "a natural

7    source of antioxidants" when selecting food products.  Likewise it is plausible that a reasonable

8    consumer, finding a plastic container of fruit in the refrigerated produce section, labeled "Must Be

9    Refrigerated," and identifying no ingredients on the label as chemical preservatives would believe

10   that the product is fresh cut fruit and would be influenced by that appearance to purchase it.

11   Indeed, it is plausible that such a consumer would pay a premium for products based on such

12   appearances and representations.  Del Monte's arguments raise ultimate questions of fact and issues

13   of class certification that are beyond the scope of a Rule 12(b)(6) motion.  For these reasons, Del

14   Monte's motion to dismiss under FRCP 8 is **DENIED**.

15              2.     *Song-Beverly Act Consumer Warranty Act Claim*

16         Del Monte next moves to dismiss Plaintiffs' Claim under the Song-Beverly Consumer

17   Warranty Act for failure to state a claim.  The Song-Beverly Act provides a private right of action

18   for any purchaser of "consumer goods" harmed by the manufacturer or seller's failure to comply

19   with its own express or implied warranty.  Cal. Civ. Code § 1794.  Section 1791(a) defines

20   "consumer goods" as "any new product or part thereof that is used, bought, or leased for use

21   primarily for personal, family, or household purposes, except for . . . consumables."  Cal. Civ. Code

22   § 1791(a).  The statute defines "consumables" as "any product that is intended for consumption by

23   individuals, or use by individuals for purposes of personal care or in the performance of services

24   ordinarily rendered within the household, and that usually is consumed or expended in the course of

25   consumption or use."  Cal. Civ. Code § 1791(d).

26         Del Monte argues that Plaintiffs' claim under the Song-Beverly Consumer Warranty Act,

27   Cal. Civ. Code section 1790 *et seq.*, fails for two reasons.  First, Plaintiffs have alleged that Del

28   Monte breached its warranties on consumables, to which Song-Beverly does not apply.

United States District Court
Northern District of California

18

Alternatively, Del Monte maintains that its product labels did not create "express warranties" of the sort governed by the Act. In response, Plaintiffs assert that Del Monte's representations constitute express warranties under Song-Beverly Act, as they represent an "affirmations of fact or promise" or "descriptions of the goods." Plaintiffs' Opposition admits that the FAC claims that the food products at issue are "consumables." (Oppo. at 23.)

As all products at issue here are food products and therefore "intended for consumption by individuals," Plaintiffs have failed to state a claim under the Song-Beverly Act. Del Monte's motion to dismiss Plaintiffs' Song-Beverly claim is **GRANTED.** Because Plaintiffs cannot cure this defect by amendment, this dismissal is **WITHOUT LEAVE TO AMEND**.

### 3. Magnuson-Moss Warranty Act Claim

Del Monte moves to dismiss Plaintiffs' claim under the Magnuson-Moss Warranty Act ("MMWA"). The MMWA provides a consumer remedy to enforce the terms of an implied or express warranty made in connection with the sale of a consumer product. See 15 U.S.C. § 2310(d). The MMWA defines a written warranty as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(A).

Del Monte bases its motion on the grounds that: (1) Plaintiffs have not satisfied MMWA amount-in-controversy requirement; (2) the MMWA does not apply to warranties governed by other federal law such as the FDCA; and (3) Plaintiffs have not alleged facts to support a finding that Del Monte's labels constitute written warranties under the MMWA.

Typically, claims regarding a product's nutrient contents constitute general product descriptions rather than a promise that the product is defect-free. *See Larsen v. Trader Joe's*, LLC, No. C-11-05188 SI, 2012 WL 5458396, at *3 (N.D. Cal. June 14, 2012) (rejecting claim that the use of synthetic ingredients in food labeled "all natural" rendered that food defective, reasoning the "deliberate use of [synthetic] ingredients does not comport with the plain meaning of the word 'defect.'"). A product description does not constitute a written warranty under the MMWA. *See*

