1
2
3
4
5
6
7
8
9
10
11
12
13

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SARAH SAMET and JAY PETERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PROCTER & GAMBLE COMPANY, KELLOGG COMPANY and KELLOGG SALES COMPANY,<br><br>Defendants. | Case No.: 5:12-CV-01891 PSG<br><br>**ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS**<br><br>**(Re: Docket Nos. 41, 43)** |

As the latest crest in the recent wave of food mislabeling suits in this district, Plaintiffs

Sarah Samet and Jay Peters (collectively, "Plaintiffs") bring a representative class action against

Defendants Procter & Gamble Company ("Procter & Gamble") and Kellogg Company and Kellogg

Sales Company ("Kellogg") (collectively, "Defendants"). Plaintiffs assert nine causes of action

relating to the alleged misbranding of Defendants' products. On November 26, 2012, Procter &

Gamble and Kellogg each moved to dismiss Plaintiffs' complaint. After reassignment to the

1

undersigned, the parties appeared for oral argument.  Having reviewed the papers, and considered the arguments and evidence presented, the court GRANTS-IN-PART Defendants' motion.

## I.       BACKGROUND

Except where otherwise noted, the court draws the following facts, taken as true for the purposes of a motion to dismiss, from Plaintiffs' complaint.[1]

Procter & Gamble is a multinational company that manufactures and sells a variety of packaged food products, including Pringles potato chip snacks.  Kellogg also sells packaged food products.  Since the initial filing of this suit, on June 1, 2012, Kellogg acquired the Pringles brand and business from Procter & Gamble.

Plaintiffs are self-described "health-conscious" California consumers who purchased all of Defendants' allegedly misbranded food products, "including Pringles snack chips, Kellogg's MorningStar Farms Hickory BBQ Riblets (10 oz box) and Kellogg's Fruity Snacks Mixed Berry (8 oz box)."[2]  Plaintiffs allege that in purchasing the above products, they reasonably relied on various nutritional content claims on Defendants' website and packaging labels, and had they known the "truth" about these products, Plaintiffs would not have purchased them.

On August 24, 2012, Plaintiffs filed an amended class action complaint on behalf of consumers who purchased products in the following categories (the "misbranded food products"):[3]

(1) Potato chip snacks labeled "0 Grams Trans Fat," but containing more than 13 grams of fat per 50 grams;
(2) Products labeled with the ingredient "evaporated cane juice;"
(3) Products labeled or advertised as "healthy" despite disqualifying under 21 C.F.R. 101.65;
(4) Fruit and fruit-flavored snacks; and
(5) Products sold in a slack-filled container.

---

[1] Plaintiffs filed an amended complaint on August 24, 2012.  *See* Docket No. 25.

[2] Docket No. 25 ¶ 25.

[3] *See* Docket No. 25 at 1-2.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs assert the following claims against Defendants: violations of California Unfair Competition Law ("UCL");[4] violations of Fair Advertising Law ("FAL");[5] violations of Consumer Legal Remedies Act ("CLRA");[6] restitution based on unjust enrichment/quasi-contract; violations of the Beverly-Song Act; and violations of the Magnuson-Moss Act.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[8]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]  Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[10]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[11]  The court's review is

---

[4] *See* Cal. Bus. & Prof. Code §§ 17200 *et. seq.*  The UCL "borrows" violations of other laws as unlawful practices and then provides an independent action.  *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383, 826 P.2d 730 (1992).

[5] Cal. Bus. & Prof. Code §§ 17500 *et. seq.*

[6] Cal. Civ. Code §§ 1750 *et. seq.*

[7] Fed. R. Civ. P. 8(a)(2).

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[10] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[11] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[12]  However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[13]

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear… that the complaint could not be saved by amendment."[14]

## B.    Rule 9(b)

Claims sounding in fraud or mistake must comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b) by pleading with particularity the circumstances surrounding the fraud or mistake.  Rule 9(b) applies to the state claims at issue here as they involve allegations that consumers were misled.[15]  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge."[16]  This includes "the who, what, when, where, and how of the misconduct charged."[17]

## III.    DISCUSSION

## A.    Requests for Judicial Notice

As a preliminary matter, both parties have requested that the court take judicial notice of documents pursuant to Fed. R. Evid. 201.  Defendants ask that the court take judicial notice of

---

[12] *See id.* at 1061.

[13] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[14] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[15] *See Jones v. ConAgra Foods, Inc.*, Case No. 12-01633 CRB, 2012 WL 6569383 (N.D. Cal. Dec 17, 2012).

