**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Kelly M. Morrison (Cal. Bar No. 255513)
kmorrison@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA  90071-2054
Phone:      (213) 239-5100
Facsimile:  (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (admitted *pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:      (312) 222-9350
Facsimile:  (312) 527-0484

Attorneys for Defendants
Kellogg Company and
Kellogg Sales Company

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH SAMET and JAY PETERS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> PROCTER & GAMBLE COMPANY, KELLOGG COMPANY and KELLOGG SALES COMPANY, <br><br> Defendants. | No. CV 12-01891-PSG <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [Request for Judicial Notice and Proposed Order filed concurrently herewith] <br><br> Hearing Date: October 1, 2013 <br> Time: 10:00 a.m. <br> Courtroom: 5 <br> Judge:  Hon. Paul S. Grewal <br><br> Second Amended Complaint Filed: July 2, 2013 |

\* \* \*

PLEASE TAKE NOTICE that, on October 1, 2013, at 10:00 a.m., or as soon thereafter as the Court is available, in Courtroom 5 of the federal courthouse located at 280 South 1st Street, San Jose, California 95113, Defendants Kellogg Company and Kellogg Sales Company (collectively, "Kellogg") will and hereby do move the Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that (1) Plaintiffs' claims are preempted by federal law, (2) Plaintiffs' Complaint fails to state a plausible legal claim, and (3) the FDA has primary jurisdiction over matters of food labeling

Kellogg's Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice, any additional briefing on this subject, and the evidence and arguments that will be presented to the Court at the hearing on this matter.

Dated:  August 16, 2013

JENNER & BLOCK LLP

  /s Kenneth K. Lee
By: Kenneth K. Lee

Attorneys for Defendants

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES TO BE DECIDED.................................................................. vi

INTRODUCTION ..................................................................................................................1

SUMMARY OF PLAINTIFFS' ALLEGATIONS ..........................................................3

ARGUMENT .........................................................................................................................3

    I.     Plaintiffs' "100% DV Vitamin C" Claim Should Be Dismissed...........................3

          A.    "100% DV Vitamin C" Is Not Likely to Deceive a Reasonable Consumer ...................................................................................................4

          B.    The "100% DV Vitamin C" Claim is Preempted by Federal Law ..............6

          C.    Plaintiffs Fail to Allege Reliance on the "100% DV Vitamin C" Language...................................................................................................8

          D.    The Website Claim Should Also Be Dismissed .........................................9

    II.    The Evaporated Cane Juice Claim Should Be Dismissed ....................................10

          A.    A "Significant Portion" of the General Public "Acting Reasonably" Would Not Be Misled by the Term "Evaporated Cane Juice" Found on the Side Panel....................................................................................10

          B.    The Claim Should Be Dismissed Under the Primary Jurisdiction Doctrine.................................................................................................13

CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*Astiana v. Hain Celestial Grp., Inc.*,
   905 F. Supp. 2d 1013 (N.D. Cal. 2012) ................................................................14

*Ackerman v. Coca-Cola Co.*,
   No. 09-395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)........................................8

*Barnes v. Campbell Soup Co.*,
   No. 12-5185, ECF No. 55 (N.D. Cal. July 25, 2013) .............................................14

*Brod v. Sioux Honey Ass'n, Co-op.*,
   --- F. Supp. ----, 2013 WL 752479 (N.D. Cal. 2013).............................................5

*Bronson v. Johnson & Johnson, Inc.*,
   No. 12-4184, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013)....................................7

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 F. App'x 113 (9th Cir. 2012) .........................................................................7

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) .............................................................................13

*Cox v. Gruma Corp.*,
   No. 12-6502, 2013 WL 3828800 (N.D. Cal. July 11, 2013) ..................................14

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ....................................................................4, 6, 11, 12

*Hairston v. S. Beach Beverage Co.*,
   No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012)........................5, 6, 12

*Hood v. Wholesoy & Co.*,
   No. 12-5550, 2013 WL 3553979 (N.D. Cal. July 12, 2013) ..............................13, 14

*Ivie v. Kraft Foods Global, Inc.*,
   No. 12-2554, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ...............................3, 14

*Ivie v. Kraft Foods Global, Inc.*,
   --- F. Supp. 2d ----, 2013 WL 3296616 (N.D. Cal. 2013)...................................9, 10

*Kane v. Chobani, Inc.*,
   No. 12-2425, 2013 WL 3703981 (N.D. Cal. July 12, 2013) ...............................4, 9

*Lam v. Gen. Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) ................................................................6

*Lavie v. Proctor & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ..................................................................................4, 13

*Peviani v. Hostess Brands, Inc.*,
  750 F. Supp. 2d 1111 (C.D. Cal. 2010) ...................................................................6

*In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
  588 F. Supp. 2d 527 (S.D.N.Y. 2008)......................................................................6

*Reid v. Johnson & Johnson*,
  No. 11-1310, 2012 WL 4108144 (S.D. Cal. Sept. 18, 2012)....................................8

*Ries v. Ariz. Beverages USA LLC*,
  No. 10-1139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ...................................4

*Rooney v. Cumberland Packing Corp.*,
  No. 12-33, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012)........................................11

*Ross v. Sioux Honey Ass'n*,
  No. 12-1645, 2013 WL 146367 (N.D. Cal. Jan. 14, 2013)......................................5

