Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@jonesday.com
Craig E. Stewart (State Bar No. 129530)
cestewart@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:    415-626-3939
Facsimile:    415-875-5700

Brian Selden (State Bar No. 261828)
bgselden@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
Telephone:    650-739-3939
Facsimile:    650-739-3900

Jonathan Berman (State Bar No. 167006)
jberman@jonesday.com
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone:    202-879-3939
Facsimile:    202-626-1700

Attorneys for Defendant
THE PROCTER & GAMBLE COMPANY.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| SARAH SAMET, and JAY PETERS, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>THE PROCTER & GAMBLE COMPANY, KELLOGG COMPANY and KELLOGG SALES COMPANY,<br><br>     Defendants. | **Case No. 5:12-cv-01891-PSG**<br><br>**DEFENDANT THE PROCTER & GAMBLE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: October 8, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 5 - 4th Floor |

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................2

    I.    PLAINTIFFS' FALSE ADVERTISING CLAIMS FAIL TO PLAUSIBLY ALLEGE DECEPTION. ..................................................................................2

        A.    The "0g Trans Fat" Claim Remains Insufficiently Pled. .....................................2

            1.    Plaintiffs rely on the very allegations this Court has ruled are inadequate. ..............................................................................2

            2.    Pringles' "0g trans fat" label is not misleading.............................................5

        B.    Plaintiffs Abandon Their "Wholesome Ingredients" False Advertising Claim. ..................................................................................8

        C.    Plaintiffs Do Not Answer P&G's Showing That Their Slack Fill Claim Alleges Insufficient Facts To Satisfy *Twombly*. ......................................................9

    II.    PLAINTIFFS FAIL TO PLEAD KEY ELEMENTS OF THEIR UNLAWFUL PRONG CLAIMS, WHICH IN ANY EVENT ARE PREEMPTED. ...................................................................................9

        A.    Because Plaintiffs' Unlawful Prong Claim Alleges Violation Of A Consumer Disclosure Statute, They Must Allege Deception and Reliance. ..................................................................................9

        B.    Plaintiffs' Theory That The Purchase Of An "Unlawful" Product Is Economic Injury Fails. ..................................................................................12

        C.    Plaintiffs' Misbranding Claims Are Preempted. ...................................................14

CONCLUSION ..........................................................................................................................15

## **TABLE OF CONTENTS**

Page(s)

Cases

*Aho v. Americredit Fin. Servs.*,
   277 F.R.D. 609 (S.D. Cal. 2011) ............................................................................................ 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 5, 8

*Baird v. Sabre, Inc.*,
   No. 13-CV-00999, 2013 BL 201323 (C.D. Cal. July 25, 2013) ........................................ 11, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 5

*Boorstein v. Men's Journal LLC*,
   No. 12-CV-771, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ............................................. 13

*Brazil v. Dole Food Co.*,
   No. 12-CV-01831, 2013 WL 1209955 (N.D. Cal. Mar. 25, 2013) .......................................... 12

*Brazil v. Dole Food Co.*,
   No. 12-CV-01831, Doc. 76 (N.D. Cal. Sept. 23, 2013) ...................................................... 8, 10

*Bruton v. Gerber Prods. Co.*,
   No. 12-CV-02412, 2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) ......................................... 7, 8

*Buckman, v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) .............................................................................................................. 14

*Daro v. Super. Ct.*,
   151 Cal. App. 4th 1079 (2007) ................................................................................................ 8

*Delacruz v. Cytosport, Inc.*,
   No. 11-CV-3532, 2012 WL 2563857 (N.D. Cal. June 28, 2012) ................................... 1, 6, 7, 8

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ........................................................................................... 8, 10

*Herrington v. Johnson & Johnson Consumer Cos.*,
   No. 09-CV-1597, 2010 WL 3448531 (N.D. Cal. Sep. 1, 2010) ............................................... 13

*In re Actimmune Mktg. Litig.*,
   No. 08-CV-02376, 2010 WL 3463491 (N.D. Cal. Sep. 1, 2010) ............................................. 14

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) .................................................................................. 10

*Ivie v. Kraft Foods Global, Inc.*,
   No. 12-CV-02554, 2013 WL 3296616 (N.D. Cal. June 28, 2013) ............................................ 12

*Kane v. Chobani, Inc.*,
   No. 12-CV-02425, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ................................ 1, 10, 12

*Kosta v. Del Monte Corp.*,
   No. 12-CV-01722, 2013 WL 2147413 (N.D. Cal., May 15, 2013) .................................... 12, 13

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................................... 9, 10, 13

*Medrazo v. Honda of N. Hollywood*,
   205 Cal. App. 4th 1 (2012) ...................................................................................................... 11

*Myers-Armstrong v. Actavis Totowa, LLC*,
   No. 08-CV-04741, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009) ............................................ 13

*Olivera v. American Home Mortgage Servicing, Inc.*,
   689 F. Supp. 2d 1218 (N.D. Cal. 2010) .................................................................................... 10

