1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| SARAH SAMET and JAY PETERS, individually and on behalf of all others similarly situated, | Case No. 5:12-cv-01891-PSG |
| | **ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS** |
| Plaintiffs, | |
| v. | **(Re: Docket Nos. 92, 94)** |
| PROCTER & GAMBLE COMPANY, KELLOGG COMPANY and KELLOGG SALES COMPANY, | |
| Defendants. | |

Plaintiffs Sarah Samet and Jay Peters (collectively, "Plaintiffs") bought chip, riblet, and fruit snack products made and sold by Defendants Procter & Gamble Company ("P&G") and Kellogg Company and Kellogg Sales Company ("Kellogg") (collectively, "Defendants"). Each product Plaintiffs bought had labels with various nutritional content claims, such as the amount of trans fat, the use of evaporated cane juice, and a description of the product as "healthy." Plaintiffs now seek to hold Defendants accountable for what they say are misleading representations in these

1

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

content claims and others.  P&G and Kellogg each have moved to dismiss Plaintiffs' second amended complaint ("SAC").  Having reviewed the papers, the court GRANTS-IN-PART Defendants' motion.

## I.     BACKGROUND

Except where otherwise noted, the court draws the following facts, taken as true for the purposes of a motion to dismiss, from Plaintiffs' SAC.[1]

P&G is a multinational company that manufactures and sells a variety of packaged food products, including Pringles potato chip snacks.  Kellogg also sells packaged food products.  Since the initial filing of this suit, on June 1, 2012, Kellogg acquired from P&G the Pringles brand and business.

Plaintiffs are California consumers who purchased Defendants' food products, including Pringles snack chips, Kellogg's MorningStar Farms Hickory BBQ Riblets (10 oz. box) and Kellogg's Fruity Snacks Mixed Berry (8 oz. box).[2]  Plaintiffs allege that in purchasing the above products, they reasonably relied on various nutritional content claims on Defendants' website and packaging labels, and had they known that these products were "misbranded," they would not have purchased them.[3]

On August 24, 2012, Plaintiffs filed an amended complaint ("AC") on behalf of consumers who purchased products in the following categories:[4]

(1) Potato chip snacks labeled "0 Grams Trans Fat," but containing more than 13 grams of fat per 50 grams ("Pringles claim");
(2) Products labeled with the ingredient "evaporated cane juice" ("ECJ claim");

---

[1] *See* Docket No. 90.

[2] *See id.* ¶¶ 29-30.

[3] *See id.*¶¶ 55, 120, 133.

[4] *See* Docket No. 25 at 1-2.

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

United States District Court
For the Northern District of California

(3) Products labeled or advertised as "healthy" despite disqualifying under 21 C.F.R. 101.65 (" 'healthy' and 'wholesome' claim");
(4) Fruit and fruit-flavored snacks ("fortification claim"); and
(5) Products sold in a slack-filled container.

In the AC, Plaintiffs asserted the following: violations of California's Unfair Competition Law ("UCL");[5] violations of California's Fair Advertising Law ("FAL");[6] violations of California's Consumer Legal Remedies Act ("CLRA");[7] restitution based on unjust enrichment/quasi-contract; violations of California's Beverly-Song Act; and violations of California's Magnuson-Moss Act.  On June 18, 2013, this court dismissed the restitution/unjust enrichment claims, the claims under the Magnuson-Moss Act, the claims under the FAL for the use of fruit vignettes and "made with Real Fruit," and the claims under the Beverly-Song Act, all with prejudice and without leave to amend.[8]  The court also dismissed the claims targeting the use of "0g Trans Fat," "healthy," and "wholesome" to describe Pringles, the claims targeting the description of Fruity Snacks as "fortified," and all the "evaporated cane juice claims."  These claims were dismissed without prejudice and with leave to amend.[9]  The slack-fill claims survived.[10]

---

[5] *See* Cal. Bus. & Prof. Code §§ 17200 *et. seq.*  The UCL "borrows" violations of other laws as unlawful practices and then provides an independent action.  *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

[6] Cal. Bus. & Prof. Code §§ 17500 *et. seq.*

[7] Cal. Civ. Code §§ 1750 *et. seq.*

[8] *See* Docket No. 89 at 23.

