Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 369 0800
Fax:  (408) 369-0752
pgore@prattattorneys.com

David McMullan, Jr. (admitted *pro hac vice*)
DON BARRETT, P.A.
P.O. Box 927
404 Court Square N.
Lexington, MS 39095
Tel: (662) 834-2488
Fax: (662) 834-2628
dmcmullan@barrettlawgroup.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SARAH SAMET and ROBERT FIGY, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PROCTER & GAMBLE COMPANY, KELLOGG COMPANY and KELLOGG SALES COMPANY, <br><br> Defendant. | Case No.  5:12-CV-01891 <br><br> **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, FOR APPOINTMENT OF CLASS REPRESENTATIVES, AND FOR APPOINTMENT OF CLASS COUNSEL** <br><br> Hearing Date:   October 27, 2015 <br> Time:           10:00 a.m. <br> Location:     Courtroom 5, 4th Floor <br> Judge:         Hon. Paul S. Grewal |

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 27, 2015, at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 5, 4th Floor of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Plaintiffs will, and hereby do, move for an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying this action as a class action, appointing them as class representatives, and appointing their counsel as class counsel.

Specifically, Plaintiffs will and hereby do move this Court to:

(1)  Certify the following classes:

(a)  All persons in California who, from December 2008 through July 2012 purchased the following Pringles snack chips:

| | |
|---|---|
| 6-Can Super Stack Carton 182/181g (3-Original/2-Sour Cream & Onion/1-Cheddar Cheese) | Lightly Salted 182g Original 182g |
| Bacon Ranch 181g | BBQ 181g |
| Cheddar Cheese 181g | Cheeseburger 181g |
| Cheez Ummms - Four Cheese 181g | Cheez Ummms - Mild Jalapeno Cheddar 181g |
| Cheez Umms - Cheddar & Sour Cream 181g | Family Favs - BBQ Cheddar 181g |
| Family Favs - Taco Night 181g | Family Favs - White Cheddar 181g |
| Honey Mustard 181g | Jalapeno 181g |
| Loaded Baked Potato 181g | Mexican Layered Dip 181g |
| Mozzarella Sticks & Marinara 181g | Onion Blossom 181g |
| Pizza - 181g | Ranch 181g |
| Salt & Vinegar 181g | Sour Cream & Onion 181g |
| Spicy Guacamole 181g | Xtreme Blastin' Buffalo Wing 181g |
| Xtreme Kickin Cheddar 181g | Xtreme Screamin Dill 181g |
| Xtreme Smokin Hot Ranch 181g | Sour Cream & Onion - 139g |
| Original - 140g | Fun Stack BBQ 98g |
| Fun Stack Original 100g | Fun Stack Sour Cream & Onion 98g |
| Fun Stack Cheddar Cheese 98g | BBQ - 74g Tray |
| BBQ - 74g | Cheddar Cheese - 74g Tray |
| Cheddar Cheese - 74g | Original - 74g |
| Original - 74 Tray | Sour Cream & Onion - 74g Tray |
| Sour Cream & Onion - 74g | Pizza - 40g |
| Cheddar Cheese - 40g | Sour Cream & Onion - 40g Tray |
| Sour Cream & Onion 40g | 12 Pack 21g - Original |
| 12 Pack 21g - Cheddar Cheese | 18ct Variety Pack - 21g (6-BBQ/6-Cheddar Cheese/6-Pizza) |
| 12 Pack 21g – Sour Cream & Onion | 32ct - 21g Original |
| 18ct Variety Pack - 21g (9-Original/6-Sour | 8 Pack 21g - Original 8 PK 21g – Sour Cream |

| Cream & Onion/3-Cheddar Cheese) | & Onion |
|---|---|
| 36ct-21g Variety Pack (18-Original; 12-Sour Cream & Onion; 6-Cheese) | 8 Pack 18g – Sour Cream & Onion |
| 8 Pack 18g - Original | |

And

(b) All persons in California from April 16, 2008 through December 2013 who purchased Kellogg's MorningStar Farms products listing "Evaporated Cane Juice" as an ingredient.

The following persons are expressly excluded from the classes:  (i) Defendants and their subsidiaries and affiliates; (ii) all persons who make a timely election to be excluded from the Class; (iii) governmental entities; and (iv) the Court to which this case is assigned and its staff.

(2)     To appoint Plaintiffs Sarah Samet and Robert Figy as class representatives;

(3)     To appoint the firms of Pratt & Associates and Don Barrett, P.A. as counsel for the class; and

(4)     To order the parties to meet and confer and present to this Court, within fifteen (15) days of an order granting class certification, proposed notice to the certified class.

This motion is based upon this Notice of Motion and Motion and Memorandum of Points and Authorities, the accompanying Declarations of Sarah Samet, Robert Figy, Julie Caswell, Dr. F. Edward Scarbrough, Pierce Gore, and David McMullan, Jr., as well as the pleadings and papers on file in this action.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. V

STATEMENT OF ISSUES TO BE DECIDED ................................................................. XI

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

INTRODUCTION ................................................................................................................ 1

FACTS COMMON TO THE CLASS ................................................................................. 1

LEGAL STANDARDS ....................................................................................................... 2

ARGUMENT ....................................................................................................................... 4

I.      PLAINTIFFS SATISFY RULE 23(a)'s REQUIREMENTS.................................... 4

        A.      The Class Is Ascertainable. ....................................................................... 4

        B.      Defendants Do Not Contest Numerosity. .................................................. 6

        C.      There Are Questions of Law and Fact Common to All Class Members ................ 7

        D.      Plaintiffs' Claims Are Typical ................................................................. 10

        E.      Plaintiffs Satisfy the Adequacy of Representation Requirement .......................... 12

                1.      The Representative Plaintiffs Have No Conflicts of Interest
                        With Other Class Members ............................................................ 13

                2.      The Representative Plaintiffs Will Vigorously Prosecute This
                        Action ............................................................................................. 13

                3.      Plaintiffs' Counsel Will Continue to Vigorously Represent the
                        Class ............................................................................................... 13

II.     THIS CASE SATISFIES RULE 23(b)(2)'S REQUIREMENTS ..................................... 14

III.    THIS CASE SATISFIES RULE 23(b)(3)'S REQUIREMENTS ..................................... 14

        A.      Common Questions of Law or Fact Predominate ................................... 15

        B.      UCL and FAL Claims ............................................................................. 16

        C.      CLRA Claim ........................................................................................... 16

        D.      Restitution Under The UCL, FAL, And CLRA Can Be Proven On A
                Classwide Basis ...................................................................................... 17

        E.      The Subject Products Are Legally Worthless Entitling Plaintiffs To A
                Damages Award Equal To The Purchase Price ....................................... 19

        F.      In The Alternative, The Court Can Certify A Class For Nominal  Damages ........ 19

1

G.    A Class Action Is The Superior Method For Resolving This Dispute....................21

2

1.    Class Members Have No Interest In Pursing Individual
Litigation ..........................................................................................21

3

4

2.    There Are No Other Actions Pending ...........................................21

3.    This Court Is the Appropriate Forum For This Litigation ...........21

5

4.    There Are No Manageability Issues...............................................21

6

CONCLUSION ......................................................................................................22

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................ 3

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ................................................................................... 3, 15

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .......................................................................... 12

*Astiana v. Dreyer's Grand Ice Cream, Inc.*
 Nos. C-11-2910 EMC; C-11-3164 EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012) ................................................................................................................ 12

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) .............................................................. 4, 6, 17

*Avina v. Spurlock*,
28 Cal. App. 3d 1086 (1972) ........................................................................... 20

*Ballard v. Equifax Check Servs., Inc.*,
186 F.R.D. 589 (E.D. Cal. 1999) ....................................................................... 3

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708, 712 (9th Cir. 2010) ..................................................................... 2

*Benson v. Kwikset Corporation*,
152 Cal.App.4th 1254 (Ct. App 4th Dist. 2007) .............................................. 10

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ........................................................................... 15

*Brazil v. Dole Food Co.*,
935 F. Supp. 2d 947 (N.D. Cal. 2013) ............................................................... 5

*Brazil v. Dole Packaged Foods, LLC*,
Case No.: 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 157575 (N.D. Cal. Nov. 6, 2014) ........... 4

*Brazil v. Dole Packaged Foods, LLC*,
Case No.: 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014)... 4, 5, 14

*Brown v. Hain Celestial Group, Inc.*,
C 11-03082 LB, 2014 U.S. Dist. LEXIS 161036 (N.D. Cal. Nov. 14, 2014) ................................. 6