19

United States District Court
Northern District of California

*Anderson v. Jamba Juice Co.*, No. 12-cv-1213 YGR, 2012 WL 3642835, at *3 (N.D. Cal. Aug. 25, 2012) (dismissing the plaintiff's Magnuson-Moss claim on the basis that representations on product labels are mere product descriptions that do not constitute written warranties under the Act.).[5]

Plaintiffs respond largely by arguing that Del Monte's nutrient and health content claims constitute written warranties. However, Plaintiffs' entire opposition attempts to demonstrate how Del Monte's representations constitute express warranties under *California* law.[6] Plaintiffs have not directed the Court to any persuasive authorities in support of considering labeling claims to be warranties under the MMWA.[7]

For the reasons stated above, the Court **GRANTS** Del Monte's motion to dismiss Plaintiffs' MMWA claim **WITHOUT LEAVE TO AMEND**.

4.    *Unjust Enrichment*

Plaintiffs' seventh claim is titled "Restitution Based on Unjust Enrichment/Quasi-Contract. (FAC at page 68.) Del Monte seeks to dismiss Plaintiffs' claim for arguing that "unjust

---

[5]  Other courts in this district have held consistently that product descriptions and product labels are not, without more, warranties against a product defect for purposes of the MMWA. *See Brazil*, 2013 WL 1209955 at *17 (misbranded labels did not constitute warranties); *Anderson v. Jamba Juice Co.*, 2012 WL 3642835, at *3 ("The statement "All Natural" is a general product description rather than a promise that the product is defect free."); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *3-4 (N.D. Cal. Jul. 20, 2012) (claim that food product is "natural" describes product but does not give assurance that product is defect free and therefore does not create warranty); *Larsen v. Trader Joe's, LLC*, 2012 WL 5458396, at *3 ("All Natural" and "100% Natural" are not written warranties promising that food products are defect free because "this Court is not persuaded that being 'synthetic' or 'artificial' is a 'defect.'"); *Hairston v. South Beach Beverage Co., Inc.*, No. CV 12–1429–JFW, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) (representations that beverage was "all natural with vitamins" "are product descriptions rather than promises that Lifewater is defect-free or guarantees of specific performance levels."). The Court finds the reasoning in these cases persuasive.

[6]  Plaintiffs also cite *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 958 (N.D. Ill. 2007), which did involve a breach of written warranty claim under the MMWA. That case, however, addressed only whether privity of contract is required for a warranty claim under the MMWA. The district court did not address whether advertising french fries as safe for consumption by individuals with food allergies created a warranty.

[7]  Because the Court finds no warranty is alleged for MMWA purposes, it does not reach the amount-in-controversy and conflict arguments raised by Del Monte.

enrichment" does not constitute a cause of action in California, but rather is a general principle underlying various legal theories and remedies that is synonymous with restitution. Plaintiffs assert that their claim comports with recent California precedent allowing claims of "unjust enrichment" as part of a claim for restitution.

Del Monte cites to a recent decision of this district in support of its argument, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012). However, *Low* and the authorities it cites are unavailing here. As *Low* states, under California law, a claim for unjust enrichment is considered to be a restitution claim. *Low*, 900 F. Supp. 2d 1010, 2012 WL 2873847 at *15.[8] Plaintiffs in California often allege unjust enrichment in connection with a "quasi-contract" claim seeking to avoid unjustly conferring a benefit upon a defendant in the absence of a legally valid

---

[8] There is a divergence of authority in California as to whether "unjust enrichment," as such, is a cause of action. Compare*, e.g., McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("unjust enrichment" is "not a cause of action . . . or even a remedy, but rather a principle, underlying various legal doctrines. . . synonymous with restitution.") (citing *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003)) with*, e.g. Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 721-22 (2003) (plaintiffs stated "a valid cause of action for unjust enrichment based on" the defendants' unjust retention of fees at the expense of plaintiffs); *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000) (plaintiff "satisfied the elements for a claim of unjust enrichment" when he alleged receipt of a benefit and unjust retention of the benefit at the expense of another).