[16] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[17] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

packaging labels for Pringles, Fruity Snacks Mixed Berry, and MorningStar Farms Hickory BBQ Riblets.[18]  Plaintiffs do not object, but also ask that the court take notice of packaging labels for the same products; screenshots of Defendants' websites; and the websites "Kelloggs.com," "pringles.com," and "morningstarfarms.com" generally.[19]  A court may take judicial notice of a document on which the complaint "necessarily relies" if: (1) "the complaint refers to the document," (2) "the document is central to the plaintiff's claim," and (3) "no party questions the authenticity of the copy attached to the 12(b)(6) motion."[20]  The packaging labels and website screenshots satisfies these requirements.[21]  However, the court will not take judicial notice of Defendants' websites generally, because Plaintiffs' have not shown which pages are specifically "central" to their claim or referred to by the complaint.

**B.      Standing**

Defendants first challenge Plaintiffs' standing to bring their claims.  To establish Article III standing, a plaintiff must plead facts showing (1) injury-in-fact, (2) causation, and (3) redressability.[22]  Injury-in-fact requires that the plaintiff suffer harm to "a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[23]  In a class action, at least one named plaintiff must have suffered an injury-in-fact.[24]

---

[18] *See* Docket Nos. 40, 44.

[19] *See* Docket Nos. 59, 60.

[20] *Daniels-Hall v. Natl. Educ. Assn.*, 629 F.3d 992, 998 (9th Cir. 2010).

[21] Courts often take judicial notice of packaging labels in false advertising suits when neither party objects to the authenticity of the labels and the labels are central to the plaintiff's complaint.  *See, e.g.*, *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012).

[22] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

[23] *Id.*

[24] *See Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2002).

5

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

The UCL, FAL, and CLRA additionally require the plaintiff to specifically allege that she suffered an *economic* injury.[25]  A plaintiff has suffered economic injury when she has either: "(1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim."[26]

Defendants argue that Plaintiffs lack standing under both Article III and the economic injury requirements of the California statutes because none of the products are alleged to have been "tainted, spoiled, adulterated, or contaminated."[27]  Defendants cite *Boysen v. Walgreen Co.* in support of this contention, where Judge Illston held that because the plaintiff "paid for fruit juice, [] received fruit juice, [and] consumed [it] without suffering harm," he could not establish economic injury by alleging the fruit juice contained unlawful amounts of lead and arsenic.[28]  Notably, however, Judge Illston based her decision on the fact that the plaintiff did "not allege that had defendant's juice been differently labeled, he would have purchased an alternative juice."[29]  He only argued that he had purchased and consumed fruit juice, but later found out that the lead and arsenic levels in the juice were unsatisfactory to him.[30]

Consequently, it cannot be said that a plaintiff suffers sufficient injury under deceptive advertising and unfair competition statutes only when the product received is polluted, as Defendants suggest.  Unlike in *Boysen*, Plaintiffs here allege that as health-conscious consumers,

---

[25] *See* Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323, 326 (2011).

[26] *Ivie v. Kraft*, Case No. 12-2554 RMW, 2013 WL 685372, at *4 (February 25, 2013) (quoting *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1125 (N.D. Cal. 2010)).

[27] *See* Docket No. 43 at 19.

[28] *See Boysen v. Walgreen Co.*, Case No. 11-06262 SI, 2012 WL 2953069, at *4-5 (N.D. Cal. July 19, 2012) (finding that plaintiff suffered no economic injury when he "paid for fruit juice, [] received fruit juice, [and] consumed [it] without suffering harm").

[29] *Id.* at *7.

[30] *See id.*

6

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

they relied on the misleading product labels in purchasing the products, and had they known the truth, they would not have purchased the products at the premium price paid.[31]  Accepting as true these allegations for the purpose of a motion to dismiss, Plaintiffs spent money they otherwise would have saved but for defendants' acts of unfair competition.  Courts in this district have overwhelmingly found that such allegations are sufficient to establish economic injury.[32]  Whether Plaintiffs actually did pay a premium price as a result of false and misleading labeling remains to be determined at a later stage in this litigation.  As alleged, however, the injury of paying a higher price for a falsely advertised product is enough to show Plaintiffs suffered particularized harm to a legally protectable interest in the form of an economic loss.[33]

## C.    Statutory Framework

Before considering the issue of preemption, a brief summary of the applicable statutory framework is warranted.  Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."[34]  The FDA has implemented regulations to achieve this objective.[35]  The FDA enforces the FDCA and

---

[31] *See* Docket No. 25 ¶¶ 8, 86.

[32] *See Kosta v. Del Monte Corp.*, 12-CV-01722-YGR, 2013 WL 2147413, at *11-12 (N.D. Cal. May 15, 2013)*; Ivie*, 2013 WL 685372, at *4; *Lanovaz v. Twinings N. Am., Inc.*, Case No. 12-02646-RMW, 2013 WL 675929, at *6 (N.D. Cal. Feb. 25, 2013); *Jones*, 2012 WL 6569393, at *9; *Chacanana*, 752 F.Supp.2d at 1125; *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x 359, 360-61 (9th Cir. 2009); *Khasin v. Hershey Co.*, Case No. 12-CV-01862 EJD, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012).