*McKinniss v. Gen. Mills, Inc.*,
  No. 07-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ..................................6

*Mills v. Giant of Md., LLC*,
  441 F. Supp. 2d 104 (D.D.C. 2006) .........................................................................6

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
  307 F.3d 775 (9th Cir. 2002) ...................................................................................13

*Taradejna v. Gen. Mills, Inc.*,
  909 F. Supp. 2d 1128 (D. Minn. 2012)....................................................................14

*Trazo v. Nestle USA, Inc.*,
  No. 12-2272, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) .....................................3

*Turek v. Gen. Mills, Inc.*,
  662 F.3d 423 (7th Cir. 2011) .................................................................................6, 7

*United States v. Gen. Dynamics Corp.*,
  828 F.2d 1356 (9th Cir. 1987) .................................................................................13

*United States v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956)...................................................................................................13

*Van Atta v. Gen. Mills, Inc.*,
  No. 12-2815, ECF No. 51  (D. Colo. July 18, 2013) ...............................................14

*Viggiano v. Hansen Natural Corp.*,
     --- F. Supp. 2d ----, 2013 WL 2005430 (C.D. Cal. 2013)..........................................................12

*Wilson v. Frito-Lay N. Am., Inc.*,
     No. 12-1586, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013)......................................................4

**OTHER AUTHORITIES**

H.R. Rep. No. 101-538, reprinted in 1990 U.S.C.C.A.N. 3336.....................................................14

21 U.S.C. § 341 *et seq.*..................................................................................................................13

21 U.S.C. § 343-1(a)..............................................................................................................6, 14

21 C.F.R. § 100.1(c)(4)..................................................................................................................6

21 C.F.R. § 101.9(c)(8)..................................................................................................................7

### **STATEMENT OF THE ISSUES TO BE DECIDED**

This motion raises the following issues:

1. Whether the labeling statement "100% DV Vitamin C" found on Fruity Snacks is preempted because it is expressly authorized by the FDA.

2. Whether the "100% DV Vitamin C" claim should be dismissed because Plaintiffs do not allege they ever relied upon that statement in purchasing Fruity Snacks.

3. Whether the "100% DV Vitamin C" claim should be dismissed because no reasonable consumer would be misled by this truthful statement.

4. Whether the "100% DV Vitamin C" claim should be dismissed because, to the extent it is based upon statements on Kellogg's website, that website does not constitute "labeling."

5. Whether the "evaporated cane juice" claim against MorningStar Farms Hickory BBQ should be stayed or dismissed pursuant to the primary jurisdiction doctrine, as recently ordered by another court in this District.

6. Whether the "evaporated cane juice" claim should be dismissed because no reasonable consumer would be misled by the inclusion of this statement in the ingredient list.

**INTRODUCTION**

In their First Amended Complaint, Plaintiffs challenged a litany of statements found on Kellogg's MorningStar Farms Hickory BBQ Riblets and Fruity Snacks (Mixed Berry).[1] This Court dismissed almost all of the claims, but gave Plaintiffs a second chance to re-plead two of them: First, the Court ruled that Plaintiffs failed to provide any Fruity Snacks packaging that actually stated that the snack was "fortified" with Vitamin C in violation of the FDA's regulation governing the use of the term "fortified." Second, the Court found that Plaintiffs had not alleged with particularity why the term "evaporated cane juice" — found in small print in the ingredient list on the side of the Morning Star Hickory BBQ Riblets box — was misleading. In an attempt to salvage these two claims, Plaintiffs have added additional allegations in their Second Amended Complaint (SAC), but the new complaint still does not pass muster as a matter of law:

Fruity Snacks – fortification claim: Plaintiffs originally claimed that Kellogg had "promoted [its] fruit snacks products as being *'fortified'* with Vitamin C but [that] such fortification was unlawful and in violation of the nutrient content claim rules governing the *use of the term 'fortified'* in 21 CFR § 101.54." FAC ¶ 110 (emphasis added). Kellogg pointed out — and the Court agreed — that the term "fortified" does not appear anywhere on the Fruity Snacks packaging. The Court gave Plaintiffs an opportunity to produce a Fruity Snacks package with the term "fortified" on it.

Plaintiffs still have not produced such packaging. Instead, they now pivot and claim that the term "100% DV Vitamin C" found on Fruity Snacks is unlawful and deceptive. But no reasonable consumer would be deceived by the statement "100% DV Vitamin C" because it is truthful. Indeed, Plaintiffs do not dispute that a serving of Fruity Snacks *does* contain 100% daily value of Vitamin C. Unable to dispute the accuracy of that statement, Plaintiffs insist that "100% DV Vitamin C" claim somehow violates FDA regulations. But, to the contrary, "100% DV Vitamin C" is a nutrient content claim that is expressly permitted by the FDA and any state-law claim challenging it is preempted. Plaintiffs argue that the statement is improper because the Vitamin C in Fruity Snacks is added through fortification (and does not occur in the product naturally), but the FDA does not

---

[1] The "0g trans fat" claim against Pringles is addressed in P&G's motion to dismiss.

distinguish between the various types of Vitamin C.  The Seventh Circuit affirmed dismissal of an analogous claim challenging the statement "35% of your daily fiber" because, as with Vitamin C, the FDA does not distinguish between "inulin" fiber derived from chicory root and "unprocessed" fiber found in bananas and onions.  Finally, this claim should be dismissed because Plaintiffs have not alleged that they relied on the "100% DV Vitamin C" statement in buying Fruity Snacks.