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013)................................................................................................... 14

*Rand v. Am. Nat'l Ins. Co.*,
   No. 09-CV-0639, 2010 WL 2595142 (N.D. Cal. June 22, 2010)............................................... 10

*Ries v. Arizona Beverages USA, LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)............................................................................................... 11

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987)....................................................................................................... 1

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011).................................................................................................... 11

*Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010) .................................................................................................... 11

*Thomas v. Costco Wholesale Corp.*,
   No. 12-CV-02908, 2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) .................................... 1, 6, 7, 8

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008)........................................................................................................ 7

*Wilson v. Frito-Lay N. Am., Inc.*,
   No. 12-CV-1586, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ................................................... 6

Statutes

21 U.S.C. § 337(b) .................................................................................................................. 15

21 U.S.C. § 343-1(a)(5) .......................................................................................................... 15

Cal. Bus. & Prof. Code § 17204 ............................................................................................. 10

Cal. Bus. & Prof. Code § 17533.7 ............................................................................................ 9

Rules

Federal Rules of Civil Procedure
    Rule 8 .............................................................................................................................. 5, 8

Federal Rules of Civil Procedure
    Rule 9(b) .............................................................................................................................. 5

Regulations

21 C.F.R. § 101.13(h) ..................................................................................................... 3, 6, 7

# INTRODUCTION

Plaintiffs' opposition confirms that their Second Amended Complaint ("SAC") should be dismissed. Rather than point to new allegations that correct the deficiencies in their previous complaint, plaintiffs simply repeat the same allegations the Court has already rejected. Just as those allegations could not sustain the Amended Complaint ("AC'), they do not save the SAC.

Plaintiffs likewise do nothing to salvage their claim of economic injury. They argue that they can sue—and be awarded a full refund—simply on the ground that they purchased a product that violated one of the innumerable FDA food labeling regulations, without any proof that the label was misleading or, indeed, that they even saw the allegedly offending statement. But they still cannot point to a single case that has adopted this "illegal product" theory. Far from endorsing any such theory, the cases have repeatedly rejected it. This includes Judge Koh, who ruled last week that permitting suit simply because the product was "illegal" would "eviscerate the enhanced standing requirements imposed by Proposition 64 and the California Supreme Court's decision in *Kwikset*." *Kane v. Chobani, Inc.*, No. 12-CV-02425, 2013 WL 5289253 at *9 (N.D. Cal. Sept. 19, 2013). That ruling applies fully here, and defeats each of plaintiffs' claims.

Plaintiffs have now filed three complaints, each one ultimately resting on the same defective allegations. Their inability to offer anything new reflects that the problem with their complaint is not mere pleading deficiencies, but a fundamental lack of merit in their basic claim that it is misleading to accurately state on a package of potato chips that the product contains no trans fat. Judge Davila dismissed the identical claim in *Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908, 2013 WL 1435292 (N.D. Cal. Apr. 9, 2013), and Judge Wilken dismissed an indistinguishable claim in *Delacruz v. Cytosport, Inc.*, No. 11-CV-3532, 2012 WL 2563857 (N.D. Cal. June 28, 2012). This Court should do the same. And because plaintiffs have already been afforded ample opportunity to try to state a valid claim, the dismissal should be with prejudice. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming denial of leave to amend where "[t]he district court's written order identified the defects in the First Amended Complaint and then permitted [plaintiffs] to amend its complaint" but the "Second Amended Complaint did not cure the deficiencies").

# ARGUMENT

## I. PLAINTIFFS' FALSE ADVERTISING CLAIMS FAIL TO PLAUSIBLY ALLEGE DECEPTION.

### A. The "0g Trans Fat" Claim Remains Insufficiently Pled.

#### 1. Plaintiffs rely on the very allegations this Court has ruled are inadequate.

In dismissing plaintiffs' AC, the Court ruled that plaintiffs had failed to plead facts showing how they were misled.  Doc. 89, p. 19.  And it specifically directed that plaintiffs "must offer more than their legal conclusion that they were 'unaware' that the products were 'misbranded' and contained fat content in excess of the amounts set forth in FDA regulations."  *Id*.  Plaintiffs have not heeded that direction.  Rather than pointing to new facts pleaded in compliance with the Court's ruling, they continue to recite the same bare legal conclusions the Court found insufficient.

Plaintiffs' disregard of the Court's ruling is nowhere more clear than in their heavy reliance on paragraph 82 of the SAC.  They cite repeatedly to that paragraph as supposedly explaining how they were misled.  *See* Doc. 99, pp. 1-3.  But that paragraph is merely a collection of the allegations plaintiffs previously asserted and that this Court found are not enough.  In particular, on the key question of what they knew about the nutrient levels in Pringles, plaintiffs allege in paragraph 82 (in language lifted verbatim from their AC) that they were "unaware that Defendants' Pringles snack chips contained total fat at levels . . . that, according to the FDA, 'may increase the risk of disease or health related condition that is diet related."[1]  This is exactly the allegation about the FDA's regulatory threshold that this Court ruled is insufficient to state a claim.  Plaintiffs do not explain how repeating the same insufficient assertion can state a claim in the SAC when it did not do so in the AC.