[9] *See id.* at 23-24.

[10] Defendants do not present any arguments challenging Plaintiffs' slack fill claims in the pending motion to dismiss that were not and could not have been raised in their earlier motions, and so the court will not address them further.

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

On July 2, 2013, Plaintiffs filed the SAC, asserting six causes of action against Defendants' products: an action under the UCL's unlawful conduct prong, an action under the UCL's unfair prong, an action under the UCL's fraudulent conduct prong, an action for misleading and deceptive advertising under the FAL, an action for untrue advertising under the FAL, and an action under the CLRA.[11]  On August 16, 2103, Defendants filed the motions to dismiss currently before the court.[12]  The gist of Defendants' present challenge is that Plaintiffs again have failed to state claims that pass muster under either Fed. R. Civ. P. 8 or 9.[13] Consistent with Civ. L. R. 7-6, the court took the motion under submission on the papers.

## II.      PRELIMINARY MATTERS

### A.     Requests for Judicial Notice

As a preliminary matter, Plaintiffs and Kellogg have each asked the court to take judicial notice of documents pursuant to Fed. R. Evid. 201.  Kellogg asks that the court take judicial notice of two letters sent to the U.S. Food and Drug Administration ("FDA") regarding its proposed ruling regarding evaporated cane juice.[14]  Plaintiffs oppose that request as outside the scope of items properly judicially noticed, and they independently ask that the court take judicial notice of two screenshots of Kellogg's website during the time period in question.[15]

---

[11] *See* Docket No. 90.

[12] *See* Docket Nos. 92, 94.

[13] Defendants also argue that Plaintiffs claims are preempted by federal law.  However, as the court already opined in its previous order, they are mistaken.  *See* Docket No. 89 at 9-16. With one exception, discussed below, Defendants' arguments do not persuade the court that Plaintiffs' current claims are distinct from those addressed in the court's previous order.  The court therefore holds, as before, that Plaintiffs' claims are not preempted.

[14] *See* Docket No. 93.

[15] *See* Docket No. 98.

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

A court may take judicial notice of a document on which the complaint "necessarily relies" if: (1) "the complaint refers to the document," (2) "the document is central to the plaintiff's claim," and (3) "no party questions the authenticity of the copy attached to the 12(b)(6) motion."[16] The website screenshots meet these requirements and so they are deemed subject to judicial notice.[17] However, the court will not take judicial notice of the letters sent to the FDA. The letters address the food industry's view on the use of "evaporated cane juice" as a label to describe sugar in ingredient lists, specifically noting that the industry disagrees with a proposed government regulation. Plaintiffs rely on that regulation in their complaint. The letters are therefore "offered to dispute the merits of [Plaintiffs'] allegations rather than to establish whether [Plaintiff] has stated a claim," rendering them inappropriate for judicial notice.[18]

**B.     Statutory Framework**

Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."[19] The FDA has implemented regulations to achieve this objective.[20] The FDA enforces the FDCA and accompanying regulations; "[t]here is no private right of action under the FDCA."[21]

---

[16] *Daniels-Hall v. Natl. Educ. Assn.*, 629 F.3d 992, 998 (9th Cir. 2010).

[17] *See* Docket No. 90, ¶ 129.

[18] *Burton v. Gerber Products Co. and Nestle, Inc.*, Case No. 5:12-cv-02412-LHK (N.D. Cal. 2012), Docket No. 57  at 6.

[19] *See* 21 U.S.C. § 393.

[20] *See, e.g.*, 21 C.F.R. § 101.1 *et. seq.*

[21] *Ivie,* 2013 WL 685372, at *1 (internal citations omitted).