*Brown v. Hain Celestial Group, Inc.*,
No. C 11-03082 LB, 2014 U.S. Dist. LEXIS 162038 (N.D. Cal. Nov. 18, 2014) ......................... 5

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
917 F.2d 1171 (9th Cir. 1990) .......................................................................... 11

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ........................................................................... 22

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d. Cir. 2013)........................................................................................... 5

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ................................................................................................... 8

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010)..................................................................................... 5

*Chern v. Bank of Am.*,
15 Cal. 3d 866 (1976) ..................................................................................................... 8

*Colucci v. ZonePerfect Nutrition Co.*,
Case No. 12-2907-SC, 2012 U.S. Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012) ..................... 12

*Comcast Corp. v. Behrend*,
133 S.Ct. 1426 (2013)..................................................................................................... 15

*Committee on Children's Television, Inc. v. General Foods Corp.*,
35 Cal. 3d 197 (1983) ..................................................................................................... 9

*Cortez v. Purolator Air Filtration Prods. Co.*,
23 Cal. 4th 163 (2000) ................................................................................................... 8

*County of San Bernardino v. Walsh*,
158 Cal. App. 4th 533 (Cal. App. 2d Dist. 2007) ........................................................ 18

*Delarosa v. Boiron, Inc.*,
275 F.R.D. 582 (C.D. Cal. 2011) ................................................................................... 5

*Duran v. Credit Bureau of Yuma, Inc.*,
93 F.R.D. 607 (D. Ariz. 1982) ....................................................................................... 3

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)........................................................................................................ 3

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................................... 16

*Foster Poultry Farms, Inc. v. SunTrust Bank*,
1:04-cv-5513 OWW SMS, 2008 U.S. Dist. LEXIS 36595 (E.D. Cal. May 2, 2008).................... 17

*FTC v. Figgie Int'l.*,
994 F.2d 595 (9th Cir. Cal.1993) .................................................................................. 19

*FTC v. Lights of Am., Inc.*,
Case No. SACV10-01333 JVS (MLGx), 2013 U.S. Dist. LEXIS 133040 (C.D. Cal. Sept. 17,
2013) ............................................................................................................................... 18

*General Tel. Co. v. Falcon*,
457 U.S. 147 (1982)................................................................................................. 11, 13

*Greenwood v. Compucredit Corp.*,
No. C 08-04878 CW, 2010 U.S. Dist. LEXIS 3839 (N.D. Cal. Jan. 19, 2010) ................. 16, 21

*Guido v. L'Oreal, USA, Inc.*,
Nos. CV 11-1067 CAS (JCx); CV 11-5465 CAS (JCx), 2013 U.S. Dist. LEXIS 94031 (C.D. Cal.
July 1, 2013)........................................................................................................................ 5, 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)............................................................................................ passim

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992)................................................................................................... 11

*Haynes v. Logan Furniture Mart, Inc.*,
503 F.2d 1161 (7th Cir. 1974).................................................................................................. 22

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013).................................................................................................. 16

*In re Clorox Consumer Litig.*,
301 F.R.D. 436 (N.D. Cal. 2014)............................................................................................... 5

*In re Conagra Foods, Inc.*,
Case No. CV 11-05379 MMM (AGRx), 2015 U.S. Dist. LEXIS 24971 (C.D. Cal. Feb. 23, 2015)
................................................................................................................................................. 12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006).................................... 11

*In re POM Wonderful, LLC Marketing and Sales Practices Litig.*,
No. ML 10-02199 DDP (RZx), 2012 U.S. Dist. LEXIS 141150 (C.D. Cal. 2012)......................... 5

*In re Steroid Hormone Prod. Cases*,
181 Cal. App. 4th 145 (Ct.App. 2nd Dist. 2010) ......................................................... 9, 10, 16, 19

*In re THQ, Inc. Secs. Litig.*,
No. CV 00–1783AHM (EX), 2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ................ 7

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ................................................................................................... 8, 9, 16

*In re Visa Checks/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)..................................................................................................... 15

*Johns v. Bayer Corp.*,
280 F.R.D. 551 (S.D. Cal. 2012).................................................................................................. 5

*Johnson v. Gen. Mills, Inc.*,
276 F.R.D. 519 (C.D. Cal. 2011) ................................................................................................ 5

*Juarez v. Arcadia Financial, LTD.*,
152 Cal. App. 4th 889 (2007) .................................................................................................. 18

*Kasky v. Nike Inc.*,
27 Cal. 4th 939 (2002) .......................................................................................................... 8, 9

*Keilholtz v. Lennox Hearth Products Inc*,
268 F.R.D. 330 (N.D. Cal. 2010).............................................................................................. 16

*Kluge v. O'Gara*,
227 Cal. App. 2d 207 (1964) ................................................................................. 20

*Koh v. S.C. Johnson & Son, Inc.*,
Case No. 09-00927 RMW, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 6, 2010) ....................... 12

*Kohl v. Assoc. of Trial Lawyers of Am.*,
183 F.R.D. 475 (D. Md. 1998) ................................................................................. 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ................................................................................. 17, 18

*Lanovaz v. Twinings N. Am., Inc.*,
Case No. C-12-02646-RMW, 2014 U.S. Dist. LEXIS 57535 (N.D. Cal. Apr. 24, 2014) ..... 4, 5, 14

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (Ct. App. 1st Dist. 2003) ................................................... 8, 10

*Leoni v. State Bar*,
39 Cal. 3d 609 (1985) ................................................................................. 9

*Lilly v. Jamba Juice Co.*,
Case No. 13-cv-02998-JST, 2014 U.S. Dist. LEXIS 131997 (N.D. Cal. Sept. 18, 2014) .......... 5, 6

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ................................................................................. 3, 21

*Lymburner v. U.S. Fin. Funds, Inc.*,
263 F.R.D. 534 (N.D. Cal. 2010) ................................................................................. 21

*McCrary v. The Elations Co., LLC*,
EDCV 13-00242 JGB (OPx), 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ................. 5

*Menagerie Productions v. Citysearch*,
CV 08-4263 CASFMO, 2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009) .................... 22

*Moeller v. Taco Bell Corp.*,
220 F.R.D. 604 (N.D. Cal. 2004) ................................................................................. 13

*Moore v. Hughes Helicopters, Inc.*,
708 F.2d 475 (9th Cir. 1983) ................................................................................. 3

*Nagel v. Twin Laboratories, Inc.*,
109 Cal. App. 4th 39 (Ct. App. 4th Dist. 2003) ................................................................. 8

*Negrete v. Allianz Life Ins. Co. of North America*,
238 F.R.D. 482 (C.D. Cal. 2006) ................................................................................. 22

*Ogden v. Bumble Bee Foods, LLC*,
292 F.R.D. 620 (N.D. Cal. 2013) ................................................................. 7, 10, 11, 12

*Park v. Welch Foods, Inc.*,
5:12-cv-06449-PSG, 2014 U.S. Dist. LEXIS 37796 (N.D. Cal. Mar. 21, 2014) .................... 19

*Pickman v. Am. Express Co.*,

No. C 11-05326 WHA, 2012 U.S. Dist. LEXIS 9662 (N.D. Cal. Jan. 27, 2012) .......................... 20

*Plascencia v. Lending 1st Mortgage,*
259 F.R.D. 437 (N.D. Cal. 2009) ........................................................................................... 3

*ProMex, LLC v. Hernandez,*
781 F.Supp. 2d 1013 (C.D. Cal. 2011) .................................................................................. 20

*Ries v. Arizona Beverages USA LLC,*
287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................... 4, 5, 6

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.,*
Case No. SACV 07-1306 JVS (RNBx), 2008 U.S. Dist. LEXIS 95083 (C.D. Cal. 2008) ............. 6

*Schwartz v. Harp,*
108 F.R.D. 279 (C.D. Cal. 1985) .......................................................................................... 12

*Sethavanish v. ZonePerfect Nutrition Co.,*
No. 12-2907-SC, 2014 U.S. Dist. LEXIS 18600 (N.D. Cal. Feb. 13, 2014) ................................ 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
559 U.S. 393 (2010) ............................................................................................................. 2

*Siminoff v. Jas. H. Goodman & Co. Bank,*
18 Cal. App. 5 (1912) ......................................................................................................... 20

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) ....................................................................... 7, 10, 11, 12

*Thurston v. Bear Naked, Inc.,*
Case No. 3:11-CV-02890-H (BGS), 2013 U.S. Dist. LEXIS 151490 (S.D. Cal. 2013) ................. 6