This Court agrees with others that have found the split in the authorities on the existence of a "cause of action" for "unjust enrichment" under California law is essentially founded on semantics, drawing a distinction – between unjust enrichment, restitution, and quasi-contract -- without a difference. *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1099-1100 (N.D.Cal.2006). (rejecting motion to dismiss unjust enrichment claim because "for the most part, courts finding that California does not allow an 'unjust enrichment' cause of action have made essentially semantic arguments -- focusing on the interrelationship between the legal doctrine of unjust enrichment and the legal remedy of restitution"); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, M 07-CV-1827 SI, 2011 WL 4345435 (N.D. Cal. Sept. 15, 2011 ("[m]any of the courts that have rejected 'unjust enrichment' claims have nonetheless indicated that the claims could proceed under a different title," citing cases); *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 1:11-CV-01273 LJO, 2012 WL 691758 (E.D. Cal. Mar. 2, 2012) ("claim for restitution, like a claim for unjust enrichment, sounds in equity and consists of essentially the same elements"). Regardless of whether the claim is labeled one for unjust enrichment, restitution, or some other equitable theory such as quasi-contract or constructive trust, the legal basis for relief is recognized in California law. *See also* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2011) ("A person who is unjustly enriched at the expense of another is subject to liability in restitution."); *id.* at Reporter's Note (e) ("The confused view that 'restitution' is merely a remedy appears to result from a historical accident in the American law school curriculum.")

United States District Court
Northern District of California

1  contract.  *McBride*, 123 Cal. App. 4th at 388; *see also Vicuna v. Alexia Foods, Inc.,* 11–cv-6119

2  PJH, 2012 WL 1497507, at *3 (N.D. Cal. April 27, 2012) (allowing plaintiffs to proceed with

3  "unjust enrichment claims" as part of a claim for restitution); *Ben & Jerry's,* 2011 WL 2111796 at

4  *11 (denying motion to dismiss "unjust enrichment" claim in a case involving similar allegations

5  against a food product manufacturer/seller).  Here, Plaintiffs' claim is styled as one for "restitution"

6  on its face.  It seeks restitution and disgorgement of a benefit unjustly conferred on Del Monte.

7  Because Plaintiffs' claim for "unjust enrichment" is in accord with California law, Del Monte's

8  motion to dismiss the claim is **DENIED**.

9       **E.       Failure to Plead Fraud with Particularity Under FRCP 9(b)**

10          Del Monte argues that Plaintiffs have not alleged facts with the requisite degree of

11  particularity in support of their unfair competition and false advertising claims, as required by

12  FRCP 9(b) for claims involving fraud or misrepresentation.  To satisfy Rule 9(b), any averments of

13  fraud must be accompanied by the "who, what, when, where, and how" of the misconduct alleged.

14  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009).

15          Based on the allegations of the FAC, the "who" is Del Monte Del Monte Corporation; the

16  "what" is Del Monte's allegedly unlawful and deceptive claims in its labeling, packaging and

17  website; the "when" is "since 2008 and through the class period;" and the "where" is Del Monte's

18  package labels and website.  With respect to how Del Monte's statements were misleading,

19  Plaintiffs point to allegations in the FAC that: (1) Del Monte violated the Sherman law in nine

20  specific ways; (2) Plaintiffs purchased products while reasonably relying on Del Monte's

21  misrepresentations; and (3) Plaintiffs were deceived by Del Monte's product labels and website.

22          Again, taking the allegations in the FAC as true, as the Court must on a 12(b)(6) motion, the

23  Court finds that Plaintiffs have pleaded their deception and misrepresentation claims with the

24  requisite degree of particularity.  Del Monte's motion to dismiss on FRCP 9(b) grounds is **DENIED**.

25       **F.       Striking Allegations Under FRCP 12(f)**

26          In the alternative, Del Monte moves to strike all averments in the FAC regarding statements

27  Plaintiffs did not see and products Plaintiffs did not buy.  Rule 12(f) provides that the court "may

28

United States District Court
Northern District of California

1    order stricken from any pleading any insufficient defense or any redundant, immaterial,

2    impertinent, or scandalous matter."