[33] *See Khasin*, 2012 WL 5471153, at *6; *Carrea v. Dreyer's Grand Ice Cream, Inc.*, Case No. 10-01044 JSW, 2011 WL 159381, at *2-3 (N.D. Cal. Jan. 10, 2011); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) (holding that the plaintiff's allegations that they paid a premium price for the mislabeled beverages was sufficient to establish economic injury); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (2006) (ruling that for purposes of the FAL, UCL, and CLRA, restitution for products falsely labeled "Made in U.S.A." was the price differential between the falsely labeled products and similar products without that label).

[34] *See* 21 U.S.C. § 393.

[35] *See, e.g.*, 21 C.F.R. § 101.1 *et. seq.*

7

United States District Court
For the Northern District of California

accompanying regulations; "[t]here is no private right of action under the FDCA."[36]  In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling.[37]  The NLEA adds an express preemption provision, which provides that "[e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish… any requirement" for the labeling of a container for food, or for nutrition labeling, or for nutrient content claims, "that is not identical" to the requirements of that section.[38]  In other words, states may not adopt food labeling requirements governed by the NLEA that are different from, or additional to those imposed by the federal statutory scheme.[39]  The NLEA is clear, however, that preemption does not extend further than "the plain language of the statute itself."[40]

Plaintiffs are not suing under the FDCA, but under California state law.  The Sherman Food, Drug, and Cosmetic Act ("Sherman Law")[41] has adopted wholesale the food labeling requirements of the FDCA and NLEA as "the food regulations of this state."[42]  The Sherman Law

---

[36] *Ivie,* 2013 WL 685372, at *1 (internal citations omitted).

[37] *See, e.g.,* 21 U.S.C. § 343 *et. seq.*  While the NLEA and FDA stand guard over labeling of most food and nonalcoholic beverages, the United States Department of Agriculture ("USDA") regulates the labeling of meat, poultry, and certain egg products pursuant to the Federal Meat Inspection Act and the Poultry Products Inspection Act.  An important distinction between the two schemes is that while USDA labels are pre-approved, FDA labels are not.

[38] 21 U.S.C. § 343-1(a).

[39] *See In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.,* 588 F.Supp.2d 527, 532 S.D. N.Y. 2008).  *See Riegel v.Medtronic, Inc.,* 552 U.S. 312, 330 (2008).

[40] *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1091 (2008) (discussing § 6(c)(1) of the NLEA, which states that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the FDCA")*.*

[41] *See* Cal. Health & Safety Code §§ 109875 *et. seq.*

[42] Cal. Health & Safety Code § 110100.

8

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

declares any food to be "misbranded" if it is "false or misleading in any particular," if the labeling "does not conform with the requirements for nutrition labeling" set forth in certain provisions of the NLEA.[43]  The UCL prohibits "any unlawful, unfair… or fraudulent business act or practice."[44] "The FAL makes it unlawful to induce the public to enter into any obligation through the dissemination of 'untrue or misleading' statements."[45]  The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.[46]

**D.    Preemption**

Defendants argue that Plaintiffs' state law claims are preempted by the FDCA.  Under the Supremacy Clause, federal law is the "supreme law of the land," so where state law is contrary to valid federal law, federal law will control.

Federal preemption applies under three circumstances: (1) the federal law expressly preempts the state law, (2) the federal law conflicts with the state law, or (3) the federal law was intended to occupy the entire field.[47]  Express preemption applies where Congress has specifically stated in the statutory language that its enactments preempt state law.[48]  Conflict preemption occurs "where it is impossible for a private party to comply with both state and federal requirements."[49] Implied or field preemption arises when federal law "regulates conduct in a field that Congress

---

[43] Cal. Health & Safety Code §§ 110660, 110665, 110670.

[44] Cal. Bus. & Prof. Code § 17200.

[45] *Lam v. Gen. Mills, Inc.*, 859 F.Supp.2d 1097, 1103 (N.D. Cal. 2012).

[46] Cal. Civ. Code § 1770.

[47] *See English v. General Electric Co.,* 496 U.S. 72, 78-79 (1990).

[48] *Id.* at 79.