MorningStar Farms Hickory BBQ Riblets – "evaporated cane juice":  Plaintiffs have added allegations claiming that the use of the term "evaporated cane juice" in the ingredient list obscured the amount of sugar in the product.  Notably, Plaintiffs do not dispute that evaporated cane juice is a term that has been used for years and is a form of sugar that is *not* the same as white table sugar (much like molasses is a form of sugar but different from white table sugar).  And most importantly, the Nutrition Facts chart — which is immediately adjacent to the ingredient list and is in fact more prominent on the packaging — discloses the precise amounts of sugars and calories in the product.

Ultimately, Plaintiffs' argument is that the term "dried cane syrup" should have been used instead of "evaporated cane juice."  But they never plausibly articulate why "dried cane syrup" is any more accurate than "evaporated cane juice."  Plaintiffs' theory of the case essentially boils down to the contention that a reasonable consumer who reads "dried cane syrup" in the ingredient list and sees "sugars 24g" in the Nutrition Facts would *not* be misled about sugar content, but that same person would be duped into believing there is no sugar if he read "evaporated cane juice" and "sugars 24g" instead.  That theory is not plausible and no reasonable consumer would be deceived, especially in light of Ninth Circuit case law emphasizing that a label is not evaluated on the basis of a single out-of-context phrase but on the label as a whole.  It simply is not plausible that a consumer who vigilantly reviews the small print ingredient list on the side panel of the product to read the ingredient list for sugar content would somehow not review the more prominent Nutrition Facts section adjacent to it, which discloses the amount of sugars.  At the very least, the "evaporated cane juice" claim should be stayed or dismissed under the primary jurisdiction doctrine because, as a court in this District recently held in dismissing an identical claim, "determination of Plaintiff[s'] claim would require the Court to decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue."

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

The Second Amended Complaint alleges that three snack food products are "misbranded" because statements on their labels are inconsistent with Plaintiffs' reading of FDA regulation.[2] Plaintiffs contend Kellogg should not be allowed to label its Fruity Snacks as containing "100% DV Vitamin C" because, although they do not dispute that the statement is factually accurate, the Vitamin C is added to the product through fortification. Plaintiffs also argue that Kellogg should be barred from listing "evaporated cane juice" as an ingredient in its products because the FDA is considering — but has not yet decided — whether the phrase should be stated differently.

Importantly, the labeling of each of the products challenged by Plaintiffs discloses the ingredients in descending order of predominance, the amount of calories and fat per serving, the designated serving size, and the amount of food product included in the package in accordance with federal law. Dkt. No. 44-1, Exs. 1-3.[3] Plaintiffs do not dispute that these disclosures are accurate and in compliance with federal regulations. Nonetheless, they assert that statements made on Kellogg's packaging violate the UCL, the FAL, and the CLRA.

## ARGUMENT

### I. Plaintiffs' "100% DV Vitamin C" Claim Should Be Dismissed.

Plaintiffs allege the Fruity Snacks packaging violates FDA regulations because the product is "fortified" with Vitamin C and thus the truthful nutrient content claim "100% DV Vitamin C" is improper. SAC ¶ 125.[4] Plaintiffs' claim fails for an number of reasons, including (1) a reasonable

---

[2] Plaintiffs purport to represent a putative class comprising purchasers of these three products "and other products labeled with" allegedly "identical statement[s]," (SAC ¶ 167), but certification of such a class would be improper since (1) Plaintiffs do not allege that they themselves purchased any of the unnamed "other products" and thus have not suffered the "requisite *pecuniary* injury" to assert claims based on those products, *Ivie v. Kraft Foods Global, Inc.*, No. 12-2554, 2013 WL 685372, at *5 (N.D. Cal. Feb. 25, 2013), and (2) Plaintiffs' claims depend upon "context-specific analysis" and span "disparate misbranding theories, which plainly involve different legal and factual questions." *Trazo v. Nestle USA, Inc.*, No. 12-2272, 2013 WL 4083218, at *13 (N.D. Cal. Aug. 9, 2013).

[3] The court took judicial notice of the Fruity Snacks Mixed Berry and MorningStar Riblets labels (Dkt. No. 44-1, Exs. 1, 3) in ruling on Kellogg's prior motion to dismiss (*see* Dkt. No. 89 ("Order") at 13), and should again consider them with this motion.

[4] While the SAC also claims that Kellogg "promoted its Kellogg's Fruity Snacks as being fortified (Continued…)

consumer would not be misled by the truthful statement "100% DV Vitamin C," (2) it is preempted because the challenged statement is expressly permitted under federal law, (3) Plaintiffs fail to allege reliance on the challenged language, and (4) the website image submitted by Plaintiffs does not constitute "labeling" such that it would be subject to FDA labeling regulations.