---

[1] Compare Doc. 25, ¶ 80 (plaintiffs were "unaware that Defendants' Misbranded Food Products contained one or more nutrients like total fat at levels . . . that, according to the FDA, 'may increase the risk of disease or health related condition that is diet related.'").

As the Court's order recognizes, the problem with this allegation is that whether plaintiffs knew about how the FDA characterizes the level of fat in Pringles is irrelevant to their claim. Plaintiffs do not—and cannot—assert that P&G had a duty to inform consumers about that characterization. Instead, plaintiffs' theory is that P&G misled them by not telling them to "See nutrition information for fat content." Doc. 90, ¶¶ 56, 59, 61; *see also* 21 C.F.R. § 101.13(h). That theory requires that plaintiffs did not already know what the Nutrition Facts box says about Pringles' fat content—*i.e.*, that Pringles contains 9g of total per serving, or 15% of the Daily Value. *See* Doc. 90-1, p. 3. If plaintiffs knew that, they could not possibly have been deceived because they knew everything they would have learned had the Pringles label contained the reference statement they claim was missing. Even under their own theory, they would not have been told whether, in the FDA's judgment, Pringles contain enough fat to possibly "increase the risk of disease or health related condition that is diet related."[2]

The issue is thus not whether plaintiffs were unaware of the FDA's characterization of the fat level in Pringles, but rather whether they were unaware of the only facts they claim should have been referenced—*i.e.*, the amount of fat itself. On that issue, the complaint is conspicuously silent. If plaintiffs truly were misled about the total fat content in Pringles, it would have been a simple matter for them to unambiguously allege that they "did not know the total quantity of fat in Pringles" or "did not know that Pringles contains 9 grams of fat per serving" or "did not know that Pringles contains 15% of the Daily Value of fat per serving." In the three complaints they have filed, however, they have studiously avoided making that simple allegation—presumably because they cannot truthfully do so given that all of that information was fully disclosed on the label and given that the "0g trans fat" statement on which they claim to have relied did not say otherwise.

---

[2]   Plaintiffs mischaracterize 21 C.F.R. § 101.13(h). It does not require disclosure that a product has a "high fat cont[ent]" or contains "fat levels the FDA [has] deemed sufficient to increase the risk of a diet related disease or condition." Doc. 99, pp. 2, 6. It requires only a statement referring the consumer to the portion of the label identifying the quantity of fat in the product by weight and percentage of the Daily Value.

Similarly, plaintiffs continue to dance around whether they read the Nutrition Facts box. They call P&G's uncertainty on the point "odd." Doc. 99, p. 2. Yet, instead of stating without reservation "we did not read the nutrition information," they allege only that they "read . . . Defendants' front of package '0g Trans Fat' statement.'" Doc. 90, ¶ 82. But the fact that they read the front of the cylinder does not mean they did not also read the back. And absent an allegation that they did not read the back, their claimed deception is not plausible, much less actionable.

Even if plaintiffs did not read the Nutrition Facts box and did not know the fat content in Pringles, the still have not explained how the true statement on the label that Pringles contains no trans fat misled them into thinking Pringles lacks other kinds of fat or otherwise is a health food. Plaintiffs paraphrase their conclusory allegations that they believed Pringles to be low in fat and "health[y]"—and then state, in equally conclusory fashion, that they have alleged how they were misled. Doc. 99, pp. 1-3. But, as P&G showed in its motion, those allegations do not answer *how* plaintiffs made the leap from "0g trans fat" to no "deleterious attributes" and Pringles making "only positive contributions to their diet." Doc. 90, ¶¶ 82-83. Do plaintiffs believe all snack foods without trans fat also are low in fat, cholesterol, and sodium? Do they think that all foods with no trans fat are "positive" foods? If so, what is the basis for that belief and why is it reasonable? It is the lack of such explanatory facts that renders Plaintiffs' "0g trans fat" false advertising claim insufficient.

Similarly unexplained (and unfounded) is plaintiffs' assertion that they were misled into believing that Pringles is a "healthier choice than other potato snack products." Doc. 90, ¶ 82. The Pringles label says nothing about other snack products. And it would have said nothing even if it had included the allegedly omitted statement referring consumers to the Nutrition Facts box. On what basis, then, did plaintiffs conclude that Pringles is a healthier choice than other snack foods? How would including the reference statement have led them to a different conclusion? And what facts show that Pringles is not in fact a healthier choice than other potato chips? Again, the SAC is silent on these crucial questions.