5

**United States District Court**
For the Northern District of California

In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling.[22]   The NLEA adds an express preemption provision, which provides that "[e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish… any requirement" for the labeling of a container for food, or for nutrition labeling, or for nutrient content claims, "that is not identical" to the requirements of that section.[23]   In other words, states may not adopt food labeling requirements governed by the NLEA that are different from, or additional to those imposed by the federal statutory scheme.[24]   The NLEA is clear, however, that preemption does not extend further than "the plain language of the statute itself."[25]

Plaintiffs are not suing under the FDCA, but under California's Sherman Food, Drug, and Cosmetic Act ("Sherman Law").[26] Under the Sherman Law, California has adopted wholesale the food labeling requirements of the FDCA and NLEA as "the food regulations of this state."[27] The Sherman Law declares any food to be "misbranded" if it is "false or misleading in any particular"

---

[22] *See, e.g.,* 21 U.S.C. § 343 *et. seq.*  While under the FDA and NELA, the FDA stands guard over labeling of most food and nonalcoholic beverages, the United States Department of Agriculture ("USDA") regulates the labeling of meat, poultry, and certain egg products pursuant to the Federal Meat Inspection Act and the Poultry Products Inspection Act.  An important distinction between the two schemes is that while USDA labels are pre-approved, FDA labels are not.

[23] 21 U.S.C. § 343-1(a).

[24] *See In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.,* 588 F.Supp.2d 527, 532 S.D.N.Y. 2008); *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008).

[25] *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1091 (2008) (discussing § 6(c)(1) of the NLEA, which states that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the FDCA").

[26] *See* Cal. Health & Safety Code §§ 109875 *et. seq.*

[27] Cal. Health & Safety Code § 110100.

6

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

or if the labeling "does not conform with the requirements for nutrition labeling" set forth in certain provisions of the NLEA.[28]  The UCL prohibits "any unlawful, unfair . . . or fraudulent business act or practice."[29]  "The FAL makes it unlawful to induce the public to enter into any obligation through the dissemination of 'untrue or misleading' statements."[30] The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.[31]

### III.   LEGAL STANDARDS

**A.   Rule 12(b)(6)**

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[32]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[33]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34]  Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[35]

---

[28] Cal. Health & Safety Code §§ 110660, 110665, 110670.

[29] Cal. Bus. & Prof. Code § 17200.

[30] *Lam v. Gen. Mills, Inc.*, 859 F.Supp.2d 1097, 1103 (N.D. Cal. 2012).

[31] Cal. Civ. Code. §1770.

[32] Fed. R. Civ. P. 8(a)(2).

[33] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[35] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**United States District Court**
For the Northern District of California

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[36]   The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[37]   However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[38]

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear… that the complaint could not be saved by amendment."[39]

## B.     Rule 9(b)

Claims alleging fraud must comply with the heightened pleading requirements of Rule 9(b) by pleading with particularity the circumstances surrounding the fraud. The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge."[40]   This includes "the who, what, when, where, and how of the misconduct charged."[41]

"It is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of the course of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'"[42]   The Ninth Circuit has made it clear that when

---

[36] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[37] *See id.* at 1061.

[38] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[39] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[40] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[41] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

[42] *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 25 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA* 317 F.3d 1097 (9th Cir. 2003)).

8

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**United States District Court**
For the Northern District of California

pleading claims under the fraudulent conduct prong of the UCL, a plaintiff is required to meet Rule 9(b)'s heightened requirements.[43] When a plaintiff instead pleads under the unfair or unlawful conduct prong, the heightened requirements will sometimes, but not always, apply.  To make this determination, a plaintiff must account for the underlying conduct alleged to be unlawful.   If that conduct is unfair or unlawful because it relies entirely on a uniform course of fraudulent conduct, the Ninth Circuit has found that it "sounds in fraud" and must therefore rise to Rule 9(b)'s level of specificity.[44] To assess the fraudulent nature of the conduct at issue, a plaintiff must consider the traditional California elements of fraud: a false representation, knowledge of falsity, intent to defraud, justifiable reliance, and damage.[45] If these elements are present in the allegations, the conduct may properly be construed as "sounding in fraud," even if the word "fraud" does not appear. If the conduct underlying a UCL unfair or unlawful prong claim does not sound in fraud and is not part of an underlying course of fraudulent conduct, but the plaintiff nonetheless include "averments of fraud," then Rule 9(b) will apply to those averments alone, but not to the rest of the allegations associated with the unlawful claim.  If the averments of fraud fail to withstand Rule 9(b) scrutiny, then they should be stripped from the complaint, and the remaining allegations are subject only to standard Rule 8 scrutiny.[46]

As with the UCL claims, where a plaintiff claims under the FAL are grounded in fraud, the claims must meet Rule 9(b)'s heightened specificity requirements, but where they require no

---

[43] *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

[44] *See id.*

[45] *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124-25 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA* 317 F.3d 1097 (9th Cir. 2003)).