*Vasquez v. Coast Valley Roofing, Inc.,*
670 F. Supp. 1114 (E.D. Cal. 2009) ....................................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ......................................................................................................... 7

*Weiss v. York Hosp.,*
745 F.2d 786 (3d Cir. 1984) ................................................................................................ 14

*Werdebaugh v. Blue Diamond Growers,*
Case No.: 12-CV-2724-LHK, 2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ......... 4, 14

*Wiener v. Dannon Co.,*
255 F.R.D. 658 (C.D. Cal. 2009) ......................................................................................... 17

*Wolin v. Jaguar Land Rover N. Am., LLC,*
617 F.3d 1168 (9th Cir. 2010) ............................................................................................. 11

*Wolph v. Acer America Corp.,*
No. 09-01314, 2012 U.S. Dist. LEXIS 40159 (N.D. Cal. Mar. 23, 2012) ................................... 4

1

**Statutes**

2 Cal. Bus. & Prof. Code § 17203 ........................................................ 9

3 Cal. Bus. & Prof. Code § 17205 ........................................................ 17

4 Cal. Civ. Code § 3360 ........................................................................ 20

5 Cal. Health and Safety Code § 110760 ............................................. 8

6 **Rules**

7 Fed. R. Civ. P. 23 .............................................................................. 2

8 Fed. R. Civ. P. 23(a)(1) ..................................................................... 7

9 Fed. R. Civ. P. 23(a)(3) ..................................................................... 10

10 Fed. R. Civ. P. 23(a)(4) ..................................................................... 12

11 Fed. R. Civ. P. 23(b)(2) ..................................................................... 14

12 Fed. R. Civ. P. 23(b)(3)(A) ............................................................... 21

13 Fed. R. Civ. P. 23(b)(3)(B) ............................................................... 21

14 Fed. R. Civ. P. 23(g)(1)(A) ............................................................... 13

15 Fed. R. Civ. P. 23(g)(1)(B) ............................................................... 13

16 Fed. R. Civ. P. 23(g)(1)(c)(i) ............................................................ 13

17 **Other Authorities**

18 3 Alba Conte & Newberg, Newberg on Class Actions § 3.12 (4th ed. 2002) ............................. 11

19 3 Alba Conte & Newberg, Newberg on Class Actions § 7.20 (4th ed. 2002) ............................. 3

20 3 Alba Conte & Newberg, Newberg on Class Actions § 7.24 (3d ed. 1992) ............................. 13

21 7A Wright & Miller, Federal Practice and Procedure § 1779 (2d ed. 1986) ............................. 21

22 Fed. R. Civ. P. 23 advisory committee's note .................................... 14

23 Rest., Restitution, § 1, Cmt. e, p. 14 ................................................. 18

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### STATEMENT OF ISSUES TO BE DECIDED

Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3).

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This is not a case of simple oversight of an arcane regulation. California law and FDA regulations provide that food labels cannot be unlawful or misleading.  Defendant Procter & Gamble Company ("P&G") and Defendants Kellogg Company and Kellogg Sales Company (collectively "Kellogg") have intentionally misbranded their Pringles snack chips with the label statement "0g Trans Fat," but have failed to include the required disclosure statement directing consumers to the total fat content in the product. Kellogg has intentionally misbranded its MorningStar Farms products as containing the ingredient "Evaporated Cane Juice," rather than identifying that ingredient by its common name, "sugar" or "dried cane syrup." The labels at issue in each class are identical across product lines, regardless of where in California the products were purchased.

### FACTS COMMON TO THE CLASS

Defendants make, among their many brands, Pringles snack chip products and MorningStar Farms frozen vegetarian products.  Plaintiff Sarah Samet purchased Defendants' Pringles Original snack chips (6.41 oz. cylinder), Pringles 18 Variety Pack (original, cheddar cheese and sour cream and onion .74 oz. tubs), and Pringles 8 Pack (sour cream and onion .74 oz. tubs) in California during the Class Period. *See* Declaration of Sarah Samet ("Samet Decl.") at ¶ 2. Plaintiff Robert Figy purchased Kellogg's MorningStar Farms Hickory BBQ Riblets (10 oz.) in California during the Class Period. *See* Declaration of Robert Figy ("Figy Decl.") at ¶ 2.

Defendants' products, with the label statements described herein, violated the Sherman Law as outlined in the Plaintiffs' Second Amended Complaint ("SAC").[1]  Defendants' Pringles Original, Pringles 18 Variety Pack and Pringles 8 Pack prominently displayed the unlawful and misleading label claim "0g Trans Fat" without the mandatory disclosure statement alerting consumers that the chips were high in total fats.  Defendant Kellogg's MorningStar Farms products displayed the unlawful and misleading phrase "Evaporated Cane Juice," also known as

---

[1] Plaintiffs' allegations are incorporated herein by reference.

1    "ECJ," on its MorningStar Farms products, instead of referring to the ingredient by its common or

2    usual name, "sugar" or "dried cane syrup."  Both the "0g Trans Fat" and the "Evaporated Cane

3    Juice" label statements were material to Plaintiffs and other consumers. *See* Samet Decl. at ¶ 4;

4    Figy Decl.at  ¶ 3; Declaration of Julie A. Caswell ("Caswell Decl.") at ¶ 43; Plaintiffs' First Set

5    Of Requests For Admission To Defendants Kellogg Company And Kellogg Sales Company at

6    Nos. 8-9, attached hereto as Exhibit 1; Plaintiffs' First Set Of Requests For Admission To

7    Defendant The Procter & Gamble Company at Nos. 8-9, attached hereto as Exhibit 2.[2] The

8    Sherman Law prohibits these label statements.  Defendants have, since filing of this case,

9    removed the label statements from the products at issue in both classes.

10        Defendants' labeling of these products was not only unlawful, it was false and misleading.

11   *See* Declaration of Dr. F. Edward  Scarbrough at ¶¶ 12, 18. Plaintiffs read and relied on

12   Defendants' unlawful label statements, and would not have purchased Defendants' products had

13   they known the products were misbranded. *See* Samet Decl. at ¶ 4; Figy Decl. at ¶ 3.

14                                **LEGAL STANDARDS**

15        Rule 23 of the Federal Rules of Civil Procedure states, "'A class action may be

16   maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a)

17   (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit

18   into one of the three categories described in subdivision (b)."  *Shady Grove Orthopedic Assocs.,*

19   *P.A. v. Allstate Ins. Co*., 559 U.S. 393, 394 (2010) (quoting Fed. R. Civ. P. 23).

20        The decision regarding whether to certify a class is committed to the discretion of the

21   district court. *See Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 712 (9th Cir. 2010).

22   Although Plaintiffs bear the burden of satisfying the elements of Rule 23, the elements "should be

23   liberally construed." *See* 3 Alba Conte & Newberg, Newberg on Class Actions § 7.20 (4th ed.

24

25   ─────────────────
     [2] Defendants' responses to Plaintiffs' Requests for Admission have been deemed admitted.
     Plaintiffs served Kellogg with Requests for Admissions on June 27, 2014, and to date have not
26   received any response from Kellogg. Plaintiffs served P&G with Requests for Admissions on
     June 9, 2014, and to date have not received any response from P&G. *See* Fed. R. Civ. P. 36(a)(3)
27   ("A matter is admitted unless, within 30 days after being served, the party to whom the request is
     directed serves on the requesting party a written answer or objection addressed to the matter and
28   signed by the party or its attorney.")

2002). "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23, it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)); *see also Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437, 442 (N.D. Cal. 2009) ("In making this determination, the court may not consider the merits of the plaintiff's claims."). The Supreme Court has affirmed this position:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) (internal quotes and citations omitted).

Class actions in the Ninth Circuit are favored and are particularly appropriate in instances where, as here, individual damages are small. *See, e.g., Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'") (quoting *Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607, 610 (D. Ariz. 1982)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (holding that class certification by district court was appropriate because litigation costs would dwarf potential recovery by members of class if forced to pursue actions individually.).

As the Supreme Court has observed, "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *see also Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some – perhaps most – will be

1    unable to proceed as individuals because of the disparity between their litigation costs and what

2    they hope to recover").