3          Del Monte urges the Court to strike portions of the FAC that reference certain products and

4    representations that Plaintiffs do not allege they ever purchased or saw. Plaintiffs counter that they

5    have standing to represent a class of consumers even with respect to products they did not purchase

6    so long as those products are similar to the ones they actually purchased. For instance, regarding

7    Del Monte's online product representations, Plaintiffs argue that the nutrient claims on Del Monte's

8    website (referenced in FAC ¶¶ 239-240) were not limited to claims concerning the tomato products

9    they purchased but also included representations regarding Del Monte's spinach products and

10   claims regarding lutein on the same webpage. Plaintiffs allege they were exposed to Del Monte's

11   extensive labeling, advertising, and marketing campaign, and should not be required to plead

12   reliance on particular advertisements or statements with an unrealistic degree of specificity.

13         Del Monte's motion does not satisfy the requirements of Rule 12(f). The district courts in

14   this circuit have diverged on the issue of whether a plaintiff has standing to bring claims on behalf

15   of consumers who purchased similar but distinct products. *See Donohue v. Apple, Inc.*, 871 F.

16   Supp. 2d 913, 921-22 (N.D. Cal. May 10, 2012) (noting divergence and collecting cases). The

17   "critical inquiry [in these cases] seems to be whether there is sufficient similarity between the

18   products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 11-cv-2910

19   EMC, 2012 WL 2990766 at *11 (N.D. Cal. July 20, 2012) *motion to certify appeal denied,* 11-cv-

20   2910 EMC, 2012 WL 4892391 (N.D. Cal. Oct. 12, 2012) (different flavors of ice cream carried

21   under different brand names sufficiently similar where same wrongful conduct applied).[9] Where

22   the allegations indicate sufficient similarity between the products, any concerns regarding material

23   differences in the products can be addressed at the class certification stage. *Id.* at *13; *Donohue,*

24   _____

25         [9] *Compare with Carrea v. Dreyer's Grand Ice Cream, Inc.*, C-10-01044 JSW, 2011 WL
     159380 (N.D. Cal. Jan. 10, 2011), *aff'd*, 2012 WL 1131526 (9th Cir. Apr. 5, 2012) (plaintiff had
26   standing to bring claim as to Defendant's Original Vanilla Drumstick ice cream product he
     purchased but not as to the Dibs products because he did not allege that he purchased Dibs or
27   otherwise suffered any injury or lost money or property with respect to those products); *Larsen et al.
     v. Trader Joe's,* 2012 WL 5458396, at *3 (purchasers of cookies, juices, cinnamon rolls, and biscuits
28   did not have standing to bring claims as to crescent rolls they did not purchase).

United States District Court
Northern District of California

871 F. Supp. 2d at 922.

Here, Del Monte takes issue with Plaintiffs' references to Del Monte's products, including "SuperFruit®," "Fruit Bowls," and other individual products within a product line that Plaintiffs do not allege they purchased. Additionally, Del Monte urges the Court to strike references to several representations that Plaintiffs do not allege they saw, including the "Risk Factors" section from Del Monte's annual SEC report and store advertising banners, and website claims regarding spinach and lutein. However, in the Court's view, these products and representations are sufficiently similar to those purchased and seen by Plaintiffs, and any concerns regarding the differences among products at issue are better resolved at the class certification stage.

Thus, Del Monte has not established any other basis for striking any allegations as "redundant, immaterial, impertinent, or scandalous" within the meaning of Rule 12(f). For these reasons, Del Monte's motion to strike is **DENIED.**

**IV.    CONCLUSION**

For the foregoing reasons, Del Monte's motion to dismiss is **GRANTED IN PART AND DENIED IN PART WITHOUT LEAVE TO AMEND.** Del Monte's motion to strike is **DENIED.**

Del Monte shall file its responsive pleading no later than **June 5, 2013.**

This Order terminates Dkt. No. 28.

**IT IS SO ORDERED.**

Dated: May 15, 2013

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**