[49] *Id.*

9

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

intended the Federal Government to occupy exclusively."[50]  Such intent may be inferred from the scope of the federal regulation – where the statutory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or it covers "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."[51]

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case."[52]  There is generally a presumption against preemption, the rationale being that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."[53]  This presumption applies with particular force where, as here, Congress has legislated in an area which the states have "traditionally occupied."[54]  States have historically had strong local interests in protecting the health and safety of their citizens, which is covered by the FDCA.[55]

As noted above, the NLEA contains an express preemption provision: "[e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish… any requirement for a food" which is not identical to the requirements of the FDCA.[56]  In *Lohr v. Medtronic*, the Supreme Court considered the nearly identical express preemption provision in the Medical Devices Amendment ("MDA") to the FDCA, 21 U.S.C. §

---

[50] *Id.*

[51] *Id.*

[52] *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

[53] *Id.*

[54] *Id.*

[55] *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).

[56] 21 U.S.C. § 343-1(a).

10

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

360k(a).[57]  The Supreme Court held that Section 360k(a) did not bar the plaintiff's negligence and strict-liability claims because they were based on the defendant's failure to use reasonable care.[58] Further, nothing in that provision "denies [states] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements."[59]

The Supreme Court later considered the implied preemption effect of another provision of the FDCA, Section 337(a), which provides that "[e]xcept as provided in subsection, all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."  The effect of this provision is that there is no private right of action to enforce the FDCA.  In *Buckman Co. v. Plaintiffs' Legal Comm.*, the Supreme Court held that the plaintiffs' claims that defendant made fraudulent representations to the FDA in securing approval for its orthopedic bone screws were impliedly preempted by Section 337(a).[60]  Although the plaintiff characterized his claims as state law tort claims (if defendant had not deceived the FDA, the product would not have been approved, and plaintiffs would not have sustained the injury), his suit was deemed to be an improper attempt to privately enforce the FDCA.[61]  The plaintiff's claim depended on enforcing provisions of the FDCA, and so the suit conflicted with the federal government's power to "punish and deter fraud against its agencies."[62]

---

[57] Section 360k(a) provides the following:
"Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device…"

[58] *Lohr*, 518 U.S. at 495.

[59] *Id.*

[60] *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001).

[61] *See id.* at 343, 353.

[62] *See id.* at 348.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

In *Perez v. Nidek*, the Ninth Circuit recently came to a similar conclusion. Perez alleged that the doctors that performed his LASIK eye surgery failed to disclose that the eye surgery was not yet approved by the FDA for hyperopic use, but the MDA did not require the defendant to give such notice, so the claims were expressly preempted.[63] Perez's claims also were impliedly preempted under Section 337(a).[64] Although the section does not preempt all fraud or false advertising claims related to the surgeries, Perez could not bring suit solely on the basis that the defendants did not disclose lack of FDA approval.[65]

The rule that emerges from these cases is that "the plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by [Section] 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)."[66] The same hurdles apply to the FDCA's preemptive force in the food labeling context. First, the plaintiff must be suing for conduct that violates the FDCA's food labeling requirements, else the claim is expressly preempted under Section 343-1(a), the NLEA's counterpart to Section 360k(a)'s express preemption provision. Second, the plaintiff must not be suing to enforce provisions of the FDCA, which would be impliedly preempted under Section 337(a) of the FDCA, but rather to vindicate an independent right under state law.

1.   Express Preemption

Plaintiffs' claims must first overcome express preemption under Section 343-1(a), which as noted above prohibits any requirements that are different from, or additional to the federal statutes and regulations.[67] Express preemption is especially appropriate where the practice identified by the

---

[63] *See Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1112 (9th Cir. 2013).

[64] *See id.* at 1119.

[65] *Id.* at 1120.

[66] *Id.* (emphasis in original).

[67] *See Riegel*, 552 U.S. at 330.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

plaintiff is explicitly governed by either the FDCA or its regulations, and the defendant is in compliance with those requirements.[68]

One of Plaintiffs' claims is that Fruity Snacks product packaging is misleading because it displays pictures of strawberries, blueberries, and raspberries next to the statement "made with real fruit," which implies that the product contains the fruits pictured.  In actuality, the only fruit ingredient in the product is apple puree concentrate.[69]  Defendants contend that this claim is expressly preempted because certain provisions of the FDCA and accompanying regulations allow manufacturers to use the name and image of fruit on a product's packaging to describe the flavor of the product, even if that product does not actually contain any of that particular fruit.[70]  Regulation 101.22(i) states that the label or advertising may contain words or vignettes (including depictions of the fruit) describing the product's flavor even "if none of the natural flavor used in the food is derived from the product whose flavor is simulated," so long as the product is labeled "artificially flavored."  Defendants' Fruity Snacks packaging, which has been judicially noticed by the court, complies with these requirements – along with the "Mixed Berry" label and depictions of various berry-shaped snacks, the label also contains the words "artificially flavored."[71]  The complaint essentially argues that even though the Fruity Snacks packaging complies with Section 101.22(i), it is misleading because it is placed in close proximity to the statement, "Made with Real Fruit."