**A.   "100% DV Vitamin C" Is Not Likely to Deceive a Reasonable Consumer.**

To state a claim for false advertising under the UCL, FAL, or CLRA, Plaintiffs must allege that Kellogg made statements likely to deceive a reasonable consumer.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *see also Kane v. Chobani, Inc.*, No. 12-2425, 2013 WL 3703981, at *10 (N.D. Cal. July 12, 2013) (claim under "unlawful prong" requires plaintiff to "satisfy the 'reasonable consumer' test").[5]  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Rather, the advertisement must be "such that *it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.*" *Id.* (emphasis added).  Whether a representation is "likely to deceive" a reasonable consumer is evaluated in the context of the label or advertisement as a whole, not on the basis of "a

with Vitamin C," (SAC ¶ 125), the court previously dismissed this claim for failure to submit any label stating "that the snacks are 'fortified' with Vitamin C."  Order at 21.  Plaintiffs still have not submitted any label including "fortification" language (*see* SAC, Ex. 5) and, thus, this allegation must be disregarded.

[5]  *See also Ries v. Ariz. Beverages USA LLC*, No. 10-1139, 2013 WL 1287416, at *3 (N.D. Cal. Mar. 28, 2013) (holding that "UCL, FAL, and CLRA claims grounded in fraud are governed by the 'reasonable consumer' test"); *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586, 2013 WL 1320468, at *5 (N.D. Cal. Apr. 1, 2013) (holding that an "unlawful business practices claim" based on alleged violations of FDA regulations as incorporated in California's Sherman Law "sounds in fraud").  The *Kane* opinion was subsequently vacated in light of the parties' stipulation permitting Chobani to "file a Motion for Reconsideration of the issues addressed in Defendant's Motion for Leave:  (1) the Court's characterization of Plaintiffs' ECJ theory, and (2) whether the doctrine of primary jurisdiction should apply to preclude Plaintiffs' ECJ claims."  *Kane v. Chobani*, No. 12-2425, ECF No. 131 at 1-2 (N.D. Cal. July 25, 2013).  The Court has not indicated a willingness to reconsider any issues other than its prior decision not to dismiss the "evaporated cane juice" claim and, thus, its other holdings should be considered as persuasive authority.  *See id.*; *Kane v. Chobani*, No. 12-2425, ECF No. 144 at 2 (N.D. Cal. Aug. 14, 2013) (denying plaintiffs' motion for leave to file a motion for reconsideration of other issues).

single out-of-context phrase found in one component of [a product's] label." *Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012). "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Id.*

Here, "100% DV Vitamin C" is not likely to deceive a reasonable consumer and Plaintiffs' theory of the case is not plausible under the *Twombly/Iqbal* standard because the statement is truthful and non-deceptive. Plaintiffs do not dispute that Fruity Snacks *do* in fact include 100% daily value of Vitamin C. It is factually true that Fruity Snacks have 100% daily value of Vitamin C. Nor do Plaintiffs even attempt to allege that the use of fortification to add Vitamin C to Fruity Snacks would be material to a reasonable consumer. An analogous case is *Ross v. Sioux Honey Association*, in which the plaintiff argued that packaged honey was mislabeled as "honey" because the pollen had been removed. No. 12-1645, 2013 WL 146367, at *18 (N.D. Cal. Jan. 14, 2013). The court dismissed the claim on the pleadings because the plaintiff had not plausibly alleged that the pollen content on honey is "of material concern to the ordinary consumer" or that it "plays a substantial part' in the reasonable consumer's decision to purchase" honey. *Id.*; *see also Brod v. Sioux Honey Ass'n, Co-op.*, 2013 WL 752479, at *17 (N.D. Cal. 2013) (Plaintiff "has not demonstrated that the absence of pollen . . . is material to the reasonable or average consumer."). Likewise here, a reasonable consumer cares about the Vitamin C content of a product, not whether it was fortified.

Even if Plaintiffs had alleged that a reasonable consumer would care whether the Vitamin C in Fruity Snacks was added through fortification, the claim must be dismissed because the product's packaging states in at least *five* places that the product is "NATURALLY AND ARTIFICIALLY FLAVORED," highlighting that the Fruity Snacks are not made solely with fruit juices that might contain natural Vitamin C. *See* Dkt. No. 44-1, Ex. 1. Indeed, the statement "NATURALLY AND ARTIFICIALLY FLAVORED" is located *immediately* adjacent to the "100% DV Vitamin C" statement. *Id.*; SAC Ex. 5. Moreover, the ingredient list on the side panel provides that the Vitamin C in the product is ascorbic acid. Dkt. No. 44-1, Ex. 1. Plaintiffs cannot state a claim on the basis of this "single out-of-context phrase found in one component" of the Fruity Snacks label because "any ambiguity that [a consumer] would read into ["100% DV Vitamin C"] is dispelled by the [label] as a

whole." *Hairston*, 2012 WL 1893818, at *5; *see also Freeman*, 68 F.3d at 287; *McKinniss v. Gen. Mills, Inc.*, No. 07-2521, 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007) ("A reasonable consumer" concerned about the ingredients in cereal "would . . . be expected to peruse the product's contents simply by reading the side of the box containing the ingredient list").