Predictably, plaintiffs assert that these are all "factual issues" unsuitable for resolution on a motion to dismiss. Doc. 99, p. 2. This Court has already rejected that argument, by dismissing the AC and requiring that plaintiffs plead facts and not mere legal conclusions. That ruling was correct. Even if this case were governed only by the general standards of Rule 8, plaintiffs must under that rule plead "factual content," not "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain "some specificity in pleading." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). But the standard is even higher in this case because this case is governed by Rule 9(b), which requires that fraud claims be pled with "particularity." Plaintiffs' conclusory allegations—already rejected once as insufficient—do not come close to meeting that standard.

Nor are plaintiffs assisted by their assertion (Doc. 99, pp. 2-3) that the FDA has supposedly found that consumers could be misled in these circumstances. Plaintiffs made this same argument in opposing the previous motion to dismiss, and this Court properly found that it did not excuse plaintiffs from alleging how they personally were misled. Generalized regulatory assertions that a label could be misleading do not suffice to show that these plaintiffs were misled—*i.e.*, that these plaintiffs did not read the Nutrition Facts box, that these plaintiffs did not know the actual fat content, and that these plaintiffs reasonably believed that potato chips make only a "positive contribution to a diet." This is especially true given that the FDA's regulation is a broad, prophylactic measure addressed to all food products generally. The FDA has not pronounced that the Pringles label in particular—taking into account the label as a whole and the nature of the product—is likely to deceive consumers even for regulatory purposes, let alone for purposes of a false advertising claim. And the FDA certainly has not determined that these plaintiffs, who must show actual reliance and causation to state a fraud claim, were misled.

### 2. Pringles' "0g trans fat" label is not misleading.

Plaintiffs also have no persuasive answer to P&G's showing that, as two recent decisions of this Court have held, it is not misleading to reasonable consumers for a potato chip manufacturer to truthfully state that its product contains no trans fat.

1    Plaintiffs do not dispute that the plaintiff in *Thomas v. Costco* asserted the same "0g trans
2  fat" claim plaintiffs assert here, in nearly verbatim language.  See Doc. 94, p. 9.  Nor do they
3  dispute that the court dismissed that claim on the ground that the plaintiffs had not sufficiently
4  alleged that the label was untruthful or misleading.  2013 WL 1435292 at *5.  Plaintiffs' only
5  argument is that the court gave plaintiffs there leave to amend to attempt to fix their defective
6  claim.  Doc. 99, p. 5.  But that is exactly the point.  The plaintiffs were required to amend because
7  the claim was defective as alleged.  The claim here is equally defective.  The only difference here
8  is that plaintiffs have already twice amended their complaint.  Thus, unlike in *Thomas*, no
9  purpose would be served by giving further leave to amend, and the complaint should be dismissed
10 with prejudice.

11    Plaintiffs are likewise unable to distinguish *Delacruz v. Cytosport, Inc*.  They do not—and
12 cannot—argue that the facts or the claim there were different in any material respect from
13 plaintiffs' claim here.  Their only argument is that the case was wrongly decided because Judge
14 Wilken purportedly failed to consider whether the "0g trans fat" statement was actionable as
15 misleading.  Doc. 99, p. 4.  But as P&G's motion demonstrated, Judge Wilken was not unaware
16 of the basic principle that misleading as well as false advertising is actionable.  Instead, her order
17 makes clear that she understood and applied that principle, and ruled that the "0g trans fat"
18 statement at issue was neither false nor misleading.  Doc. 94, pp. 9-10.  Plaintiffs have no
19 response to that point.

20    Plaintiffs rely on *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-CV-1586, 2013 WL 1320468
21 (N.D. Cal. Apr. 1, 2013), but P&G's motion showed that case to be distinguishable in that it did
22 not involve a missing § 101.13(h) disclosure statement, but an *inaccurate* one.  Plaintiffs
23 speculate that the court discussed the inaccurate disclosure only to avoid disagreeing with
24 *Delacruz*.  Doc. 99, p. 9.  That theory is discredited by the plain language of *Wilson*, in which
25 Judge Conti reasoned that plaintiffs had "sufficiently alleged that the '0 Grams Trans Fat'
26 statement was deceptive *because*, *accompanied by a disclosure of at least one of the ingredients*
27 *that 21 C.F.R. § 101.13(h)(1) requires to be disclosed*, they and other reasonable consumers
28 would think that the statements on the labels make accurate claims about the labeled products'

nutritional content when, in fact, they do not." *Id.* at *14 (emphasis added). *Wilson* turned on the "distinct fact pattern" at issue—the presence of an inaccurate § 101.13 disclosure statement—and therefore does not help plaintiffs here. *Id.*

Nor does *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008), help plaintiffs. P&G does not, as plaintiffs contend, argue that the nutrition label "cured" any deception resulting from the "0g trans fat" statement. Doc. 99, p. 5. Rather, the point is that the "0g trans fat" statement is not deceptive in the first place, as *Thomas* and *Delacruz* ruled.