[46] *See id; see also In re Actimmune Mktg. Litig.*, Case No. 08-cv-02376-MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) *aff'd,* 464 F. App'x 651 (9th Cir. 2011).

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

allegations of fraud elements, Rule 8(a) will suffice.  Allegations regarding the CLRA will be subject to Rule 9(b)'s heightened pleading standards if they sound in fraud or stem from a uniform course of fraudulent conduct; otherwise, simple Rule 8(a) standards will suffice.[47]

## IV.   DISCUSSION

The court considers the sufficiency of each of Plaintiffs' claims in light of the pleading standards established above.  In light of the broad allegations of the complaint, the court assumes for purposes of this motion that each cause of action is asserted against each product, unless Plaintiffs give some indication otherwise in their papers.

### 1.   "0g Trans Fat" Claim

Defendants bring three challenges against Plaintiffs' UCL unlawful conduct claim against Pringles.  First, they argue that Plaintiffs are required but have failed to allege reliance and deception for an unlawful claim.  Second, they argue that they have not alleged any economic injury suffered, and thus lack standing to pursue this claim.  Finally, they argue that the claim is preempted by federal law.[48]

The court first addresses Defendants' argument that Plaintiffs have insufficiently alleged reliance and deception in their UCL unlawful claim.  As an initial matter, the California Supreme Court has settled the question of whether reliance and deception must be pleaded. They must.[49]  As for the sufficiency of Plaintiffs' allegations, Plaintiffs allege that the Pringles labels are unlawful because they are marked "0g Trans Fat" but "fail to bear the mandatory disclosure statement

---

[47] *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003)).

[48] Defendants also argue that the "0g Trans Fat" statement is not misleading as a matter of law, but the court has already rejected this argument. *See* Docket No. 89 at 18-19.

[49] *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011); *see also Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 965 (N.D. Cal. 2013); *Wilson v. Frito-Lay N. Am., Inc.*, Case No. 12-1586-SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013).

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

required to inform consumers that the products contained deleterious ingredients at levels deemed by regulators to pose a risk of a 'diet related' 'disease or health condition,'" in violation of 21 C.F.R. § 101.13(h) (as incorporated by the Sherman Law). 21 C.F.R. § 101.13(h) requires that food manufacturers whose products contain more than 13g of fat per 50g serving to provide consumers with a notice reading, "See nutrition information for fat content."[50] Plaintiffs specifically state that they read the front of the package where the 0g Trans Fat representation was made and relied on that representation in believing that Pringles was a healthier choice than other potato snack products.[51] Plaintiffs also specifically state that they were otherwise unaware of the total fat that the Pringles contained.[52] Whether or not Plaintiffs were reasonable in their reliance remains to be seen, but these allegations themselves are sufficient.[53]

Defendants further complain that Plaintiffs have failed to allege facts indicating that P&G had a duty to disclose its misbranding to Plaintiffs. But Plaintiffs' entire unlawful claim is based on Defendants' violation of a regulatory duty of disclosure.[54]

---

[50] *See* Cal. Health & Safety Code § 110280.

[51] *See* Docket No. 90 ¶¶ 82-83, 85.

[52] *See id.*

[53] *See, e.g., Astiana v. Ben & Jerry's Homemade, Inc.*, Case No. 10-cv-4387-PJH, 2011 WL 2111796, at *4 (N.D. Cal. May 26, 2011) (holding in an "all natural" food case that the issues of reliance and materiality are too fact-dependent to be resolved on [a] 12(b)(6) motion.").