3    <center>**ARGUMENT**</center>

4    **I.**     **PLAINTIFFS SATISFY RULE 23(a)'s REQUIREMENTS.**

5        **A.**     **The Class Is Ascertainable.**

6        In the Ninth Circuit "[t]here is no requirement that the identity of the class members . . .

7    be known at the time of certification." *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 535

8    (N.D. Cal. 2012) (alteration in original).  "A class is ascertainable if the class is defined with

9    'objective criteria' and if it is 'administratively feasible to determine whether a particular

10    individual is a member of the class.'" *Lanovaz v. Twinings N. Am., Inc*., Case No. C-12-02646-

11    RMW, 2014 U.S. Dist. LEXIS 57535, at *7 (N.D. Cal. Apr. 24, 2014) (quoting *Wolph v. Acer

12    America Corp.*, No. 09-01314, 2012 U.S. Dist. LEXIS 40159, at *4 (N.D. Cal. Mar. 23, 2012)).

13    Courts in this district have found and held that class definitions similar to Plaintiffs', which are

14    based on objective criteria, are ascertainable. *See Brazil v. Dole Packaged Foods, LLC*, Case No.:

15    12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234, at *12-21 (N.D. Cal. May 30, 2014) ("*Brazil

16    II*");  *Brazil v. Dole Packaged Foods, LLC*, Case No.: 12-CV-01831-LHK, 2014 U.S. Dist.

17    LEXIS 157575, at *45-48 (N.D. Cal. Nov. 6, 2014) ("*Brazil III*"); *Werdebaugh v. Blue Diamond

18    Growers*, Case No.: 12-CV-2724-LHK, 2014 U.S. Dist. LEXIS 71575, at *34-35 (N.D. Cal. May

19    23, 2014).

20        Plaintiffs' proposed class definition is sufficiently definite to identify putative class

21    members. Only those consumers who purchased Defendants' products whose labels bore the "0g

22    Trans Fat" label statement or listed "Evaporated Cane Juice" as an ingredient are included. *See

23    Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) ("As long as the class definition is

24    sufficiently definite to identify putative class members, '[t]he challenges entailed in the

25    administration of this class are not so burdensome as to defeat certification.'") (Internal citations

26    omitted.).

27        Defendants used the "0g Trans Fat" label statement on all the class products from as early

28    as 2005 through as late as September 2012 for some products. *See* "Pringles Artwork  -- 0g Trans

1  Fat Claim" Chart, PG-00003276, attached hereto as Exhibit 3. As shown in Exhibit 3, Defendants

2  used the "0g Trans Fat" claim uniformly across the snack chip line, regardless of flavor. *See id.*

3          Similarly, Kellogg used the "Evaporated Cane Juice" label statement without alteration on

4  its MorningStar Farms products throughout the class period. *See* Exhibit 1 at No. 6.  Because the

5  label claims were not taken off of the challenged products throughout the class period, the only

6  thing consumers will have to recall is whether or not they purchased a class product. *See Brown v.*

7  *Hain Celestial Group, Inc.*, No. C 11-03082 LB, 2014 U.S. Dist. LEXIS 162038, at *29-30 (N.D.

8  Cal. Nov. 18, 2014) (citing *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 959 (N.D. Cal. 2013)

9  ("*Brazil I*").

10         Defendants will almost certainly cite *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d. Cir.

11  2013) and argue that because they do not retain records to identify consumer purchases, the class

12  cannot be certified.  But *Carrera* is not the law in this circuit. "While [*Carrera*] may now be the

13  law in the Third Circuit, it is not currently the law in the Ninth Circuit.[3]" *Lilly v. Jamba Juice Co.*,

14  Case No. 13-cv-02998-JST, 2014 U.S. Dist. LEXIS 131997, at *18 (N.D. Cal. Sept. 18, 2014)

15  (quoting *McCrary v. The Elations Co., LLC*, EDCV 13-00242 JGB (OPx), 2014 U.S. Dist.

16  LEXIS 8443, at *24-25 (C.D. Cal. Jan. 13, 2014); *see also*, *Lanovaz*, 2014 U.S. Dist. LEXIS

17  57535, at *7 (same); *Brazil II*, 2014 U.S. Dist. LEXIS 74234, at *18 ("[Defendant] argues that the

18  proposed class lacks ascertainability because few, if any, company records exist to identify

19  purchasers or which products they bought, and consumers did not keep receipts or product

20  containers. This is not persuasive.").[4] Plaintiffs respectfully suggest that the Court follow Judge

21
22  [3] Plaintiffs acknowledge that some courts in this district have followed *Carrera,* such as in *In re Clorox Consumer Litig.*, 301 F.R.D. 436 (N.D. Cal. 2014) and *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2014 U.S. Dist. LEXIS 18600 (N.D. Cal. Feb. 13, 2014).
23  Plaintiffs recognize the split within this district respectfully submit that *Carrera* should not be followed for the reasons stated herein.
24  [4] Contrary to the Third Circuit's reasoning in *Carrera,* courts in this Circuit routinely certify classes of purchasers of over-the-counter products where it would be impossible to identify and notice every member of the class.  *See, e.g., Chavez v. Blue Sky Natural Beverage Co.*, 268
25  F.R.D. 365, 377 (N.D. Cal. 2010) (beverages); *In re POM Wonderful, LLC Marketing and Sales Practices Litig.*, No. ML 10-02199 DDP (RZx), 2012 U.S. Dist. LEXIS 141150 (C.D. Cal. 2012) (juice products); *Guido v. L'Oreal, Inc.*, Nos. CV 11-1067 CAS (JCx); CV 11-5465 CAS
26  (JCx), 2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) (hair products); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012) (multivitamins); *Ries*, 287 F.R.D. at 536 (tea
27  products); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 595 (C.D. Cal. 2011) (homeopathic products); *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 524 (C.D. Cal. 2011) (yogurt products);
28  *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, Case No. SACV 07-1306 JVS (RNBx),

1   Tigar's approach as expressed in *Lilly*:

> Adopting the *Carrera* approach would have significant negative ramifications for the ability to obtain redress for consumer injuries. Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits. In the absence of a class action, the injury would go unredressed.

2014 U.S. Dist. LEXIS 131997, at *11; *see also Brown v. Hain Celestial Group, Inc.*, C 11-03082 LB, 2014 U.S. Dist. LEXIS 161036, at *25 (N.D. Cal. Nov. 14, 2014) (citing *Lilly*, 2014 U.S. Dist. LEXIS 131997, at *11).

Just because Defendants cannot identify class members does not defeat certification:

> Defendant's concern that the Court will have difficulty identifying members of the class is unavailing. Because Defendant does not have records of consumer purchases, and potential class members will likely lack proof of their purchases, Defendant argues that the Court will have no feasible mechanism for identifying class members and will have to pursue proof individual to each class member. However, "[t]here is no requirement that 'the identity of the class members ... be known at the time of certification.' " *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D.Cal.2012); *Wolph*, 272 F.R.D. at 482. If class actions could be defeated because membership was difficult to ascertain at the class certification stage, "there would be no such thing as a consumer class action." *Ries*, 287 F.R.D. at 536. As long as the class definition is sufficiently definite to identify putative class members, "[t]he challenges entailed in the administration of this class are not so burdensome as to defeat certification."

*Astiana*, 291 F.R.D. at 500; *see also Thurston v. Bear Naked, Inc*., Case No. 3:11-CV-02890-H (BGS), 2013 U.S. Dist. LEXIS 151490, at *8 (S.D. Cal. 2013) (rejecting same argument). Here, Plaintiffs' proposed class definition is sufficiently definite to identify putative class members. Only those consumers who purchased the challenged products within the relevant time period are included.  Refusing to certify a class because a defendant does not keep sales records of its end consumers would effectively eviscerate consumer class actions in which the defendant does not sell directly to class members. *Ries*, 287 F.R.D. at 536.

## B.   Defendants Do Not Contest Numerosity.

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

---

2008 U.S. Dist. LEXIS 95083 (C.D. Cal. 2008) (nutritional supplements).

1  "impracticable." Fed. R. Civ. P. 23(a)(1). "Courts have routinely found the numerosity

2  requirement satisfied when the class comprises 40 or more members." *Ogden v. Bumble Bee*

3  *Foods*, *LLC*, 292 F.R.D. 620, 624 (N.D. Cal. 2013) (quoting *Vasquez v. Coast Valley Roofing*,

4  *Inc.*, 670 F. Supp. 1114, 1121 (E.D. Cal. 2009). Defendants admit that the number of consumers

5  who purchased the challenged products exceeds 1,000. *See* Exhibit 1 at No. 1; Exhibit 2 at No. 1.