---

[68] *Cf. Lam,* 859 F.Supp.2d at 1103 (holding that the plaintiff's "natural" and "all natural" claims were expressly preempted because defendant's labeling was expressly permitted by FDA regulations).

[69] *See* Docket No. 25 ¶¶ 102-109.

[70] *See* 21 U.S.C. § 343(j), (k); *See also* 21 C.F.R. § 101.22(i).

[71] *See* Docket No. 44, Ex. 1.  While the packaging also contains the words "naturally… flavored," which might violate other regulations, Plaintiffs' complaint is not centered around this potential violation.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

This requirement of Plaintiffs' claim goes beyond what is required by the FDCA and therefore is expressly preempted.[72]

Defendants also argue that the slack-fill claims against Pringles snack chips and Fruity Snacks are expressly preempted. Slack-fill is governed by 21 C.F.R. 100.100(a), which prohibits "nonfunctional" slack-fill which does not exist for permissible purposes such as "[p]rotection of the contents of the package," "[u]navoidable product settling during shipping and handling," and the like. Plaintiffs do not expressly plead any nonfunctionality. Although Defendants characterize Plaintiffs' complaint improper attempt to impose an additional requirement, i.e., prohibition of slack-fill regardless of its purpose, this is more properly construed as a less-than-perfect recitation of the elements of the claim. Nevertheless, the complaint expressly references the regulation governing slack-fill, including the functional exceptions to the rule, and states that Defendants had "no lawful justification" for using slack-fill. Drawing all inferences in favor of Plaintiffs, as required for purposes of a motion to dismiss, the court finds Plaintiffs have alleged that Defendants violated the FDA regulation governing slack-fill and thus the claim is not preempted.[73]

### 2.   Field preemption

The court next considers Defendants' arguments that Plaintiffs' case should be barred because it is an improper attempt to enforce the FDCA. Relying on *Perez* and *Buckman*,[74]

---

[72] *See Lam*, 859 F.Supp.2d at 1097 (holding that claim challenging the label "strawberry natural flavored" when the product contained no strawberry ingredients was preempted because of the same provision, 21 C.F.R. § 101.22(i)).

[73] *See Ivie*, 2013 WL 685372, at *11 (holding that the slack-fill claims were not preempted because plaintiff quoted the FDA regulation and alleged that defendants lacked any legal justification for employing unlawful slack fill packaging).

[74] Defendants also rely on *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), which they briefed before the Ninth Circuit's *Perez* decision was published. The court in *Pom Wonderful LLC* held that the FDCA and its regulations barred the "name and labeling aspects" of the plaintiff's federal Lanham Act claim. *See id.* However, courts in this district have rejected Defendants' argument that *Pom Wonderful LLC* applies equally to preclude state law claims. *See, e.g.*, *Brazil v. Dole Food Co., Inc.*, Case No. 12-CV-01831-LHK, 2013 WL 1209955, at *7 (N.D. Cal. Mar. 25, 2013); *Delacruz*, 2012 WL 2563857, *7 n. 3; *Khasin v. Hershey Co.*, 2012 WL 5471153, *5.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants contend that because Plaintiffs' claims "exist solely by virtue of the FDCA requirements," they are preempted.  But Defendants read these cases too broadly.  Unlike those brought in *Perez* and *Buckman*, Plaintiffs' claims here do not rest on violations of the FDCA, but on the UCL, CAL, FLRA, and Sherman Law.  Plaintiffs' claims vindicate the separate and independent right to be free from deceptive and misleading advertising.  Although Defendants argue Plaintiffs should not be allowed to "circumvent" the FDCA's bar on private enforcement, this argument falls flat in light of the ample evidence that Congress and the FDA intended that the states would be free to adopt a statutory scheme paralleling the FDCA and offer a private suit of enforcement of those parallel state regulations.[75]  Further, there is simply "no indication from the text of the NLEA or its legislative history that Congress intended a sweeping preemption of private actions predicated on requirements contained in state laws."[76]  Both the legislative history and the text of the statute itself makes clear that Congress did not intent to prevent private citizens from bringing unfair competition or other state-law claims, so long as they did not impose different or additional requirements from those set forth in the FDCA.[77]

Moreover, Plaintiffs' claims are factually distinct from those brought in *Perez* and *Buckman*, which were found to be impliedly preempted "because they conflicted with the statutory scheme, which amply empowers the FDA to punish and deter fraud against the Administration."[78]  In those cases, the plaintiff sought only to punish the defendant's fraud against the federal agencies, rather than any wrongdoing directed at the plaintiff.  By contrast, Plaintiffs in this case

---

[75] *See Lohr*, 518 U.S. at 495 (holding that the FDCA does not deny states "the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements").

[76] *Brazil*, 2013 WL 1209955, at *7 (quoting *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008)).