**B. The "100% DV Vitamin C" Claim is Preempted by Federal Law.**

The NLEA establishes a uniform national standard for food labeling by including a broad express preemption provision.  21 U.S.C. § 343-1(a).  Congress included a broad preemption provision because it wanted to avoid patchwork quilt of conflicting state-law labeling standards.  *See generally Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting the expansive scope of the NLEA preemption clause).  The NLEA provides that "*no State* or political subdivision of a State *may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical* to the requirement[s]" set forth in the NLEA.  21 U.S.C. § 343-1(a) (emphasis added).  "'Not identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or its implementing regulations.  21 C.F.R. § 100.1(c)(4); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1102 (N.D. Cal. 2012).

In other words, states cannot impose their own unique labeling standards that go "beyond, or [are] different from" the federal labeling standards that Congress has established.  *In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008); *see also Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the [FDCA], consistency is not the test [for NLEA preemption]; identity is.");  *Lam*, 859 F. Supp. 2d at 1102.  As a result, state "[c]onsumer protection laws, such as the UCL, FAL, and [CLRA] are . . . preempted if they seek to impose requirements that contravene the requirements set forth by federal law."  *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010).

The phrase "100% DV Vitamin C" is an express nutrient content claim permitted under federal law.  Specifically, a food product label may include a "statement of the amount per serving

of the vitamins and minerals," including Vitamin C, "as a percent of the RDI and expressed as percent of Daily Value."  21 C.F.R. § 101.9(c)(8).  Plaintiffs do not dispute that a serving of the Fruity Snacks in fact contains 100% daily value of Vitamin C, as truthfully disclosed in the nutrition panel.  SAC, Ex. 5.  Moreover, the regulation is not applicable solely to products in which vitamins occur naturally; to the contrary, it expressly permits claims about Vitamin C that is "added as a nutrient supplement."  21 C.F.R. § 101.9(c)(8).

Courts regularly dismiss causes of action challenging express nutrient content claims like "100% DV Vitamin C" because they are preempted by FDA regulations.  *See, e.g.*, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (dismissing claim as preempted because challenged statement "is an express nutrient content claim that the [FDA] not only permits, but further instructs should mirror the Nutrition Facts panel").  A particularly notable case is *Turek v. General Mills*, in which the Seventh Circuit affirmed dismissal in an analogous case challenging the phrase "35% of your daily fiber."  662 F.3d at 427.  There, the plaintiffs sought to draw a distinction between inulin fiber "extracted from chicory root" and "unprocessed" fiber found in other fruits and vegetables, arguing the "35%" claim was misleading because the product was made with inulin, which allegedly "provides fewer of the benefits of consuming fiber."  *Id.* at 425-26.  The Court dismissed the plaintiffs' claims as preempted because the federal regulations require that a food label "state the amount of . . . dietary fiber . . . contained in each serving size or other unit of measure" but do *not* distinguish between the various types of fiber.  *Id.* at 426-27.  Because the plaintiffs sought to require *different* labeling than that required by the FDA, their claim was preempted.  *Id.*

Likewise, in *Bronson v. Johnson & Johnson, Inc.*, a judge in this District held that a claim challenging the "statement that Splenda Essentials 'contains '20% of the daily value of antioxidant vitamins C and E'" was preempted.  No. 12-4184, 2013 WL 1629191, at *4-5 (N.D. Cal. Apr. 16, 2013).  Because "[t]he FDA does not require that companies distinguish between synthetically derived antioxidants and those derived from fruit," the court held that "Plaintiffs' claim that Defendants' label is misleading because it is lacking this distinction is preempted."  *Id.* at *5; *see also id.* at *5-6 (holding that claim challenging "1 gram of fiber" was preempted because the FDA

1   does not distinguish between "natural" and "non-natural" fibers).  Similarly here, Plaintiffs seek to

2   treat Vitamin C included in a food product through "fortification" *differently* than naturally-

3   occurring Vitamin C, even though the FDA regulation applies equally to both forms of Vitamin C.

4   *See also Reid v. Johnson & Johnson*, No. 11-1310, 2012 WL 4108114, at *8-9 (S.D. Cal. Sept. 18,

5   2012) (rejecting as preempted claim challenging "Proven to Reduce Cholesterol" because FDA

6   regulations "state the minimum amount of plant stanol esters that a product must contain before it

7   can bear health claims, but, contrary to Plaintiff's contention, do not require that products show that

8   they effectively reduce cholesterol 'as formulated'").

9           To the extent Plaintiffs argue that they are not challenging the "100% DV Vitamin C" claim

10   itself, but rather the fortification process, that claim also fails.  First, that argument is belied by

11   Plaintiffs' complaint, which is premised on allegations that the Fruity Snacks label includes an

12   improper labeling "statement."   SAC ¶¶ 125, 126.   Second, the FDA's fortification policy,

13   "colloquially termed 'the jelly bean rule,'" "*poses no bar to nutrient-content claims generally*; it is

14   applicable only to (1) health claims; and (2) nutrient-content claims that use the word 'healthy' to

15   suggest that a food because of its nutrient content may help consumers maintain healthy dietary

16   practices." *Ackerman v. Coca-Cola Co.*, No. 09-395, 2010 WL 2925955, at *10 (E.D.N.Y. July 21,

17   2010) (emphasis added).   In other words, because "the jelly-bean rule does not prohibit

18   [manufacturers] from making a nutrient content claim that does not use the word 'healthy,'" "FDA

19   regulations [are] not . . . violated" by a statement that merely "suggest[s] that a food because of its

20   nutrient content may help consumers maintain healthy dietary practices." *Id.* at *10.  Nowhere does

21   the Fruity Snacks label state the product is "healthy."  Dkt. No. 44-1, Ex. 1.  This fact is dispositive,

22   and the claim must be dismissed.