Plaintiffs also again invoke their refrain that whether an advertisement is misleading is a question of fact that must await summary judgment or trial. As discussed above, that is incorrect. Numerous cases have dismissed false advertising claims on the ground that the advertising was neither false nor misleading. *See* Doc. 94, p. 10 nn. 4 and 5 (citing cases). A recent example, analogous to this case, is Judge Koh's order in *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412, 2013 WL 4833413 (N.D. Cal. Sept. 6, 2013). Plaintiffs there challenged a label that said the product was "Made with 100% Natural Fruit." According to plaintiffs, this was misleading because the product contained certain artificial non-fruit ingredients. Judge Koh dismissed the claim because the plaintiff "fails to explain why a label claiming that a product is "Made with 100% Natural *Fruit*" plausibly implies that the *entire* product—which contains ingredients other than fruit—is free of synthetic ingredients." *Id.* at *21 (emphasis in original). So too here. Plaintiffs have not explained how an accurate statement that Pringles contains no *trans fat* plausibly implies that it also lacks *other* kinds of fat or other allegedly non-healthy ingredients.

Nor are plaintiffs correct that the FDA's regulation resolves the question whether the Pringles label is misleading. The FDA's broadly applicable disclosure requirements do not resolve what it is misleading in a particular case for false advertising purposes. The FTC enforcement guide plaintiffs cite confirms as much. With respect to the FDA disclosure regulation at issue here—§ 101.13(h)—the FTC guide states that whether an enforcement action is proper for false advertising (as opposed to a regulatory violation) depends on "several factors," including evaluating the "context of the ad as a whole" to determine whether "the failure to disclose the presence of risk-increasing nutrients is likely to be deceptive." Doc. 99, p. 6. If

7

Reply ISO Mot. To Dismiss Second Am. Complaint
No. 12-cv-01891-PSG

1  plaintiffs were correct that the mere fact of a regulatory violation rendered a label misleading,
2  there would be no need for any evaluation of the "context of the ad as a whole."

3  When the label here is viewed as a whole, and in light of the nature of the product at issue,
4  no basis exists for concluding that a reasonable consumer would conclude from a true "0g trans
5  fat" statement that Pringles makes only positive contributions to a diet or is otherwise a health
6  food.  Because plaintiffs have offered no facts supporting a different conclusion, their complaint
7  should be dismissed, just as the complaint was dismissed in *Thomas* and *Delacruz*.

8  **B.   Plaintiffs Abandon Their "Wholesome Ingredients" False Advertising Claim.**

9  Plaintiffs now admit that they never saw the alleged "wholesome ingredients" website
10 statement and they disavow any intent to challenge that purported statement as misleading.
11 Doc. 99, pp. 7-8.  But they still seek to challenge the statement—despite never having seen it—
12 under the UCL's unlawful prong.  That claim is meritless because the Court has already ruled that
13 a website is not labeling, and therefore none of the misbranding regulations apply.  Doc. 89,
14 pp. 20-21; *see also* Doc. 94, p. 14 n.9.

15 Moreover, as discussed below, Judge Koh recently rejected a similar "unlawful" prong
16 claim that was based on an alleged website statement the plaintiffs never saw.  *See infra*, p. 12.
17 That ruling applies equally to plaintiffs' "wholesome ingredients" claim here.  *See also Brazil v.*
18 *Dole Food Co.,* No. 12-CV-01831, Doc. 76, pp. 15-16 (N.D. Cal. Sept. 23, 2013) (dismissing
19 claims based on website that plaintiff never viewed); *Bruton,* 2013 WL 4833413 at *16 (same);
20 *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (same).

21 Finally, the claim should be rejected under Rule 8.  Without having alleged when or where
22 the statement supposedly appeared, or what its full content was, plaintiffs have not alleged the
23 "factual content" necessary to satisfy even the basic Rule 8 standard for pleading a claim.  *Iqbal*,
24 556 U.S. at 678.  Nor have they alleged any possible basis by which the statement on the website
25 could have caused them any loss.  The UCL causation requirement applies equally to claims
26 asserted under the unlawful prong.  *Daro v. Super. Ct*., 151 Cal. App. 4th 1079, 1099 (2007)
27 ("[w]hen a UCL action is based on an unlawful business practice . . . there must be a causal
28 connection between the harm suffered and the unlawful business activity").

1  **C.  Plaintiffs Do Not Answer P&G's Showing That Their Slack Fill Claim Alleges Insufficient Facts To Satisfy *Twombly*.**

Plaintiffs assert that the Court has already found their slack fill allegations to be sufficient. The Court's order did not address, however, the fundamental defect in that claim—*i.e.*, that plaintiffs have not alleged any facts regarding (1) the amount of any purported empty space in the Pringles container, and (2) whether any such empty space was non-functional. Plaintiffs do not dispute that both are required elements of their claim. Nor do they deny that their complaint is devoid of any facts on either point. Their claim should accordingly be dismissed.