[54] Plaintiffs attach fourteen Pringles labels to their SAC as Exhibit 8. On the labels, the nutritional information is presented per 18 or 28g serving. Plaintiffs assert that "all the Pringles snack products ... contain fat in excess of 13 grams," without providing the relevant conversions, but once those conversions are completed, it becomes clear that Plaintiffs are correct with respect to ten of the snack products. The snacks appearing on pages 1-6 and 9-12 of Exhibit 8 have 15.84g of fat per 50 g serving, according to the nutrition information presented on the label, but they do not contain the required disclosure statement. P&G points out, however, that the reduced fat versions of the snacks, however, appearing on pages 7-8, have only 12.32g of fat per 50g serving, and the 100 Calorie Packs have 12.5g per 50g serving, placing them outside of the statute's reach. Based on this information, Plaintiffs have successfully plead facts demonstrating that ten of Defendants' products run afoul of the Sherman Act.

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Turning to Defendant's standing argument, even if a standing challenge were appropriately raised pursuant to Rule 12(b)(6) rather than Fed R. Civ. P. 12(b)(1), the court notes that it already addressed this question at length in its previous order, and it is not persuaded to revise that ruling here.  Defendants' argument that an appropriate label would not plausibly result in a higher price for Pringles demonstrates only that they did not understand the court's prior order. Although the standard price of Pringles may not have changed at all, had Plaintiffs been appropriately warned of the nutritional problems with Pringles, Pringles could plausibly have been worth less to them.  The court therefore finds that standing remains appropriate.  Similarly, the court has already addressed preemption in previous orders, and it declines to rehash those arguments here.  Plaintiffs' unlawful claim is not preempted by federal law.

Because each of the defects proffered by Defendants is in turn defective, the motion to dismiss Plaintiffs' UCL unlawful claim with respect to Pringles in general is DENIED-IN-PART. The motion is GRANTED only to the extent that the labels of the "reduced fat" Pringles and 100 calorie packs demonstrates that those products had insufficient fat content to require the disclosure in question.  Because amendment of these claims appears futile, this dismissal is with prejudice.

a.  <u>Misleading and Deceptive Advertising</u>

In addition to their attack on Plaintiffs' unlawful conduct cause of action, Defendants' argue that Plaintiffs have failed to state a cause of action regarding Pringles under the FAL. As discussed above, to state a cause of action under the FAL, "the plaintiff must demonstrate that members of the public are likely to be deceived,"[55] judged under the "reasonable consumer" standard.[56] A defendant's intent to deceive is irrelevant to this claim, and there are no other

---

[55] *Rosal v. First Fed. Bank of California,* 671 F. Supp. 2d 1111, 1134 (N.D. Cal. 2009)

[56] *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

12

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

elements of California fraud required to find a violation, so simple Rule 8(a) pleading standards apply.

Plaintiffs here allege that the 0g Trans Fat label without the required disclosure lead them to believe that Pringles were a healthier alternative to other potato snacks, which is precisely the type of misdirection that the FDA was attempting to prevent in requiring the omitted disclosure.[57] Although the court expresses its skepticism that any reasonable consumer could be misled by the representations identified by Plaintiffs, the Ninth Circuit has made it clear that such questions are issues of fact and inappropriate for resolution on a motion to dismiss.[58] Defendants' motion to dismiss Plaintiffs' FAL claims with respect to the "0g Trans Fat" label is therefore DENIED.

### b.   "Healthy" and "Wholesome" Claims

In its previous order, this court dismissed Plaintiffs' causes of action for the "healthy" and "wholesome" statements relating to Pringles for four reasons: (1) Plaintiffs failed to provide the allegedly improper "healthy" or "wholesome" statement or attach the relevant label; (2) Plaintiffs failed to clarify which of defendants products contained the allegedly improper statement; (3) Plaintiffs failed to specify where the statements were located; (4) Plaintiffs failed to allege facts indicating that the statements constituted "labeling," to the extent that they appeared solely on Defendants' website.[59]

In their SAC, Plaintiffs have only attempted to remedy the second of these concerns. Plaintiffs *still* do not give a full rendition of the allegedly improper statement characterizing the chips as "healthy" or "wholesome."  They do not include screenshots, or copies of labels, providing these statements.  They reference the Defendants website, "http://www.pringles.com" as a whole,

---

[57] *See* Docket No. 94, ¶¶ 68, 82, 85.

[58] *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012).

[59] *See* Docket No. 89 at 21.