6  **C.      There Are Questions of Law and Fact Common to All Class Members**

7      "Rule 23(a)(2) requires that there must be 'questions of law or fact common to the class,'

8  such that a 'common contention' exists that is of 'such a nature that it is capable of classwide

9  resolution.'" *Ogden*, 292 F.R.D. at 624. Like all Rule 23(a) elements, this requirement is

10  construed permissively. *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). "All

11  questions of fact and law need not be common to satisfy the rule. The existence of shared legal

12  issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled

13  with disparate legal remedies within the class." *Id*. (quoting *Hanlon*, 150 F.3d at 1019-1020).

14      In each class, there is a "common core" of fact that binds the entire class: All class

15  members purchased either Pringles snack chips with a "0g Trans Fat" label statement without the

16  required disclosure statement or purchased MorningStar Farm vegetarian products listing

17  "Evaporated Cane Juice" as an ingredient. Defendants' label claims were the same for each

18  product purchased by class members because the unlawful label statements "0g Trans Fat" and

19  "ECJ" did not vary throughout California. *See* Exhibit 1 at No. 7; Exhibit 2 at No. 7.

20      The commonality requirement may be satisfied if the claims of the prospective class have

21  even one significant issue common to the class. *See, e.g., Hanlon*, 150 F.3d at 1019-1020; *see*

22  *also In re THQ, Inc. Secs. Litig.*, No. CV 00–1783AHM (EX), 2002 U.S. Dist. LEXIS 7753, at

23  *30 (C.D. Cal. Mar. 22, 2002). To satisfy this provision, a common question "must be of such a

24  nature that it is capable of class-wide resolution – which means that the determination of its truth

25  or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."

26  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). In *Dukes*, Justice Scalia

27  emphasized that Rule 23(a)(2)'s commonality requirement remains distinct from the

28  predominance analysis of Rule 23(b)(3) (discussed below), and that "for purposes of Rule

1    23(a)(2), even a single common question will do." *Id.* at 2556 (internal quotation and alterations

2    omitted).

3        This case involves common questions of law and fact, the answers to which will resolve

4    the claims of all of the class members in one stroke.  First, the key common questions regarding

5    Plaintiffs' UCL, FAL, and CLRA claims are whether the challenged label statements were

6    unlawful, unfair, deceptive, or misleading to reasonable consumers. *See Cel-Tech Comm., Inc. v.*

7    *Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (UCL prohibits conduct that is unfair

8    or deceptive, even if it is not unlawful); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th

9    163, 181 (2000) (UCL does not require intent to injure); *Lavie v. Procter & Gamble Co.*, 105 Cal.

10   App. 4th 496, 506-07 (Ct. App. 1st Dist. 2003) (advertisement "is judged by the effect it would

11   have on a reasonable consumer"); *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 54 (Ct.

12   App. 4th Dist. 2003) (conduct that is "likely to mislead a reasonable consumer" violates the

13   CLRA); *Chern v. Bank of Am.,* 15 Cal. 3d 866, 876 (1976) ("statement is false or misleading if

14   members of the public are likely to be deceived. Intent of the disseminator and knowledge of the

15   customer are both irrelevant."). If the label statements were unlawful and misleading with regard

16   to one of Defendants' products, they were unlawful as to all of the class products.

17       Second, the question of "unlawfulness" under the Sherman Law is a separate common

18   question that can be resolved on a class-wide basis.  If Defendants' products were "misbranded"

19   under the Sherman law, Defendants could not lawfully sell the products. Cal. Health and Safety

20   Code § 110760.

21       Third, the question of "deceptiveness" under the UCL is common to all members of the

22   class because it asks whether "members of the public are likely to be deceived." *Kasky v. Nike*

23   *Inc.,* 27 Cal. 4th 939, 951 (2002). As long as Plaintiffs relied on the misrepresentations or

24   omissions (which they did), it is not necessary to show reliance by absent class members. *See In*

25   *re Tobacco II Cases*, 46 Cal. 4th 298, 306, 313 (2009). In *Tobacco II*, the California Supreme

26   Court reversed decertification of a class of cigarette purchasers where the plaintiffs alleged that

27   the defendant manufacturers had engaged in a "campaign of deceptive advertising and misleading

28   statements about the addictive nature of nicotine and the relationship between tobacco use and

1   disease." *Id.* at 306. The trial court reached this decision despite the fact that a "myriad of distinct

2   issues exist[ed] as to each class member's exposure to the alleged deceptive marketing, reliance

3   thereon, whether same was a causal factor of the person's smoking and whether each class

4   member sustained injury." *Id.* at 309.

5           The California Supreme Court held that these issues were not relevant:

6           The class, as certified, consists of members of the public who were exposed to
            defendants' allegedly deceptive advertisements and misrepresentations and who
7           were also consumers of defendants' products during a specific period of time. The
            nature of the claim is the same--the right to be protected against defendants'
8           alleged deceit--and the remedies remain the same--injunctive relief and
            restitution.

9

10   *Id.* at 324; *see also In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155 (Ct.App. 2nd

11   Dist. 2010) (ordering certification of UCL claim against manufacturer of products that contained

12   a controlled substance; holding that there were common questions of "(1) whether GNC's sale of

13   androstenediol products was unlawful; and if so, (2) the amount of money GNC 'may have ...

14   acquired by means of' those sales that must be restored to the class") (quoting Cal. Bus. & Prof.

15   Code § 17203).

16           Fourth, Plaintiffs' FAL claim raises a common question: whether Defendants' label

17   statements were likely to deceive the public.  The California Supreme Court "has recognized that

18   '[a]ny violation of the false advertising law ... necessarily violates' the UCL." *Kasky*, 27 Cal. 4th

19   at 950 (quoting *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal. 3d 197,

20   210 (1983)). These laws prohibit "not only advertising which is false, but also advertising which

21   [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to

22   deceive or confuse the public." *Kasky*, 27 Cal. 4th at 951 (quoting *Leoni v. State Bar,* 39 Cal. 3d

23   609, 626 (1985)). "Thus, to state a claim under either the UCL or the false advertising law, based

24   on false advertising or promotional practices, 'it is necessary only to show that members of the

25   public are likely to be deceived.'" *Kasky*, 27 Cal. 4th 951 (quoting *Committee on Children's*

26   *Television, Inc.*, 35 Cal. 3d at 211).

27           Fifth, the question of materiality – how a reasonable person would perceive the labeling –

28   creates another common issue.  Regarding Plaintiffs' CLRA claim, although it is necessary to

1   show reliance by the class, such reliance may be presumed when the alleged misrepresentations

2   and omissions were material. *In re Steroid Hormone Prod. Cases,* 181 Cal. App. 4th at 156-57.

3         Materiality is demonstrated by showing that:

4        a reasonable man would attach importance to its existence or nonexistence in
determining his choice of action in the transaction in question, and as such

5        materiality is generally a question of fact unless the fact misrepresented is so
obviously unimportant that the jury could not reasonably find that a reasonable

6        man would have been influenced by it.

7   *Id.* at 157 (citations omitted); *see, e.g., Benson v. Kwikset Corporation*, 152 Cal.App.4th 1254,

8   1274-75 (Ct. App 4th Dist. 2007) (holding that trial courts "must view the labeling from the

9   perspective of those consumers for whom the geographic designation is important…[F]or some

10  people country of origin labeling is a critical factor when making a purchasing decision."); *Lavie*,

11  105 Cal. App. 4th at 506 (stating "where advertising is aimed at a particularly susceptible

12  audience . . . , its truthfulness must be measured by the impact it will likely have on members of

13  that group, not others to whom it was not primarily directed.").

14        Resolution of whether Defendants' branding and labeling violated California law satisfies

15  the requirement for a prima facie showing of commonality as required under Rule 23(a)(2).

16  *Ogden*, 292 F.R.D. at 624.  Defendants have admitted that the label statements were material to

17  consumers. *See* Exhibit 1 at No. 8, Exhibit 2 at No. 8.  Moreover, a reasonable consumer would

18  attach significance to the challenged label statement. *See* Caswell Decl., at ¶ 43. Certainly

19  Defendants believed the challenged statements were material or they (1) would not have changed

20  their labels to include the statements and (2) would not have made the claims so prominent on

21  their labels.  The statements were material to Plaintiffs as they would not have purchased the

22  products had they known the products were misbranded. *See* Samet Decl. at ¶ 4; Figy Decl. at ¶ 3.