[77] *See id.*

[78] *Perez*, 711 F.3d at 1119.

15

are suing because the claims are misleading and deceptive under California law, not merely because Defendants' products violate the FDCA, or because Defendants committed fraud on the FDA.  Plaintiffs' claims for damages arise from state-made common law duties that also happen to coincide with the federal statutory scheme, which ensures that these claims will not conflict with or impair the FDA's regulatory power.  As a result, Plaintiffs' claims fit through the "narrow gap" contemplated by the Ninth Circuit.[79]

## E.    Primary Jurisdiction Doctrine

Defendants also argue that the court should "refer" this dispute to the FDA under the primary jurisdiction doctrine.  "In practice, this means that the court either stays proceedings or dismisses the case without prejudice, so that the parties may seek an administrative ruling" with the relevant administrative agency.[80]  Although there is no set rule for determining when to apply the doctrine, it is generally applied when there is "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."[81]  This referral should not be applied to every that might be within the "ambit" of a federal agency, but should only be used when the issue is one of first impression, or is particularly complicated and has been committed by Congress to a particular regulatory agency.[82]

The court is not convinced that the primary jurisdiction doctrine should apply to all matters of food labeling.  Allegations of deceptive labeling do not require consultation of the expertise of

---

[79] *Id.* at 1120.

[80] *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

[81] *See id.* at 1115.

[82] *See id.* at 1114.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

the FDA as "every day courts decide whether conduct is misleading."[83]  Defendants also argue that Congress has determined that the FDA shall have primary jurisdiction over all matters of food labeling, which is not only incorrect but appears to conflate primary jurisdiction with field preemption.  As discussed at length above, although Congress has given the FDA regulatory power over food labeling, it cannot be said that this amounts to exclusive jurisdiction over the entire area of food false advertising and deceptive labeling.  While nutrition labeling requires a certain level of uniformity, the FDCA does not prohibit separate state-law actions touching upon this field, so long as they do not require more than the FDCA and accompanying regulations.

Regarding the "evaporated cane juice" claim, Defendants more specifically argue that the primary jurisdiction should apply because the FDA does not currently have a final position on this issue, and is in the process of developing one.  In 2009, the FDA issued a Draft Guidance on the use of the term "evaporated cane juice" specified the document was "nonbinding," "do[es] not establish legally enforceable responsibilities," and was circulated for the purpose of soliciting comments only.[84]  While it may be true that the FDA is developing a specific regulation on this issue, there is already an FDA regulation governing the use of evaporated cane juice as an ingredient.  21 C.F.R. 168.130 requires that "[t]he common or usual name of a food" shall be used to "identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients."  As alleged, Defendants' products contain "sugar," which should be cited by its "common or usual name" under the FDA regulations.  This is sufficient to proceed no matter what final guidance may be issued by the agency.

---

[83] *Jones*, 2012 WL 6569393, at *6.

[84] FDA, Draft Guidance for Industry, 2009 WL 3288507, at *1.  *See also* 74 Fed. Reg. 51610-01 (Oct. 7, 2009) (explaining that draft guidance documents do not "create or confer any rights for or on any person and does not operate to bind FDA or the public").

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

**F.     Failure to state a claim**

The court next considers whether Plaintiffs have satisfied their burden of pleading their UCL, FAL, and CLRA claims with particularity.  To state a claim under each of these statutes, the plaintiff must show that a reasonable consumer would be deceived by the packaging and that plaintiff actually relied on the packaging and was deceived.[85]  Because factual allegations must reach beyond a merely speculative level, Plaintiffs must show that members of the public are "likely to be deceived."[86]  Defendants contend that Plaintiffs did not do so for the following claims.

1.     <u>Pringles – 0g Trans Fat Claim</u>

Plaintiffs claim that the Pringles packaging contains the claim "0g Trans Fat," in violation of 21 U.S.C. § 343(r) and 21 C.F.R. 101.13(h).  The statute provides that when a "nutrient content claim" is made, and the product contains more than the maximum levels of total fat, saturated fat, sodium, or cholesterol prescribed by the regulations,[87] then the nutrient content claim must be accompanied by the statement "See nutrition information for [the exceeding ingredient] content." In essence, the statute requires that "whenever an express nutrient content claim is made on a food label, that label must bear further disclosures about ingredients that the FDA has found pose diet-related health risks."[88]  Plaintiffs allege that although Pringles contains more than the specified threshold of total fat set by the FDA, the Pringles label does not include the required disclosure.

Defendants urge the court to hold as a matter of law that the statement "0g Trans Fat" would not mislead a reasonable consumer.  In *Delacruz v. Cytosport*, the court ruled that a similar

---

[85] *See Xybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1152 (9th Cir. 2008).