23           **C.  Plaintiffs Fail to Allege Reliance on the "100% DV Vitamin C" Language.**

24           As this Court previously held, stating a claim under the UCL, FAL, and CLRA also requires

25   a plaintiff to show that he or she "actually relied on the packaging and was deceived."  Order at 18;

26   *see also id.* at 21 (dismissing "evaporated cane juice" claim for failure to allege, *inter alia*, "how

27   Plaintiffs relied on the labels").  Here, while Plaintiff Peters alleges that he "purchased" Fruity

28   Snacks "labeled with statement '100% DV Vitamin C,'" (SAC ¶ 126), nowhere does he allege that

he *relied* upon the "100% DV" language in purchasing the product.  The other plaintiff, Sarah Samet, does not claim that she ever purchased Fruity Snacks.  *See* SAC ¶ 2.[6]  Thus, even if the "100% DV" claim was not preempted, it must be dismissed because Plaintiffs have not alleged that they "actually relied" upon that claim.  *See* Order at 18; *see also Kane*, 2013 WL 3703981, at *5-6 (requiring plaintiffs to "demonstrate actual reliance and economic injury" to state a claim challenging food labeling under the unlawful prong); *Ivie v. Kraft Foods Global, Inc.*, --- F. Supp. 2d ----, 2013 WL 3296616, at *9 (N.D. Cal. 2013) (dismissing labeling claims, including UCL unlawful claim, for failure to plead "specific reliance").

### D.  The Website Claim Should Also Be Dismissed.

This Court previously dismissed Plaintiffs' claim that Kellogg violated 21 C.F.R. § 101.54 for failure to submit evidence of any statement "that the snacks are 'fortified' with Vitamin C," but allowed Plaintiffs to re-plead the claim by "identify[ing] or attach[ing] representative samples of [the allegedly] misleading materials" to their amended complaint.  Order at 20-21.  Plaintiffs now allege that Kellogg improperly "promoted its Kellogg's Fruity Snacks on its website . . . as being fortified with Vitamin C."  SAC ¶ 129.  But *nowhere* does the word "fortified" appear on the website page submitted with their complaint.  *See* SAC, Ex. 11.  Despite multiple opportunities to plead a claim, Plaintiffs have failed to submit *any* "representative samples" of labeling or website statements stating that Fruity Snacks are "'fortified' with Vitamin C."  Their claim alleging an improper "fortified" statement should again be dismissed.

Moreover, as this Court previously explained, FDA labeling regulations apply to website statements "[o]nly if the plaintiff establishes that the label contains a specific statement referring the consumer to a specific website for information about the claim in question."  Order at 20-21. Plaintiff does not allege that the Fruity Snacks label "refers the consumer to a specific website for information about" the "100% DV" claim — or indeed any claim at all.  Nor does the packaging

---

[6] Vague allegations such as "Plaintiffs would not have bought these products had they known they were misbranded" (SAC ¶ 133; *see also id.* ¶ 160) fail to satisfy the heightened pleading standards required by Rule 9(b).  *See* Order at 4 (explaining that Rule 9 requires a plaintiff to allege "the who, what, when, where, and how of the misconduct charged").

submitted with the complaint indicate that the label "refer[s] the consumer to a specific website for information about the claim in question."  *See* SAC, Ex. 5.

Finally, as with the "100% DV" claim on the label, Plaintiff Peters does not allege that he ever visited the Fruity Snacks website, let alone that he read the "100% DV" language on the website or relied upon it in purchasing Fruity Snacks.  *See generally* SAC.  It is axiomatic that a plaintiff cannot challenge a website claim in the absence of such allegations.  *See Ivie*, 2013 WL 3296616, at *9 (dismissing website claims for failure to plead reliance).

## II.    The Evaporated Cane Juice Claim Should Be Dismissed.

### A. A "Significant Portion" of the General Public "Acting Reasonably" Would Not Be Misled by the Term "Evaporated Cane Juice" Found on the Side Panel.

Plaintiffs argue that the phrase "evaporated cane juice" is misleading to a reasonable consumer because it supposedly obscures the amount of sugar in the product.  *See* SAC ¶¶ 118-120. This argument is fatally flawed because (i) Kellogg expressly discloses the amount of sugar in the product on the packaging and (ii) Plaintiffs do not articulate why their preferred term — "dried cane syrup" — is more accurate than "evaporated  cane juice."  *See* Dkt. No. 44-1, Ex. 3; SAC, Ex. 4. Plaintiffs therefore resort to inferences piled upon inferences to try to manufacture a remotely plausible theory as to why a reasonable consumer would be misled by the sugar content in the product.  That attempt fails.