## II.  PLAINTIFFS FAIL TO PLEAD KEY ELEMENTS OF THEIR UNLAWFUL PRONG CLAIMS, WHICH IN ANY EVENT ARE PREEMPTED.

P&G's motion asserted three independent grounds for dismissing plaintiffs' "unlawful" prong claims: (i) plaintiffs have not alleged deception and reliance, which are required because the alleged unlawfulness here is failure to comply with a consumer disclosure law; (ii) plaintiffs fail to identify any economic injury; and (iii) the claims are preempted. Plaintiffs have no valid answer to any of these grounds.

**A.  Because Plaintiffs' Unlawful Prong Claim Alleges Violation Of A Consumer Disclosure Statute, They Must Allege Deception and Reliance.**

Plaintiffs argue at length that reliance is not required for a UCL unlawful conduct claim. But that argument runs headlong into the California Supreme Court's controlling decision in *Kwikset Corp. v. Super. Ct.,* 51 Cal. 4th 310 (2011), which squarely held that a plaintiff asserting a UCL unlawful prong claim premised on an alleged consumer disclosure law violation must allege both deception and reliance. *Id.* at 326 n.9. Plaintiffs argue that *Kwikset* is inapplicable because it was "not illegal to sell" the mislabeled products at issue there. Doc. 99, p. 12. That is not true. Just as plaintiffs allege is the case here, the state law at issue in *Kwikset* expressly made it "unlawful . . . to sell" any product that was mislabeled as "Made in the U.S.A." Cal. Bus. & Prof. Code § 17533.7. And just as in this case, the plaintiff in *Kwikset* argued that the defendants' statutory violation made it unnecessary for the plaintiff to show reliance. *See* Doc. 94, p. 16. *Kwikset* is thus indistinguishable on this point and requires that plaintiffs' "unlawful" claim be

dismissed on the same ground as their "fraudulent" claim—*i.e.*, that plaintiffs have not adequately alleged that the label was deceptive or that they were misled by it. *See also Kane v. Chobani*, 2013 WL 5289253 at *6 (citing *Kwikset* and holding that reliance is required for a UCL unlawful prong claim when the "underlying misconduct . . . is fraudulent conduct"); *Brazil*, No. 12-CV-01831, Doc. 76, p. 15 (same).

      Requiring reliance when the alleged "unlawful" conduct is a violation of a disclosure law is consistent with the UCL's requirement that causation be proved in every case. See Cal. Bus. & Prof. Code § 17204 (only "a person who has suffered injury in fact and has lost money or property *as a result of* the unfair competition" has standing to bring a UCL claim) (emphasis added). "Reliance is the causal mechanism of fraud." *Kwikset*, 51 Cal. 4th at 326 (internal quotation marks omitted). Thus, when the alleged misconduct is ultimately grounded in a duty to disclose or not mislead (whether the duty arises from statute or the common law), reliance is necessary to show causation. Indeed, plaintiffs do not identify any mechanism by which they could establish causation in a case like this in the absence of reliance. *Durell*, 183 Cal. App. 4th at 1363 ("A consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes.").

      The cases plaintiffs cite do not hold otherwise—nor could they in light of the governing ruling in *Kwikset*. As shown in P&G's motion, most of them hold that reliance is not required where the underlying "unlawful conduct" is anticompetitive or similar conduct that results in the plaintiff paying too much for the product—a context in which causation can be established even without reliance. For example, in *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106 (N.D. Cal. 2007), the court held that plaintiffs did not need to allege reliance where they alleged that the defendants' conduct in excluding competitors "caused [plaintiffs] to pay more than they otherwise would have for [defendant's] drug."[3]

---

[3]    *See also Olivera v. American Home Mortgage Servicing, Inc.*, 689 F. Supp. 2d 1218 (N.D. Cal. 2010) (allegedly excessive interest on mortgage loan); *Rand v. Am. Nat'l Ins. Co.*, No. 09-CV-0639, 2010 WL 2595142 (N.D. Cal. June 22, 2010) (allegedly overpriced annuity and surrender charges); *Aho v. Americredit Fin. Servs.*, 277 F.R.D. 609, 623 (S.D. Cal. 2011)

(continued)

10

Reply ISO Mot. To Dismiss Second Am. Complaint
No. 12-cv-01891-PSG

Plaintiffs' principal case, *Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1 (2012), is similarly a case of an alleged overcharge, rather than mere violation of a regulatory requirement.  The alleged unlawful conduct there was the collection of dealer-added charges when the dealer had not displayed a hanger tag describing those charges as required by the Vehicle Code.  *Baird v. Sabre, Inc.*, No. 13-CV-00999, 2013 BL 201323, at *4 (C.D. Cal. July 25, 2013) (discussing *Medrazo*).  That *Medrazo* was concerned with the unlawful overcharge is confirmed by the court's indication that the proper measure of any restitution award would be the amount of dealer-added charges.  205 Cal. App. 4th at 14.  This case, and the others plaintiffs cite, provides no support for plaintiffs' argument that they can state a claim based on nothing more than having purchased a product that allegedly "was sold in violation of state law."  Doc. 99, p. 13.[4]