13

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

without any indication as to where on that website, on which page, or under which section the offending statement was found.  And even if they had, they fail to allege any facts indicating that Defendants referred consumers to the website for nutritional information, such that it could be considered a label.  Without these critical pieces of information, Plaintiffs' "wholesome" and "healthy" statement allegations do not meet even the simplest 8(a) pleading standard.  All causes of action stemming from and exclusively related to the "healthy" and "wholesome" allegations are dismissed.  Because Plaintiffs have already been given leave to amend their complaint on these claims, and in doing so failed to address the court's most basic concerns, the court is persuaded that further amendments would be futile.

2. <u>Causes of Action Against MorningStar Products</u>[60]

Kellogg next argues that Plaintiffs' "ECJ claim" under the FAL should be dismissed. The court dismissed this claim previously because Plaintiffs (1) failed to specify which products deceived them, (2) how Plaintiffs relied on the labels, and (3) why a reasonable consumer would be likely to be deceived.[61]  In the SAC, Plaintiffs have now clarified that they were misled as to the nutritional content of several Kellogg's MorningStar products by the ingredient label "evaporated cane juice."[62]  They allege that the plaintiffs in question read the ingredient lists and were lead to believe that the product contained no added sugar, only those sugars naturally occurring in the

---

[60] Defendants again urge the court to refer this case to the FDA, or stay proceedings pending the issuance of a final position on the phrase "evaporated cane juice," under the primary jurisdiction doctrine.  However, the court already ruled on this argument in this case, and will not address the matter at length again. *See* Docket No. 89 at 16-17.  The court finds the primary jurisdiction doctrine inapplicable.

[61] *See* Docket No. 89 at 21.

[62] *See* Docket No. 90, ¶¶ 100, 117, 118.

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

food, based on the term evaporated can juice.[63]  They further allege that they were misled as to the basic nature of the ingredient by the use of this term.[64]

Kelloggs hangs its entire motion on the question of reasonableness, alleging many times over that no reasonable consumer would be misled by these labels.[65]  Although Defendants may be correct as a factual matter, once again, the Ninth Circuit has made it clear that such questions are issues of fact and inappropriate for resolution on a motion to dismiss.[66]

Kelloggs' motion to dismiss Plaintiffs' FAL causes of action against MorningStar products is therefore DENIED.

   3.   Causes of Action Against Fruity Snacks

Defendants argue Plaintiffs' causes of action against the vitamin fortification of Fruity Snacks are preempted by federal law because the FDA expressly preempts such claims.   As Kellogg points out in its reply, the regulation cited by Plaintiffs merely "urges" parties to follow the guidelines set forth in that section, rather than requiring compliance.[67]   When read in conjunction with 21 C.F.R. §101.9(c)(8), which explicitly articulates that vitamin C may be naturally occurring "or added as a nutrient supplement," it becomes clear that Section 104.20 does not create a legal bar into vitamin fortification. Instead, it sets forth guidelines which parties may elect to follow at their discretion.

Although the court has declined to re-consider preemption arguments generally, in this particular case, Defendants have established that the conduct for which they have been haled to

---

[63] *See id.*, ¶¶ 118-120.

[64] *See id.* ¶¶ 121-122.

[65] *See* Docket No. 92 at 11-12.

[66] *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012).

[67] *See* Docket No. 100 at 4.

15

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

United States District Court
For the Northern District of California

court to answer is expressly permitted by the federal agency in charge of regulating their business. Therefore, with respect to this product alone, the court finds that Plaintiffs causes of action are preempted and are therefore DISMISSED.    Because the no further amendment could cure this defect, the dismissal is with prejudice.

### V.    CONCLUSION

Plaintiffs' cause of action under the UCL's unlawful prong against Pringles reduced fat and 100 calorie pack labels is dismissed with prejudice and without leave to amend, as are their claims against all Pringles labels that stem from "healthy and wholesome" allegations.  All causes of action against Fruity Snacks are dismissed with prejudice and without leave to amend. Defendants' motion to dismiss is denied with respect to all other products and causes of action.

**IT IS SO ORDERED.**

Dated:  December 10, 2013

_Paul S. Grewal_
PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

United States District Court
For the Northern District of California