23       **D.**    **Plaintiffs' Claims Are Typical**

24        Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical

25  of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). As recognized by the Ninth

26  Circuit, "representative claims are 'typical' if they are reasonably coextensive with those of

27  absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1019-1020;

28  *Staton*, 327 F.3d at 957. To show typicality, Plaintiffs must demonstrate "that their claims are

1   'reasonably co-extensive with those of absent class members; they need not be substantially

2   identical.'" *Ogden*, 292 F.R.D. at 625 (citing *Hanlon*, 150 F.3d at 1020). 'The test of typicality is

3   whether other members have the same or similar injury, whether the action is based on conduct

4   which is not unique to the named plaintiffs, and whether other class members have been injured

5   by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

6   (9th Cir. 1992).

7          Some degree of individuality is to be expected in all cases, but that specificity does not

8   necessarily defeat typicality. Rather, typicality results if the representative plaintiffs' claims

9   "arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the

10  absent class members and if their claims are based on the same legal or remedial theory." *In re*

11  *Dynamic Random Access Memory (DRAM) Antitrust Litig.,* M 02-1486 PJH, 2006 U.S. Dist.

12  LEXIS 39841, at *30 (N.D. Cal. June 5, 2006) (citations omitted).

13         The typicality standard requires only that the named plaintiffs' claims be "reasonably

14  coextensive with those of absent class members[,] not substantially identical." *Staton*, 327 F.3d at

15  957; *see also Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th

16  Cir. 1990) (Rule 23 "does not require the named plaintiffs to be identically situated with all other

17  class members. It is enough if their situations share a 'common issue of law or fact' and are

18  'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'") (citations

19  omitted). It suffices that the class representatives are "part of the class and possess the same

20  interest and suffer the same injury as the class members." *General Tel. Co. v. Falcon*, 457 U.S.

21  147, 156 (1982) (quotation marks omitted).

22         Factual variations do not defeat typicality where, as here, the underlying claims rely on

23  the same legal or remedial theory. *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168,

24  1175 (9th Cir. 2010) (reversing district court's denial of class certification in breach of warranty

25  case). "The fact that Class Members must individually demonstrate their right to recover, or that

26  they may suffer varying degrees of injury, will not bar a class action, nor is a class action

27  precluded by the presence of individual defenses against class plaintiffs." 3 Alba Conte &

28  Newberg, Newberg on Class Actions § 3.12 (4th ed. 2002). Thus, the typicality requirement is

1  satisfied even if there are factual distinctions between the claims of the named plaintiff and those

2  of other class members. *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir. 2001).

3   Typicality is satisfied so long as the named plaintiff's claims stem from the same event,

4  practice, or course of conduct that forms the base of the class claims and is based upon the same

5  legal remedial theory. *In re Conagra Foods, Inc.,* Case No. CV 11-05379 MMM (AGRx), 2015

6  U.S. Dist. LEXIS 24971, at *99-101 (C.D. Cal. Feb. 23, 2015) (quoting *Schwartz v. Harp*, 108

7  F.R.D. 279, 282 (C.D. Cal. 1985)). Plaintiffs' claims are typical of those of the putative class.

8   Plaintiff Samet purchased Pringles snack chip products with a "0g Trans Fat" label

9  statement, and Plaintiff Figy purchased a MorningStar Farms product listing "Evaporated Cane

10  Juice" as an ingredient. Both challenged label statements appeared on Defendants' products

11  across their product lines.

12   Plaintiffs and the respective members of each class were exposed to the exact same label

13  statements. "In situations in which reliance is alleged on a nearly identical claim on labels for

14  different products or where the products themselves are essentially identical, the named

15  representative's injury essentially merges with those other claims." *Ogden*, 292 F.R.D. at 625

16  (citing *Koh v. S.C. Johnson & Son, Inc*., Case No. 09-00927 RMW, 2010 U.S. Dist. LEXIS 654

17  (N.D. Cal. Jan. 6, 2010); *Colucci v. ZonePerfect Nutrition Co*., Case No. 12-2907-SC, 2012 U.S.

18  Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012); and *Astiana v. Dreyer's Grand Ice Cream, Inc.,*

19  Nos. C-11-2910 EMC; C-11-3164 EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20,

20  2012)). Therefore, Plaintiffs satisfy the typicality and adequacy requirements of Rule 23 not only

21  for the products they purchased, but also for products containing the exact same label statements.

22  Finally, Defendants have admitted typicality. *See* Exhibit 1 at No. 2, Exhibit 2 at No. 2.

23    **E.** **Plaintiffs Satisfy the Adequacy of Representation Requirement**

24   Rule 23(a)(4) requires that the class representative "fairly and adequately protect the

25  interests of the class."  Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has established a two-prong

26  test for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts

27  of interest with other class members, and (2) will the representative plaintiffs and their counsel

28  prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. Defendants have

1  admitted Plaintiffs are adequate representatives. *See* Exhibit 1 at No. 4; Exhibit 2 at No. 4.

2  **1.      The Representative Plaintiffs Have No Conflicts of Interest With**
3  **          Other Class Members**

4  There is no conflict where the claims of the class members and the class representative are

5  reasonably co-extensive, because adequacy is closely related to typicality. *See General Tel. Co.*,

6  457 U.S. at 157-158 n. 13.  Moreover, if there are any doubts as to the adequacy of representation

7  or potential conflicts, they should be resolved in favor of upholding the class, subject to later

8  possible reconsideration. *See* 3 Alba Conte & Newberg, Newberg on Class Actions § 7.24 (3d ed.

9  1992). Here, the proposed class representatives have no interests that are in conflict with the

10  interests of the members of the proposed class. *See* Exhibit 1 at No. 3; Exhibit 2 at No. 3.

11  **2.      The Representative Plaintiffs Will Vigorously Prosecute This Action**

12  "It is not necessary that a class representative be intimately familiar with every factual and

13  legal issue in the case; rather, it is enough that the representative understands the gravamen of the

14  claim." *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) (citations and internal

15  quotes omitted). To date, the class representatives' participation in this litigation has been

16  exemplary. They have stayed up-to-date on all of the proceedings and communicated with

17  counsel throughout this litigation. They have demonstrated their willingness to prosecute this

18  action vigorously.

19  **3.      Plaintiffs' Counsel Will Continue to Vigorously Represent the Class**

20  When a court certifies a class, the court must also appoint class counsel unless a specific

21  statute provides otherwise. Fed. R. Civ. P. 23(g)(1)(A). The basic requirement for appointment as

22  class counsel is that counsel must fairly and adequately represent the interests of the class. *See*

23  Fed. R. Civ. P. 23(g)(1)(B). In appointing class counsel, the court considers "the work counsel

24  has done in identifying or investigating potential claims in the action, counsel's experience in

25  handling class actions, other complex litigation, and claims of the type asserted in the action,

26  counsel's knowledge of the applicable law, and the resources counsel will commit to representing

27  the class…." Fed. R. Civ. P. 23(g)(1)(c)(i).

28  Plaintiffs' counsel are well qualified for appointment as class counsel. Plaintiffs' counsel

1   have considerable experience in complex litigation and with consumer class actions. Plaintiffs'

2   counsel have no conflicts that would prevent them from adequately representing the interests of

3   the class. *See* Declaration of Pierce Gore; Declaration of David McMullan.  Plaintiffs' proposed

4   class counsel Pierce Gore has been appointed to serve as class counsel by Judge Whyte in

5   *Lanovaz*,  2014 U.S. Dist. LEXIS 57535, at *25 and by Judge Koh in *Brazil II*, 2014 U.S. Dist.

6   LEXIS 74234, at *35 and *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *60.

7   **II.      THIS CASE SATISFIES RULE 23(b)(2)'S REQUIREMENTS**

8             Class certification requires that Plaintiffs meet the requirements of Rule 23(a) and one of

9   the three subsections of Rule 23(b). Plaintiffs seek certification of their claim for injunctive relief

10  under Rule 23(b)(2). Certification of this claim under Rule 23(b)(2) does ***not*** require a showing of

11  predominance of common questions of law or fact over individualized ones, but instead requires

12  that Plaintiffs show that Defendants "have acted or refused to act on grounds generally applicable

13  to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief

14  with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

15            This case involves a clear example of a defendant "act[ing] or refus[ing] to act on grounds

16  that apply generally to the class."  *Id*. In fact, the Advisory Committee envisioned just this type of

17  case when it stated that Rule 23(b)(2) certification is appropriate where "settling the legality of

18  the behavior with respect to a class as a whole, is appropriate." *See*  Fed. R. Civ. P. 23 advisory

19  committee's note. Fed R. Civ. P. 23 is appropriate "[w]hen a suit seeks to define the relationship

20  between the defendant(s) and the world at large."  *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d

21  Cir. 1984). Defendants' conduct is applicable to the class as a whole. *See, e.g., Kohl v. Assoc. of*

22  *Trial Lawyers of Am.*, 183 F.R.D. 475, 486 (D. Md. 1998) ("Since Defendants have acted in a

23  consistent manner toward the putative Class members, and Plaintiff is seeking injunctive relief . .