[86] *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

[87] 21 C.F.R. 101.13(h)(1) sets the maximum levels at "13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving."

[88] *Wilson v. Frito-Lay N. Am., Inc.,* 12-1586 SC, 2013 WL 1320468, at *7 (N.D. Cal. Apr. 1, 2013).

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

"0g Trans Fat" claim was not actionable because the "alleged distraction" from the product's unhealthy fat and saturated fat content did not amount to a "false statement or misrepresentation."[89] But the California statutes in question prohibit not merely false statements, but also misleading ones.[90] For example, a label could disclose all truthful information, but hide the most relevant information in infinitesimal print, and thus as a whole be misleading to the reader. The FDA regulations in question were created to address such concerns.[91] Furthermore, other courts have held that the statement "0g Trans Fat" could mislead a reasonable consumer.[92] The same may be true here, but Plaintiffs have not alleged in the detail required by Rule 9(b) how Plaintiffs were actually misled. Plaintiffs must offer more than their legal conclusion that they were "unaware" that the products were "misbranded" and contained fat content in excess of the amounts set forth in FDA regulations.[93]

> 2.     Pringles and Fruity Snacks – Slack-Fill Claim

For the Pringles and Fruity Snacks products, Plaintiffs allege facts showing that they were deceived by the slack-fill packaging and thought they were receiving more of the product than they actually received.[94] Defendants argue that as a matter of law a reasonable consumer would know

---

[89] *Delacruz,* 2012 WL 2563857, at *8.

[90] *Williams*, 552 F.3d at 938 ("The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (internal quotations omitted).

[91] *Chacanaca,* 752 F.Supp.2d at 1122 ("This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading").

[92] *See, e.g., Wilson,* 2013 WL 1320468, at *13 ("the Court cannot conclude as a matter of law that Plaintiffs' '0 Grams Trans Fat' claims would not be misleading or deceptive to a reasonable consumer").

[93] Docket No. 25 ¶ 80.

[94] *See id.* ¶¶ 111-116 ("Defendants routinely employed slack filled packaging to mislead consumers into believing they were receiving more than they actually were" and "Plaintiffs… were deceived by Defendants' misleading slack filled packaging.").

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that there is extra air in a bag of snacks.  While this may be true, the amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage.[95]

        3.   <u>"Healthy" and "Wholesome" Claims</u>

Plaintiffs also bring claims that Defendants used the words "healthy" and "wholesome" in connection with certain goods in violation of 21 C.F.R. 101.65(d)(2).  Plaintiffs' allegations falls far short of the pleading requirements of Rule 9(b).  Although Plaintiffs refer to "healthy" and "wholesome" claims in statements made on Defendants' labeling and website, they do not provide the entire statement, nor do they attach the relevant label.[96]  They also fail to clarify which products are specifically at issue, where the statements were found, and how Plaintiffs were actually misled.  "[A] single out-of-context phrase" does not provide Defendants with sufficient notice of Plaintiffs' claims on this issue.[97]

Further, Plaintiffs have not alleged facts supporting their claim that the website constitutes "labeling," which is defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) *accompanying* such article."[98]  Only if the plaintiff establishes that the label contains a specific statement referring the consumer to a specific

---

[95] *See Williams*, 552 F.3d at 938-39 (holding the district court erred in determining as a matter of law that Gerber Fruit Juice Snacks packaging was not deceptive because "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer"); *Cf. Werbel ex rel. v. Pepsico, Inc.*, Case No. 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) (ruling that as a matter of law, no reasonable consumer would believe that Cap'n Crunch Crunch Berries derives any nutritional value from berries).

[96] *See* Docket No. 25 ¶¶ 81-90.

[97] *Hairston v. S. Beach Beverage Co., Inc.,* CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012).

[98] 21 U.S.C. § 321(k) (emphasis added).

20

website for information about the claim in question can the website be considered to be

"accompanying" the article as "labeling."[99]

### 4.   Evaporated Cane Juice

Plaintiffs' "evaporated cane juice" claims allege that this term is used as a "false and

misleading name" for what is commonly known as sugar or dried cane syrup.[100]  But Plaintiffs fail

to allege any facts to support this claim.  They do not specify which products and labels deceived

Plaintiffs, how Plaintiffs relied on the labels, and why a reasonable consumer would be likely to be

deceived.  It is not enough to allege that the products are "misbranded" under the FDCA, which

only allows Plaintiffs to avoid express preemption.  Plaintiffs also must allege with particularity the

facts supporting their claims under California consumer protection statutes.