Contrary to Plaintiffs' innuendo that they were misled about the sugar content, Kellogg explicitly discloses the amount of sugar forms in the packaging of MorningStar Farms Riblets.  The Nutrition Facts box, which is *right next* to the ingredient list on the packaging and is in fact more prominent, discloses the precise amount of sugars, as well as calories, in the product.  *See* Dkt. No. 44-1, Ex. 3; SAC, Ex. 4.

Ultimately, Plaintiffs' complaint is not that Kellogg did not disclose the amount of sugar in the product, but rather that they prefer the term "dried cane syrup" over "evaporated cane juice." Plaintiffs do not dispute that "evaporated cane juice" is not the same as white refined sugar — it is a form of sugar, much like molasses or turbinado sugar are forms of sugar, albeit different from white table sugar.  Indeed, they admit that Kellogg is not legally required to describe "evaporated cane

juice" as "sugar" in the ingredient list. *See* SAC ¶ 118 (suggesting it would be appropriate to describe the ingredient as "evaporated cane syrup"). Plaintiffs never articulate why the phrase "dried cane syrup" is any more accurate or less deceptive than "evaporated cane juice." They do not explain why a reasonable consumer who reads "dried cane syrup" in the ingredient list would believe that it is a sweetener containing sugar forms, but somehow conclude that "evaporated cane juice" is not. If anything, there is a good reason for using the term "evaporated cane juice" instead of "evaporated cane syrup": As comments submitted to the FDA explain, use of Plaintiffs' preferred term "dried cane syrup" could be misleading because it falsely suggests that the ingredient is derived from cane syrup, which it is not. Ex. A at 5; Ex. B at 1.[7] The fact that "evaporated cane juice" has been widely used for years in the food industry to describe a certain type of sweetener derived from sugar cane strongly suggests that no reasonable consumer could have been deceived here.[8]

Here, the challenged statement — "evaporated cane juice" — is not on the front of the packaging. Nor is there a false statement such as "sugar free" found anywhere on the packaging. Rather, Plaintiffs resort to latching onto one item in the ingredient list on the back of packaging that they claim obscures the presence of sugar. But a consumer who is diligent enough to review the ingredient list on the back of the packaging will see right next to it in the more prominent Nutrition Facts box the precise amount of sugar in the product. The Riblets Plaintiff Peters purchased states in the Nutrition Facts that it has "Sugars 24g." Dkt. No. 44-1, Ex. 1; SAC, Ex. 4.

As the Ninth Circuit pointed out in *Freeman*, an allegedly false or misleading advertisement must be viewed "as a whole," and not on the basis of just one out-of-context claim. *Freeman*, 68

---

[7]  Exhibits A and B are attached to the concurrently-filed Request for Judicial Notice.

[8]  As comments on the FDA Draft Guidance explain, the designation "evaporated cane juice" has been used since the early 1990s to describe this particular cane-derived sweetener. Ex. A at 4; Ex. B at 2.  It has, as a result, been established as the "common or usual name" for the ingredient, and has been established by "common usage." Ex. A at 4.  Federal courts in California have dismissed false advertising claims at the pleading stage where the plaintiff's theory of the case conflicted with industry norms for describing a product. *See, e.g., Rooney v. Cumberland Packing Corp.*, No. 12-33, 2012 WL 1512106, at *4-5 (S.D. Cal. Apr. 16, 2012) (where the plaintiff challenged the product Sugar in the Raw on the grounds that the word "raw" misleadingly suggested that the product was unprocessed sugar, the court dismissed the complaint on a Rule 12(b) motion because it is well-known in the "industry" that "raw cane sugar" is not the same as unprocessed sugar).

F.3d at 290.  In that case, a sweepstakes mailer declared, "We are now scheduled to begin payment of the third and largest prize — the $1,666,675 listed next to the name MICHAEL FREEMAN! In fact, arrangements have already been made which make it possible to begin payment of the $1,666,675" — but that mailer was deemed non-deceptive as a matter of law because "qualifying language appear[ed] immediately next to the representations it qualifie[d] and no reasonable reader could ignore it." *Id.* at 287, 289.  Federal courts have applied the Ninth Circuit's rule articulated in *Freeman* to the food labeling context.  *See, e.g., Hairston*, 2012 WL 1893818, at *4 (dismissing false advertising case at pleading stage by looking at the entire packaging and not only the challenged terms); *Viggiano v. Hansen Natural Corp.*, --- F. Supp. 2d ----, 2013 WL 2005430, at *9 n.38 (C.D. Cal. 2013) (holding no reasonable consumer would be misled by "all natural flavors" language on diet soda label when "read in conjunction with the ingredients list" on the side panel).

Therefore, a "single out-of-context phrase found in one component of [the Riblets] label" cannot form the basis of a UCL claim here because a reasonable consumer is assumed to view in context the entire label as a whole.  *Hairston*, 2012 WL 1893818, at *4.  And once the label is viewed as a whole, there is no way a reasonable consumer would be duped into believing that the product does not contain sugar when the Nutrition Facts explicitly discloses the exact amount, in grams, of the sugar content.  For Plaintiffs' theory to be plausible, this Court would have to find that a consumer (1) would want to know the source of the sweeteners in the Riblets; (2) would read the ingredient list on the side of the packaging to answer the question; (3) would read "evaporated cane juice" and not know what it is; (4) but would somehow know what "dried cane syrup" is; (5) would wrongly believe that "evaporated cane juice" sweetener has no sugar forms in it; (6) would ignore the adjacent Nutrition Facts section that discloses the precise amount of sugars in the product in grams; (7) would erroneously conclude that the product has no sugars in it, even though nowhere does  the packaging say it is "sugar free"; and (8) would purchase the Riblets based on this mistaken conclusion.