The remainder of plaintiffs' cases hold only that absent class members need not prove reliance.[5]  In *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010), for example, the court ruled that class certification was proper because the class members were not required to each individually prove reliance and causation.  The court made clear, however, that the named plaintiffs were not exempt from those requirements: "a named plaintiff in a UCL class action now must show that he or she suffered injury in fact and lost money or property as a result of the unfair competition." *Id.* at 154.  And the court specifically found that the plaintiff had satisfied those requirements by alleging that "that, *in reliance* on GNC's *deceptive conduct*, he bought an illegal product." *Id.* at 156 (emphasis added).  Far from supporting plaintiffs here, this case shows that their complaint fails to state a claim, because plaintiffs have not sufficiently alleged either deception or reliance.

---

(allegedly unlawful assessment and collection of deficiency balance following the sale of repossessed vehicle).

[4]   Plaintiffs' complaint contains a conclusory assertion that plaintiffs paid a premium for Pringles as a result of the "0g trans fat" statement.  However, plaintiffs offer no response to P&G's argument (Doc. 94, pp. 19-20) that this "premium" allegation is too conclusory and implausible to state a valid claim of injury.  The Court should accordingly disregard it.

[5]   *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 537-38 (N.D. Cal. 2012); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).

### B. Plaintiffs' Theory That The Purchase Of An "Unlawful" Product Is Economic Injury Fails.

P&G's motion showed that the unlawful prong claims also fail because the purchase of a non-defective, as-advertised product is not economic injury, even if the seller violated some law in selling it. Judge Koh recently reached precisely that conclusion in rejecting the identical "illegal product" theory of economic injury in *Kane v. Chobani*. Just as in this case, plaintiffs there (represented by the same plaintiffs' counsel as in this case) argued that they could establish injury solely on the basis that the defendant's products "were misbranded, and, thus, were not capable of being sold legally." 2013 WL 5289253 at *9. Judge Koh rejected that argument, holding that accepting it "would eviscerate the enhanced standing requirements imposed by Proposition 64 and the California Supreme Court's decision in *Kwikset*." *Id.* at *9. And she reached this conclusion both as to product claims the plaintiffs admitted they had not seen because they were only on the defendant's website and as to alleged unlawful product claims the plaintiffs had seen because they were on the label itself. *Id.* at *9 & n. 7. This ruling is directly on point and compels the same result here.

Plaintiffs rely for a contrary result on *Kosta v. Del Monte Corp.*, No. 12-CV-01722, 2013 WL 2147413 (N.D. Cal., May 15, 2013), *Brazil v. Dole Food Co.*, No. 12-CV-01831, 2013 WL 1209955 (N.D. Cal. Mar. 25, 2013), and *Ivie v. Kraft Foods Global, Inc.*, No. 12-CV-02554, 2013 WL 3296616 (N.D. Cal. June 28, 2013). But those decisions involved misrepresentations and deception, not mere purchase of a misbranded product. *Kosta*, 2013 WL 2147413 at *10-11 (plaintiffs alleged they would not have made purchases but for "misrepresentations"); *Brazil*, 2013 WL 1209955 at *13 (accepting allegation that plaintiff was "deceived" into purchase); *Ivie*, 2013 WL 3296616 at *8 (finding standing where "plaintiff alleges she was misled"). In other words, the products in those cases were not as-advertised. Here, plaintiffs allege no deception in connection with their unlawful prong claim. Doc. 90 ¶¶ 4, 7 (disavowing any "deception by [P&G], or review of or reliance on the labels by Plaintiffs"). And, as shown above, they have stated no valid claim under the fraudulent prong that they were deceived by the true statement that Pringles contain no trans fat.

Nor is there any merit to plaintiffs' attempt to distinguish the cases P&G cited in its motion. Plaintiffs assert that *Kosta* found *Herrington v. Johnson & Johnson Consumer Cos.*, No. 09-CV-1597, 2010 WL 3448531 at *4 (N.D. Cal. Sep. 1, 2010) to be "unpersuasive" because the plaintiff there alleged only a defective product and not that the defendant engaged in "misleading labeling and advertising." But that is exactly the point. For their unlawful prong claim, plaintiffs here likewise disavow any claim of "misleading labeling and advertising." Like the plaintiff in *Herrington*, that leaves them without any viable claim of economic injury absent some allegation that the produce was defective—and allegation plaintiffs do not assert.

Plaintiffs try to distinguish *Myers-Armstrong v. Actavis Totowa, LLC*, No. 08-CV-04741, 2009 WL 1082026 at *4 (N.D. Cal. Apr. 22, 2009), on the ground that it was supposedly undermined by *Kwikset*. As discussed above, however, *Kwikset* found injury because the plaintiffs were misled by a deceptive label. It did not find the mere purchase of an "unlawful" product by itself is economic injury. It thus does nothing to undercut *Myers-Armstrong's* ruling that such purchases do not amount to such injury.