24  . the prerequisite of Rule 23(b)(2) has been satisfied."). The Court should certify Plaintiffs' claims

25  for injunctive relief and restitution under Rule 23(b)(2).

26  **III.     THIS CASE SATISFIES RULE 23(b)(3)'S REQUIREMENTS**

27            In addition to meeting the prerequisites of Rule 23(a), this case also satisfies the

28  requirements of Rule 23(b)(3) because common questions of law or fact predominate over any

1   purported individual questions, and a class action is the superior method – indeed, the only

2   method – for the fair and efficient adjudication of this controversy.

3           **A.      Common Questions of Law or Fact Predominate**

4           "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not

5   that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc.*, 133 S. Ct.

6   at 1191 (emphasis in original). Questions that are common to the class predominate over

7   individual questions where a plaintiff alleges a common course of conduct of misrepresentations,

8   omissions, and other wrongdoing that affected all the class members in the same or similar

9   manner. *See Blackie v. Barrack*, 524 F.2d 891, 905-908 (9th Cir. 1975), *cert. denied*, 429 U.S.

10  816 (1976). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are

11  sufficiently cohesive to warrant adjudication by representation." *In re Visa Checks/MasterMoney*

12  *Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). This criterion is normally satisfied when there

13  is an essential common factual link between all class members and the defendant for which the

14  law provides a remedy. *Id.* at 136.

15          Differences among class members concerning the amount of their individual damages,

16  which are unavoidable in class action litigation, do not prevent a suit from proceeding as a class

17  action. *Blackie*, 524 F.2d at 905. Remedies, whether in the form of restitution or damages, can be

18  proven on a class-wide basis which is consistent with the Supreme Court's opinion in *Comcast*

19  *Corp. v. Behrend*, 133 S.Ct. 1426 (2013).

20          In this case, each class member purchased Defendants' misbranded products. Each class

21  member was subject to the same challenged label statements. Each class member accordingly

22  proffers the same legal theories and the same theories of recovery. A finding of Defendants'

23  culpability for a single class member will yield the same result for all. Inasmuch as the claims

24  against Defendants arise out of the same labels and are premised on the same legal theories, the

25  predominance of common questions of law and fact is clear.

26          The facts, as well as the law, cohere around these unlawful labels and Defendants'

27  wrongdoing.  The predominant issue is whether Defendants' labels were misbranded as alleged

28  under California law. Defendants' label statements on any of the class products were the same,

throughout California. Members of each class would have seen the same labels as Plaintiffs.

Further, there are no individual reliance issues for Plaintiffs' UCL, FAL and CLRA claims.

### B.      UCL and FAL Claims

California law is well settled that class-wide reliance is not required for UCL and FAL claims. *See, e.g., Greenwood v. Compucredit Corp.*, No. C 08-04878 CW, 2010 U.S. Dist. LEXIS 3839 (N.D. Cal. Jan. 19, 2010); *In re Tobacco II Cases*, 46 Cal. 4th at 326-27; *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th at 155. Indeed, the *Steroid Hormone Product Cases* are indistinguishable from this case. Plaintiffs' claims under the "unlawful" prong focus directly on Defendants' actions. If Defendants' labels violated the unlawful prong of the UCL, the inquiry ends there and whether unnamed class members relied on the relevant statement is not an issue before the Court.

### C.      CLRA Claim

There are no individual reliance issues on Plaintiffs' CLRA claims because class-wide reliance is presumed when the misrepresentations or omissions would have been material to "reasonable persons." *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th at 156-57. Regulated label statements are material as a matter of California law. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106-07 (9th Cir. 2013). As the court in *Keilholtz v. Lennox Hearth Products Inc* held:

> [T]he causation required by the [CLRA] does not make plaintiffs' claims unsuitable for class treatment. Causation as to each class member is commonly proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class. As noted above, common questions predominate even if Defendant can defeat the showing of causation as to a few individual class members. As long as Plaintiff can show that material misrepresentations were made to the class members, an inference of reliance arises as to the entire class.

268 F.R.D. 330, 343 (N.D. Cal. 2010); *see also, Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007). The challenged label statements were undoubtedly material, as admitted by Defendants. *See* Exhibit 1 at Nos. 8-9; Exhibit 2 at Nos. 8-9.

### D.      Restitution Under The UCL, FAL, And CLRA Can Be Proven On A Classwide Basis

Plaintiffs seek restitution under their UCL, FAL, and CLRA claims.[5] Restitutionary relief has two purposes: "returning money unjustly taken from the class, and deterring the defendant from engaging in future violations of the law." *Guido*, 2013 U.S. Dist. LEXIS 94031, at *36; *see also Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1149 (2003) (the purpose of restitution is "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest."). "A court awarding restitution under the California consumer protection laws has 'very broad' discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired.'" *Astiana*, 291 F.R.D. at 506 (quoting *Wiener v. Dannon Co*., 255 F.R.D. 658, 670-71 (C.D. Cal. 2009)).

Because Defendants manufactured the misbranded products and sold them to wholesalers, who in turn, sold to retailers, the loss suffered (amounts paid for retail) is greater than the amount of benefit received (amounts received in sale to wholesalers). Equity supports an award of restitutionary disgorgement equal to the amounts received by Defendants for the sale of the misbranded products. Common issues predominate in the analysis of disgorgement because the Court need review only the transactions between Defendants and their wholesaler(s). Whatever amount Defendants made from those transactions equals the amount of disgorgement. There are no individualized issues for the Court consider.

Courts have held disgorgment to be a proper remedy in similar circumstances. . *See Foster Poultry Farms, Inc. v. SunTrust Bank,* 1:04-cv-5513 OWW SMS, 2008 U.S. Dist. LEXIS 36595, at *22 (E.D. Cal. May 2, 2008) (holding that "net profit, [is] the generally accepted measure for the equitable remedy of disgorgement damages").

The focus of disgorgement is not the value received by Plaintiffs, rather, the focus is on Defendants' wrongfully obtained benefit:

---

[5] Cal. Bus. & Prof. Code § 17205 ("Unless otherwise expressly provided, the remedies or penalties provided by the chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state.").

> It is not essential that money be paid directly to the recipient by the party seeking restitution. The emphasis is on the wrongdoer's enrichment, not the victim's loss. In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again. Disgorgement may include a restitutionary element, but it 'may compel a defendant to surrender all money obtained through an unfair business practice . . . regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice. Without this result, there would be an insufficient deterrent to improper conduct that is more profitable than lawful conduct.

*County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542 (Cal. App. 2d Dist. 2007).

Restitution is not limited to the difference between what the plaintiff received versus what he or she paid. As one California appellate court stated: "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co.*, 29 Cal. 4th at 1149. Restitution is, however**, "broader than simply the return of money that was once in the possession of the person from whom it was taken** . . ." *Juarez v. Arcadia Financial, LTD.*, 152 Cal. App. 4th 889, 915 (2007) (emphasis added.) "Ordinarily, the measure of restitution is the amount of enrichment received ..., but as stated in Comment *e,* if the loss suffered differs from the amount of benefit received, **the measure of restitution may be more or less than the loss suffered or more or less than the enrichment**." *Id.* at 915 (internal citation omitted) (emphasis added). California law is consistent with Comment "e" to the Restatement of Restitution:

> In other situations, a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust. In such cases, the defendant may be under a duty to give to the plaintiff the amount by which he has been enriched.

Rest., Restitution, § 1, Cmt. e, p. 14.

The Ninth Circuit agrees:

> [O]nce a defendant is found liable for deceptive acts or practices "[w]e would not limit their recovery to the difference between what they paid and a fair price for [the product]. The seller's misrepresentations tainted the customers' purchasing decisions. If they had been told the truth, perhaps they would not have bought [the product] at all or only some.