### 5.   Fruity Snacks – "Fortified" with Vitamin C Claims

Plaintiffs' complaint charges that Fruity Snacks packaging deceptively uses the term

"fortified" in violation of 21 C.F.R. § 101.54.  Defendants point out that in the Fruity Snacks label

they submitted to the court, there is no claim that the snacks are "fortified" with Vitamin C.  As

this label may be but one label of many distributed during the relevant period, the court is not

persuaded that this warrants dismissal with prejudice.  However, Defendants are entitled to notice

of the specific allegations against them in order to form a defense.  Under Rule 9(b), Plaintiffs

should "identify[] or attach[] representative samples of [the] misleading materials" in order to

---

[99] *See Wilson,* 2013 WL 1320468, at *14 (N.D. Cal. Apr. 1, 2013) (holding that even though the product label referred the plaintiffs to the defendant's website, the label did not direct the reader to visit the website for further nutritional information, and so the website did not constitute "labeling").

[100] Docket No. 25 ¶ 91.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

sufficiently make out a claim.[101]  Without any such samples, neither the court nor the Defendants

have information as to the "what, when, where" of Plaintiffs' claims sounding in fraud.

## G.    Safe Harbor

Defendants further argue that Plaintiffs' claims are barred by the "safe harbor doctrine,"

which provides that where the legislature has determined certain conduct to be permissible,

plaintiffs should not be allowed to use general unfair competition law to "assault" that harbor.[102]

As these arguments regarding safe harbor cover the same ground as those regarding federal express

preemption that were discussed above, the court need not discuss this issue further.

## H.    Restitution based on Unjust Enrichment/Quasi-Contract

Defendants challenge that Plaintiffs' restitution claim should be dismissed because they are

duplicative of Plaintiffs' other claims.  Restitution is typically applied as a remedy to a "quasi-

contractual claim in order to avoid unjustly conferring a benefit upon a defendant where there is no

valid contract."[103]  But as an equitable remedy, restitution requires that the plaintiff show that

remedies at law are inadequate to redress her injury.[104]  The complaint alleges no facts not already

covered by the UCL, FAL, and CLRA claims, which already provide for restitution as a remedy.

As courts have dismissed unjust enrichment claims "that are merely duplicative of statutory or tort

claims,"[105] the claims here also must be dismissed.

---

[101] *Ries v. Hornell Brewing Co., Inc.*, 5:10-CV-01139-JF/PSG, 2011 WL 1299286 (N.D. Cal. Apr. 4, 2011).

[102] *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999).

[103] *Rosal v. First Fed. Bank of Cal.*, 671 F.Supp.2d 1111, 1113 (N.D. Cal. 2009).

[104] *See Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (1986).

[105] *See, e.g., In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F.Supp.2d 1070, 1077 (N.D. Cal. 2011); *Diacakis v. Comcast Corp.*, Case No. C-11-3002 SBA, 2012 WL 43649, at *6 (N.D. Cal. Jan. 9, 2012).

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**I.      Violations of Song-Beverly Act and Magnuson-Moss Act**

Plaintiffs' complaint alleges violations of the California Beverly-Song Act and the federal Magnuson-Moss Act.  It is clear that the Magnuson-Moss Act, aimed at written warranties governed by the FDCA, does not apply here because the statements at issue are not "warranties" as defined by the Act.  A warranty is defined as a "written affirmation of fact" that the product is "defect free or will meet a specified level of performance over a specified period of time."[106]  None of the statements challenged by Plaintiffs qualify as such an affirmation.

Plaintiffs' claims under the Song-Beverly Act are also inapposite.  The Act permits a cause of action for damages for a buyer of "consumer goods" who is injured by a breach of warranty.[107]  However, the statute expressly does not apply to "consumables," or "any product that is intended for consumption by individuals."[108]  The products here are clearly products intended for consumption, and Plaintiffs admit as much in their complaint.[109]

In any event, Plaintiffs have not refuted these arguments in their opposition, and so these claims are deemed abandoned.

**IV.      CONCLUSION**

Plaintiffs' claims under the Magnuson-Moss Act, the Song-Beverly Act, and restitution/unjust enrichment are DISMISSED with prejudice and without leave to amend. Plaintiffs' claims against Fruity Snacks for use of the fruit vignettes and "Made with Real Fruit" are DISMISSED with prejudice and without leave to amend because it is expressly preempted. Plaintiffs' claims against Pringles for "0g Trans Fat;" the "healthy" and "wholesome" claims; "evaporated cane juice" claims; and Fruity Snacks "fortified" claims are DISMISSED without

---

[106] 15 U.S.C. § 2301(6)(A).

[107] Cal. Civ. Code § 1794.

[108] Cal. Civ. Code § 1791(a), (d).

[109] *See* Docket No. 25 ¶ 220.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

prejudice and with leave to amend.  The motion to dismiss the slack-fill claims is DENIED.  Any amended complaint shall be filed no later than July 3, 2013.

IT IS SO ORDERED.

Dated:  June 18, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**