But any consumer who piles on such inferences upon inferences is not the quintessential "reasonable" consumer who is the touchstone for determining whether a label, viewed as a whole, is misleading.  Simply put, it is not "probable that a significant portion of the general consuming public

1    or of targeted consumers, acting reasonably in the circumstances, could be misled" here.  *Lavie*, 105

2    Cal. App. 4th at 508.

3        **B.  The Claim Should Be Dismissed Under the Primary Jurisdiction Doctrine.**

4        A judge in this District recently dismissed an identical "evaporated cane juice" claim because

5    "determination of Plaintiff's claim would require the Court to decide an issue committed to the

6    FDA's expertise without a clear indication of how FDA would view the issue."  *Hood v. Wholesoy*

7    *& Co.*, No. 12-5550, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013).

8        In order to promote the "proper relationships between the courts and administrative agencies

9    charged with particular regulatory duties," the primary jurisdiction doctrine applies where

10    enforcement of a claim "requires the resolution of issues which, under a regulatory scheme, have

11    been placed within the special competence of an administrative body."  *United States v. W. Pac. R.R.*

12    *Co.*, 352 U.S. 59, 63-64 (1956).  Deferral to an agency is appropriate where it has been "vested with

13    the authority to regulate an industry or activity such that it would be inconsistent with the statutory

14    scheme to deny the agency's power to resolve the issues in question."  *United States v. Gen.*

15    *Dynamics Corp.*, 828 F.2d 1356, 1363 (9th Cir. 1987).  A court traditionally weighs four factors in

16    deciding whether to apply the primary jurisdiction doctrine:  "(1) [the] need to resolve an issue that

17    (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory

18    authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory

19    authority that (4) requires expertise or uniformity in administration."  *Clark v. Time Warner Cable*,

20    523 F.3d 1110, 1115 (9th Cir. 2008) (quoting *Syntek Semiconductor Co. v. Microchip Tech., Inc.*,

21    307 F.3d 775, 781 (9th Cir. 2002)).

22        As Judge Rogers recently found, "the *Syntek* factors are met here and the primary jurisdiction

23    doctrine applies":  "The FDA has regulatory authority over food labeling.  *See* 21 U.S.C. § 341 *et*

24    *seq.*  The FDCA establishes a uniform federal scheme of food regulation to ensure that food is

25    labeled in a manner that does not mislead consumers.  *See* 21 U.S.C. § 341 *et seq.*  Food labeling

26    enforcement is a matter that Congress has indicated requires the FDA's expertise and uniformity in

27    administration.  Congress amended the FDCA through the passage of the [NLEA] to 'clarify and

28    strengthen' the FDA's 'legal authority to require nutrition labeling on foods, and to establish the

circumstances under which claims may be made about nutrients in foods.'  H.R. Rep. No. 101-538, at 7, *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337.  No state may 'directly or indirectly establish . . . any requirement for the labeling of food that is not *identical* to the [FDCA]'  21 U.S.C. § 343-1(a)."  *Hood*, 2013 WL 3553979, at *5.

The Court further held:  "With respect to 'evaporated cane juice,' the Draft ECJ Guidance on which Plaintiff relies says expressly that it is not a 'legally enforceable' standard, but only a suggestion. . .  At a minimum, this indicates to the Court that the FDA's position is not yet settled. So far as it appears, FDA has not yet set a uniform enforcement standard.  Thus, determination of Plaintiff's claim would require the Court to decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue."  *Id.* (citing *Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1016 (N.D. Cal. 2012); *Ivie*, 2013 WL 685372, at *7; and *Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1135 (D. Minn. 2012)).[9]

## CONCLUSION

For the foregoing reasons, Kellogg respectfully requests that the Court dismiss Plaintiffs' claims challenging the "100% DV Vitamin C" and "evaporated cane juice" statements on Fruity Snacks and MorningStar Riblets.  Because the purported misrepresentations are preempted and/or not actionable as a matter of law, granting leave to amend would be futile.  Accordingly, these claims should be dismissed with prejudice.

Dated:  August 16, 2013

JENNER & BLOCK LLP

 /s Kenneth K. Lee
By: Kenneth K. Lee

Attorneys for Defendants

---

[9] Courts in this District have also issued recent decisions granting motions to dismiss "natural" claims under the primary jurisdiction doctrine because, although the FDA had issued some "non-binding industry guidance on the issue," "there currently exists no actual federal law, regulation, or requirement requiring the special labeling of bioengineered ingredients as not 'natural.'"  *Barnes v. Campbell Soup Co.*, No. 12-5185, ECF No. 55 at 15 (N.D. Cal. July 25, 2013); *see also Cox v. Gruma Corp.*, No. 12-6502, 2013 WL 3828800, at *2 (N.D. Cal. July 11, 2013); *Van Atta v. Gen. Mills, Inc.*, No. 12-2815, ECF No. 51 at 5-7 (D. Colo. July 18, 2013).