In *Boorstein v. Men's Journal LLC*, No. 12-CV-771, 2012 WL 2152815 at *2-4 (C.D. Cal. June 14, 2012), the court rejected three separate theories of economic injury claimed to have been caused by defendant's violation of California's Shine the Light law. P&G's motion discussed the court's rejection of Boorstein's third theory—that he was injured because he expected defendant to comply with the law—which mirrors plaintiffs' claim here that they were economically injured by a mere legal violation. Doc. 94, p. 19 (citing *Boorstein*, 2012 WL 2152815 at *4). Plaintiffs do not even address that holding, let alone explain how it is not fatal to their theory. Rather, they limit their discussion to the court's rejection of Boorstein's first theory of economic injury, which P&G agrees is not relevant. Doc. 99, pp. 16-17.

Plaintiffs' effort to distinguish *Baird* is equally off base. Again, they do not confront the portion of the decision on which P&G relies—namely, the court's rejection of the claim that "any transaction 'whose occurrence offends state law' is sufficient to impute the existence of economic loss." 2013 BL 201323, at *4 n.3. That is the very argument plaintiffs advance here. Doc. 99, p. 17 (plaintiffs "have an unlawful claim for Defendants' sale of misbranded products which were

legally worthless"). Similarly, plaintiffs ignore the relevant ruling in *In re Actimmune Mktg. Litig.*, No. 08-CV-02376, 2010 WL 3463491 at *9 n.2 (N.D. Cal. Sep. 1, 2010) that, "without a false representation, plaintiffs could not possibly suffer any injury" caused by the purchase of drugs promoted for off-label uses. Doc. 99, pp. 15-16.

In short, plaintiffs cite no authority for the proposition that a consumer can sue, and be awarded a full refund, simply because the seller failed to comply in some respect with a regulatory requirement. To the contrary, the courts have repeatedly rejected such claims—and for good reason. Such consumers have suffered no harm, and permitting suits like this one would give rise to the very kind of strike-suit litigation that the voters in California rejected when they voted for Proposition 64. To the extent that a food label is actually misleading, and the plaintiff relied on that misleading label to purchase the product, a false advertising claim may be brought. And to the extent a food label actually violates a labeling requirement, and the FDA or other proper governmental enforcement agency concludes the violation is material and requires enforcement, regulatory enforcement may be instituted. But the UCL does not authorize consumers to bring suits like this to try to get their money back for a product that was neither defective nor deceptively advertised.

### C. Plaintiffs' Misbranding Claims Are Preempted.

P&G's motion shows that plaintiffs' misbranding claim is impliedly preempted under *Buckman* and *Perez* because it is not based "on traditional state tort law" that predated the FDCA. Doc. 94, pp. 20-21; *see also* Doc. 90 ¶ 7; *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001). Instead, it is premised on the Sherman Law, which lacks substance except to incorporate the FDCA and its implementing regulations into state law. In arguing that the underlying basis for their action—deception or labeling law violations—is irrelevant to the preemption analysis, plaintiffs improperly disregard the ruling in *Buckman* that the nature of the state law claim is crucial. *Buckman*, 531 U.S. at 532-53 (distinguishing between non-preempted claims arising from "alleged failure to use reasonable care in the production of the product," a traditional state law tort, and preempted claims "exist[ing] solely by virtue of the FDCA"); *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013). Here, the nature of the state law claim is decisive.

1  Plaintiffs' false advertising claims invoke the state's traditional tort laws prohibiting deception, and therefore this Court held them not to be preempted. Doc. 89, pp. 15-16. By contrast, plaintiffs' misbranding claim invokes state statutory law that post-dates, and exists solely by virtue of, federal statutory and regulatory law. Consequently, it is preempted under *Buckman* and *Perez*.

The structure of the Nutrition Labeling and Education Act of 1990 confirms that conclusion. In those amendments to the FDCA, Congress prohibited states from establishing food labeling requirements that are not identical to the federal requirements (21 U.S.C. § 343-1(a)(5)) and granted states limited authority to enforce food labeling requirements "in its own name," subject to the FDA's oversight and control. 21 U.S.C. § 337(b). Congress's intent was to ensure uniformity in food labeling laws, which would be frustrated if private actions such as this one are not preempted. Indeed, the flood of recent food labeling cases brought by these plaintiffs' lawyers and others, and the number and variety of judicial rulings these cases have already produced (and promise to yet produce), is precisely the kind of proliferation of enforcement actions section 337 was adopted to prevent. It makes no sense to think that this is what Congress intended when it carefully limited state enforcement authority to suits by the government itself, overseen closely by the FDA.

## CONCLUSION

For the foregoing reasons, plaintiffs' Second Amended Complaint should be dismissed.

Dated: September 24, 2013                    JONES DAY

By: /s/ Craig E. Stewart
    Craig E. Stewart

Attorneys for Defendant
THE PROCTER & GAMBLE COMPANY

SFI-838253v1