*FTC v. Lights of Am., Inc.,* Case No. SACV10-01333 JVS (MLGx), 2013 U.S. Dist. LEXIS 133040, at *132 (C.D. Cal. Sept. 17, 2013) (quoting *FTC v. Figgie Int'l.*, 994 F.2d 595, 606 (9th

1   Cir. Cal.1993)).[6]

2       **E.    The Subject Products Are Legally Worthless Entitling Plaintiffs To A**
            **Damages Award Equal To The Purchase Price**
3

4       Although value received is not the proper focus in a restitution analysis, even if value

5   were considered, it should be zero because the class products were illegal and, therefore,

6   worthless. In another food misbranding case, this Court held:

7           The fact remains, however, that in California, "[i]t is unlawful for any person
            to…hold or offer for sale any food that is misbranded," and the statute establishing
8           that is subject to the punishments described above.  That means that Plaintiffs
            could, in fact, be arrested and prosecuted for unlawful possession of misbranded
9           goods.

10  *Park v. Welch Foods, Inc.*, 5:12-cv-06449-PSG, 2014 U.S. Dist. LEXIS 37796, at *5-6 (N.D. Cal.

11  Mar. 21, 2014). Valuation is not even an issue in this case—Defendants sold Plaintiffs a product

12  that was illegal to sell or possess.  No reasonable consumer would select a potato chip or snack

13  chip product over another (at a premium price, no less) for the knowing privilege of committing a

14  criminal act—not when merely selecting the one right next to it without the misbranding would

15  avoid that risk entirely. Yet, that's precisely what happened here.  There is no re-sale of these

16  misbranded products or reasonable market for them, because they cannot be legally sold or

17  possessed, let alone re-sold. "In this case [the plaintiff] does not put valuation at issue when he

18  alleges that he bought a product that was illegal to sell or possess. *In re Steroid Hormone Product*

19  *Cases*, 181 Cal. App. 4th at 159-160.  Plaintiffs were sold illegal products that were worthless.

20  Using such a metric, individual issues do not come into play. Even if there were individual issues,

21  they do not predominate over common issues.

22      **F.    In The Alternative, The Court Can Certify A Class For Nominal**
            **Damages**
23

24      A person may recover nominal damages when a breach of duty has caused no appreciable

25  ───────────────────

26  [6] Plaintiffs have also filed a motion for leave to file a motion to reconsider the Court's prior order
    dismissing their claims of unjust enrichment. For the reasons set out in their motion, Plaintiffs
27  should be permitted to pursue claims of unjust enrichment. Under California law, Plaintiffs'
    claims for unjust enrichment, which are independent and cumulative of their other claims, and
28  would provide a remedy of non-restitutionary disgorgement

1 detriment to him or her.  Cal. Civ. Code § 3360. Courts allow the recovery of nominal damages in

2 limited circumstances. First, they may be recovered if no loss or injury has resulted from an act

3 but the law recognizes a technical invasion of a plaintiff's rights or a breach of duty by a

4 defendant.  *Avina v. Spurlock*, 28 Cal. App. 3d 1086, 1088 (1972). In this circumstance, the award

5 of nominal damages compensates for the invasion of the right and, therefore, constitutes

6 recognition of that right and an admonition that it cannot be invaded with impunity. *See Kluge v.*

7 *O'Gara*, 227 Cal. App. 2d 207, 210 (1964); *Siminoff v. Jas. H. Goodman & Co. Bank*, 18 Cal.

8 App. 5, 15 (1912).

9       Second, nominal damages may be recovered if real, actual injury has occurred and

10 damages have been suffered, but the extent and amount of the injury and damages cannot be

11 determined from the evidence presented.  *Avina*, 28 Cal. App. 3d at 1088; *see also ProMex, LLC*

12 *v. Hernandez*, 781 F.Supp. 2d 1013, 1019 (C.D. Cal. 2011) (holding plaintiff entitled to recover

13 nominal damages where there was a legal wrong without appreciable damages). In an appropriate

14 case, punitive damages may be awarded in addition to nominal damages of this type since actual

15 damages are shown. *Kluge*, 227 Cal. App. 2d at 210.

16       Similarly, because the CLRA expressly provides for minimum statutory damages that all

17 class members would be entitled to, damages can be determined on a classwide basis. As held by

18 Judge Alsup in *Pickman v. Am. Express Co.*, No. C 11-05326 WHA, 2012 U.S. Dist. LEXIS

19 9662, at *5-6 (N.D. Cal. Jan. 27, 2012), the CLRA provides for minimum statutory penalties of

20 $1000 per violation:

21
> Plaintiff seeks relief on behalf of a putative class — members of the California
22 > public who are American Express cardholders. The amount in controversy is
> satisfied by multiplying the minimum amount of damages to be sought under the
23 > CLRA ($1,000) by the number of alleged violations (5,001). …Plaintiff counters
> that her claim is not an attempted class action so that the amount in controversy is
24 > a mere $8,000 — the minimum amount of damages allowable under the CLRA
> multiplied by the number of statutory violations. Yet if plaintiff is seeking relief
25 > on behalf of others, as she purports to do, she fails to take into account the
> damages of other cardholders or callers.

26 Such statutory damages are automatically awarded once liability is established and thus

27 individualized determinations are unnecessary.

28

### G.      A Class Action Is The Superior Method For Resolving This Dispute

The test for superiority of the class action mechanism merely requires "determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (*citing* 7A Wright & Miller, Federal Practice and Procedure § 1779 (2d ed. 1986)); *see also Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534 (N.D. Cal. 2010); *Greenwood*, 2010 U.S. Dist. LEXIS 3839. Plaintiffs' claims meet this test.

#### 1.      Class Members Have No Interest In Pursing Individual Litigation

The first factor to be considered is the interest of each class member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Here, as in *Hanlon*, the alternative mechanism would be individual claims for relatively small amounts of damages, literally a few dollars per transaction. Bringing individual claims would not only burden the court system that would be deciding the same legal issues in a number of small cases, but would also not make economic sense for litigants or lawyers. It is clear that in many, if not most, individual cases, "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023; *see also Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

#### 2.      There Are No Other Actions Pending

The second factor to be considered, "the extent and nature of any litigation concerning the controversy already commenced," Fed. R. Civ. P. 23(b)(3)(B), by members of the class, also supports proceeding with certification in this action. Plaintiffs are not aware of any other individual or class litigation concerning the claims alleged in this case on behalf of these classes.

#### 3.      This Court Is the Appropriate Forum For This Litigation

The third factor, the desirability of concentrating the litigation in this forum, equally supports superiority of maintaining this class action. Plaintiffs reside in this forum and Defendants do substantial business in California.

#### 4.      There Are No Manageability Issues

Prosecution of the claims of the putative class members in a single class action would not create more management problems than the alternative (*i.e.*, the prosecution of hundreds or

1    thousands of separate lawsuits by each class member). Significantly, it is proper for a court, in

2    deciding the "best" available method, to consider the "inability of the poor or uninformed to

3    enforce their rights, and the improbability that large numbers of class members would possess the

4    initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165

5    (7th Cir. 1974).

6         A determination that one label is misbranded is a determination that all such labels are

7    misbranded. Moreover, it is well accepted that "a class action has to be unwieldy indeed before it

8    can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l,*

9    *Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *see also Menagerie Productions v. Citysearch*, CV 08-

10   4263 CASFMO, 2009 U.S. Dist. LEXIS 108768, at *64 (C.D. Cal. Nov. 9, 2009) (*citing Negrete*

11   *v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 495-96 (C.D. Cal. 2006)).

12                                  **CONCLUSION**

13        For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion

14   to certify this case as a class action, appoint them as class representatives, and appoint the

15   undersigned as class counsel.

16   Dated:  June 30, 2015.

17                                          Respectfully submitted,

18                                          By: /s/ *David McMullan, Jr.*
                                            David McMullan, Jr. (admitted *pro hac vice*)
19                                          DON BARRETT, P.A.
                                            P.O. Box 927
20                                          404 Court Square N.
                                            Lexington, MS 39095
21                                          Tel: (662) 834-2488
22                                          Fax: (662) 834-2628
                                            dmcmullan@barrettlawgroup.com
23                                          sstarns@barrettlawgroup.com

24                                          Ben F. Pierce Gore (SBN 128515)
25                                          PRATT & ASSOCIATES
                                            1871 The Alameda, Suite 425
26                                          San Jose, CA 95126
                                            (408) 429-6506
27                                          pgore@prattattorneys.com

28                                          *Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2        I, David McMullan, hereby certify that a true and complete copy of the foregoing was

3    served to all counsel of record via the ECF filing system on June 30, 2015.

4

                    */s/  David McMullan, Jr.*
5                    David McMullan, Jr.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28